[Counsel listed on signature page]

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ATHLETIC GRANT-IN-AID CAP ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Case No. 4:14-md-02541-CW**
**Case No. 4:14-cv-02758-CW**

**JOINT CASE MANAGEMENT STATEMENT**

THIS DOCUMENT RELATES TO:

ALL ACTIONS

Date: October 1, 2015
Time: 2:00 p.m.
Judge: Hon. Claudia Wilken

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Counsel for all parties in the above-referenced actions submit this Joint Case Management Statement in advance of the Case Management Conference on October 1, 2015.

## INTRODUCTION

The parties have different views on whether the Court is currently in a position to set a case schedule for the management of these actions through trial, as set forth herein.

### *Jenkins* Plaintiffs' Statement on the *Jenkins* Action

As detailed below, the *Jenkins* Plaintiffs propose that the Court set an expedited schedule for fact and expert discovery and the filing of dispositive motions in the *Jenkins* action, which seeks injunctive relief only and should not be delayed by motion practice over the certification of damages classes or discovery related thereto. The *Jenkins* Plaintiffs also request that the Court set a timeline for remand of the *Jenkins* action to the District of New Jersey.

The *Jenkins* Plaintiffs seek to represent two classes of current athletes who continue to suffer irreparable harm from Defendants' anticompetitive conduct. Those class members have and will continue to exhaust their limited collegiate athletic eligibility without ever being afforded the relief they seek. Vindication of their rights and resolution of their claims, which will be heard in another District, should not be delayed while lengthy discovery and certification issues related to the damages claims are resolved.

The *Jenkins* Plaintiffs respectfully disagree with numerous of Defendants' expressed positions herein on various issues, including on substantive merits issues, but do not believe that it is proper to respond to them in a Case Management Conference Statement.

### CAC Plaintiffs' Statement on the CAC Action

The CAC Plaintiffs seek to represent classes of current and former Division I FBS football players, men's Division I basketball players, and women's Division I basketball players. Plaintiffs seek two remedies: (1) an injunction that enjoins the NCAA and the Conference Defendants[1] from

---

[1] Five of the most powerful members of the NCAA, the so-called "Power Conferences," *i.e.*, Defendants Pac-12 Conference, The Big Ten Conference, Inc., The Big 12 Conference, Inc., Southeastern Conference, and Atlantic Coast Conference, and six other powerful NCAA member conferences, Defendants The American Athletic Conference, Conference USA, Mid-American Conference, Mountain West Conference, Sun Belt Conference, and Western Athletic Conference.

1   maintaining and abiding by the present NCAA Bylaw that limits athletics-related financial aid to the

2   presently-defined grant-in-aid; and (2) an award of damages for the difference between the value of

3   athletics grants-in-aid awarded and the Cost of Attendance.  Plaintiffs believe that the requested

4   injunction will result in less restricted and more competitive marketplaces for the services of FBS

5   football and Division I men's and women's basketball players.  In those marketplaces, most, if not all,

6   of those players will obtain future compensation in an amount no less than the Cost of Attendance.

7   Plaintiffs believe that their damages request is a reasonable, conservative estimate of the minimum

8   harm to all Class Members.

9           The CAC Plaintiffs respectfully disagree with numerous of Defendants' expressed positions

10  herein on various issues, including on substantive merits issues, but do not believe that it is proper to

11  respond to them in a Case Management Conference Statement.

12  **Defendants' Statement on the *Jenkins* and CAC Actions**

13          Defendants submit that it would be premature to set a schedule for this case through trial until

14  after Plaintiffs' motion for certification of injunctive classes pursuant to Federal Rule of Civil

15  Procedure 23(b)(2) has been resolved and the CAC Plaintiffs' intended motion for certification of one

16  or more damages classes pursuant to Federal Rule of Civil Procedure 23(b)(3) has been made, briefed

17  and resolved.  Defendants have opposed plaintiffs' Rule 23(b)(2) motion to certify injunctive classes

18  and intend to oppose the certification of any damages classes under Rule 23(b)(3) when the CAC

19  Plaintiffs make that motion.  Much of the substance and scope of the discovery, research and analysis

20  required to litigate these actions going forward will be determined by the resolution of those class

21  certification motions, which should occur as soon as possible.

22          In addition, even if this Court were to find, despite the substantial arguments to the contrary

23  raised by Defendants, that (b)(2) certification is appropriate, this Court may not certify separate

24  injunctive relief classes in the *Jenkins* and CAC actions.  The proposed classes overlap

25  completely—the classes proposed by the CAC Plaintiffs include all of the slightly more restrictive

26  classes proposed by the *Jenkins* Plaintiffs (the latter of which do not include women basketball

27  players)—and both challenge as antitrust violations the same NCAA rules.  *See In re Cypress*

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*Semiconductor Sec. Litig. (Plack v. Cypress Semiconductor)*, 864 F. Supp. 957, 595 (N.D. Cal. 1994). There can be only one final judgment binding all members of the same class or classes, and *res judicata* will preclude the litigation of the same claims in two actions. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). For that reason, the *Jenkins* Plaintiffs' proposal to certify duplicative injunctive classes comprised of the same student-athletes in both actions and to proceed on separate scheduling tracks and in separate courts should be rejected.

Moreover, the CAC Plaintiffs have stated that they intend to move for certification of a damages class (or classes) pursuant to Federal Rule of Civil Procedure 23(b)(3). Defendants will oppose certification of such a damages class. But if this Court were to certify such a damages class, then Defendants would have the constitutional right to a jury trial on the liability and damages claims, and it would be improper to deny Defendants that right by permitting the *Jenkins* Plaintiffs, acting on behalf of the same class of plaintiffs and challenging the same rules as alleged violations of antitrust laws, to proceed on a separate scheduling track and in a separate bench trial in a different court. For this additional reason, the dual track approach proposed by the *Jenkins* Plaintiffs to rush ahead to a trial and judgment before the CAC Plaintiffs (who are the members of the same putative class) on identical issues should be rejected.

Defendants submit that if, for any reason, Plaintiffs' pending motion for certification of injunctive relief classes is not denied in its entirety, the CAC Plaintiffs' motion for certification of a Rule 23(b)(3) damages class should be heard promptly, and in advance of determination by the Court of other significant case management matters impacting these actions. The CAC Plaintiffs' proposal that class certification await the conclusion of discovery should be rejected. As Rule 23(c)(1)(A) makes clear, whether an action may proceed as a class action must be determined early in the case. Awaiting the close of discovery is wholly inconsistent with Rule 23(c)(1)(A).

## I. JURISDICTION, VENUE AND SERVICE

The parties agree that the Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 4 and 15, and 28 U.S.C. §§ 1331, 1337 and 1367, in that this action arises under federal antitrust laws. There are no issues regarding personal jurisdiction or venue. All parties have been served.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## II.     FACTS

### *Jenkins* **Plaintiffs' Statement**

The operative pleading in the *Jenkins* case is the *Jenkins* Plaintiffs' Second Amended Complaint, filed on February 13, 2015 (Dkt. 194).[2]

The *Jenkins* Plaintiffs' Second Amended Complaint seeks declaratory and injunctive relief on behalf of two putative classes comprised of current NCAA Division I Football Bowl Subdivision ("FBS") football players and current NCAA Men's Division I ("D-I") basketball players.  Named as Defendants are the NCAA and the five Power Conferences: the Atlantic Coast Conference, the Big 12 Conference, the Big Ten Conference, the Pac-12 Conference, and the Southeastern Conference.  Unlike the CAC Plaintiffs, the *Jenkins* Plaintiffs do not seek damages on an individual basis, certification of a damages class, or certification of a women's basketball class, and do not name the other six FBS conferences as defendants.

The *Jenkins* action has been coordinated in this multidistrict litigation for the purposes of pretrial proceedings separate from the CAC Plaintiffs.  After the close of discovery, the *Jenkins* action will be remanded to the District of New Jersey for a bench trial.

### **CAC Plaintiffs' Statement**

The operative pleading in the CAC Plaintiffs' case is the CAC Plaintiffs' Consolidated Amended Complaint, filed on July 11, 2014 (Dkt. 60), and which has since had allegations filed in separate complaints incorporated therein (Dkts, 86, 184, and 197).  The CAC Plaintiffs seek to represent classes of current and former Division I FBS football players, men's Division I basketball players, and women's Division I basketball players.  The CAC Plaintiffs have named as defendants the NCAA and the Conference Defendants.  As explained above, the CAC Plaintiffs seek both injunctive relief and damages.

### **Defendants' Statement**

This litigation is about whether college sports, as a non-professional sports product, will continue to exist.  Plaintiffs challenge the fundamental and long-established eligibility standard of the

---

[2] Docket numbers refer to the MDL No. 14-MD-02541-CW docket unless otherwise noted.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

NCAA, which precludes student-athletes at NCAA member colleges and universities from receiving payments above and beyond scholarships for athletic participation in intercollegiate sports. Among other benefits, this standard serves the pro-competitive purposes of (i) preserving the student-athletes' focus on academics, (ii) encouraging colleges and universities to distribute their athletics-based financial aid among a large number of student-athletes, rather than concentrating their spending on the recruitment of a handful of superstar players, (iii) fostering the integration of student-athletes into the academic communities of their colleges and universities, and (iv) establishing a common scholarship cap for all schools within each division that is intended to help foster competitive balance within that division and aid in the production of an inter-conference athletic competition culminating in a national champion.

## III. LEGAL ISSUES

### *Jenkins* **Plaintiffs' Statement**

The primary legal issues are whether the injunctive relief classes described in the Joint Amended Motion for Class Certification, filed February 20, 2015 (Dkt. 163), should be certified and whether current NCAA rules that cap the amount of compensation FBS football and D-I men's basketball players may receive for their athletic services violate federal antitrust law.

There is no basis for Defendants' contention that the Court may not certify injunctive relief classes in both the *Jenkins* and CAC actions. For starters, contrary to Defendants' continued insistence that the cases are carbon copies, they are anything but. The *Jenkins* Plaintiffs do not seek damages, do not seek to represent women basketball players, and do not name the six additional conference defendants named by the CAC Plaintiffs. And the injunctive relief sought in *Jenkins* is different from the CAC action, too. The *Jenkins* Plaintiffs do not seek injunctive relief related in any way to cost of attendance calculations for grants-in-aid. Rather, the *Jenkins* Plaintiffs seek the removal of Defendants' current anticompetitive rules restricting or prohibiting schools from compensating athletes for athletic services for FBS football and D-I men's basketball, wholly apart from the rules limiting how cost of attendance can be calculated for a grant-in-aid.

Moreover, even if there were any merit to Defendants' claim that the proposed classes "overlap

completely," Defendants offer no authority <u>requiring</u> dismissal or consolidation of the actions, which will be tried separately in different judicial districts.  Rather, the cases cited by Defendants address unremarkable principles about *res judicata* and the Court's broad discretion about how to manage the MDL.  Here, however, the Court has already declined Defendants' requests for consolidation and dismissal.

**CAC Plaintiffs' Statement**

The primary legal issues are (1) whether the injunctive relief classes described in the Joint Amended Motion for Class Certification, filed February 20, 2015 (Dkt. 163), should be certified, (2) whether the damages classes described in the to-be-filed-damages class certification motion should be certified, (3) whether CAC Plaintiffs are entitled to an injunction that enjoins the NCAA and the Conference Defendants from maintaining and abiding by the present NCAA Bylaw that limits athletics-related financial aid to the presently-defined grant-in-aid, and (4) whether CAC Plaintiffs are entitled to an award of damages for the difference between the value of the athletics-related grants-in-aid awarded and the Cost of Attendance.

**Defendants' Statement**

Defendants' detailed explanation why it would be improper for the Court to certify separate, overlapping injunctive relief classes in the *Jenkins* and CAC actions, asserting the same issues of alleged antitrust illegality of the same NCAA rules, and to allow them to be tried separately as Plaintiffs contend, appears below and in the Class Action section, *infra*.  In the Class Action section, Defendants explain why doing so would violate basic principles of *res judicata*, the single action doctrine, and the Seventh Amendment right to a jury trial.

The *Jenkins* Plaintiffs' preceding argument that those legal principles do not apply because the *Jenkins* action does not overlap with the CAC action is incorrect.  Any minor differences between the classes proposed by the *Jenkins* Plaintiffs and the CAC Plaintiffs or arguable differences in the terms of the injunctions they seek are of no legal significance in this regard—all that matters is that both sets of claims are the same, and involve adjudication of the same legal and factual issues.  It is undeniable that both the *Jenkins* and CAC actions do raise the same claims and issues, and Plaintiffs do not

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

attempt to deny it.

Defendants identify the following disputed points of law with respect to class certification: (i) whether Plaintiffs can demonstrate that they can fairly and adequately protect the interests of absent class members, as required by Fed. R. Civ. P. 23(a); (ii) whether conflicts of interest among putative class members preclude class certification, Fed. R. Civ. P. 23(a)(4); (iii) whether Plaintiffs can demonstrate that Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, Fed. R. Civ. P. 23(b)(2); (iv) whether questions of law or fact common to class members predominate over any questions affecting only individual members, Fed. R. Civ. P. 23(b)(3); (v) whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, Fed. R. Civ. P. 23(b)(3); (vi) whether Plaintiffs' request for certification of duplicative, overlapping classes for determination of the same legal issues is proper and legally permissible, given that there can be only one final judgment binding all class members, *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984); (vii) whether putative representative plaintiffs, whose eligibility has expired, lack standing to serve as class representatives for a class certified pursuant to Fed. R. Civ. P. 23(b)(2); (viii) whether certification of an injunctive, declaratory and/or damages relief class violates federal due process rights of the defendants under the Fifth Amendment due to the conflicts among the class members and the predominance of individual class issues; and (ix) whether certification of an injunctive, declaratory and/or damages relief class violates federal due process rights of individual class members under the Fifth Amendment due to the conflicts among the class members and the predominance of individual class issues.

Defendants identify the following disputed points of law with respect to Plaintiffs' claims under Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section 1"): (i) whether Defendants' challenged joint venture activity, which is necessary for creation of the collegiate sports product, should be assessed under a "quick look" or full Rule of Reason analysis, *American Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 203 (2010); (ii) whether the NCAA's eligibility rules are presumptively procompetitive, *NCAA v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 101 (1984); *Agnew v.*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*NCAA*, 683 F.3d 328, 341 (7th Cir. 2012); (iii) whether Plaintiffs can demonstrate that the challenged restraint in this case unreasonably restrained trade affecting interstate commerce, *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001); (iv) whether NCAA eligibility rules are non-commercial and therefore not subject to antitrust review, *Smith v. NCAA*, 139 F.3d 180 (3d Cir. 1998), *vacated on other grounds*, 525 U.S. 459 (1999); *Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008); (v) whether Plaintiffs can meet their burden of proving that "the restraint produces 'significant anticompetitive effects' within a 'relevant market,'" *Tanaka*, 252 F.3d at 1063; (vi) whether Plaintiffs can meet their burden of proving the contours of relevant product and geographic markets; (vii) whether, if Plaintiffs meet their burden of proving significant anticompetitive effects within a relevant market, Defendants can demonstrate evidence of the challenged restraint's procompetitive effects, *id.*; (viii) whether, if Plaintiffs can establish liability under Section 1, any of Defendants' asserted affirmative defenses negate or otherwise mitigate Defendants' potential liability in this case; (ix) whether, and/or which, plaintiffs or absent members of the putative classes have suffered actual injury-in-fact as a result of the alleged restraint of trade; (x) whether, and/or which, plaintiffs or absent members of the putative classes have suffered injuries-in-fact that are properly characterized as antitrust injury; and (xi) whether Plaintiffs are entitled to the free market relief they seek in light of this Court's decision in *O'Bannon v. NCAA*, No. C 09-3329, and/or any decision in that case that may be rendered on appeal.

Defendants identify the following disputed points of law with respect to California's Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.*: (i) whether the NCAA and/or Pac-12 engaged in any "unlawful, unfair or fraudulent business act or practice," *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); and (ii) whether Plaintiffs are entitled to the specific, limited forms of relief (injunctive relief or restitution) available to redress violations of that statute, *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 467 (2005).

## IV.  MOTIONS

### *Jenkins* and CAC Plaintiffs' Joint Statement on Rule 23(b)(2) Motion

On October 10, 2014, this Court denied the Defendants' Motion to Dismiss the Complaints (Dkt. 130).  Subsequently, the *Jenkins* Plaintiffs and CAC Plaintiffs jointly moved for certification of

9

injunctive classes under Federal Rule of Civil Procedure 23(b)(2) in their Joint Amended Motion for Class Certification, which was filed February 20, 2015.

**CAC Plaintiffs' Additional Statement**

The CAC Plaintiffs will move for certification of damages classes under Federal Rule of Civil Procedure 23(b)(3) after the close of discovery.

**Defendants' Statement**

The CAC Plaintiffs' proposal that class certification await the conclusion of discovery should be rejected. As Rule 23(c)(1)(A) makes clear, whether an action may proceed as a class action must be determined early in the case. Awaiting the close of discovery is wholly inconsistent with Rule 23(c)(1)(A).

**V.  AMENDMENT OF PLEADINGS**

No amendment of pleadings is anticipated at this time. However, the CAC Plaintiffs state that—if the Court so requests—CAC Plaintiffs are willing to add or substitute class representatives if the Court determines such amendment is necessary.

**VI.  EVIDENCE PRESERVATION**

The parties agreed to certain procedures relating to the discovery of electronically stored information in this case. The Court entered their Stipulated Order Re Discovery of Electronically Stored Information on March 6, 2015 (Dkt. 208).

**VII.  DISCLOSURES**

The parties engaged in a Rule 26(f) conference in October 2014 and filed a Case Management Statement Report on October 30, 2014 (Dkt. 141).

Following the 26(f) conference and pursuant to Federal Rule of Civil Procedure 26(a)(1), the parties exchanged their initial disclosures. The parties have fully and timely complied with the initial disclosures requirements of Federal Rule of Civil Procedure 26(a)(1).

Additionally, the parties agreed to a Stipulated Protective Order to govern the use and disclosure of confidential information in this litigation, which was entered by the Court on January 15, 2015 (Dkt. 189). The parties further agreed to an Addendum to Stipulated Protective Order creating

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

10

additional protections for NCAA member school financial data, which was entered by the Court on July 9, 2015 (Dkt. 234).

**Defendants' Additional Statement**

In their initial disclosures, Plaintiffs identified 109 witnesses in 12 categories upon whom they intend to rely, including the proposed representative plaintiffs named in the *Jenkins* and CAC actions, senior executives and officers of Defendants, all NCAA Division I conference commissioners, collegiate athletics associations, and current and former coaches, athletic directors, administrators, and presidents at NCAA Division I member institutions and independent schools.

The *Jenkins* and CAC Plaintiffs stated that they intend to rely on information including financial aid and recruiting documents and correspondence, documents relating to the grant-in-aid cap and NCAA rules and policies, Defendants' bylaws and other rules and regulations, press releases, marketing materials, and statements made by Defendants in prior litigation.

Each Conference Defendant identified categories of witnesses upon whom they intend to rely, totaling 63 potential witnesses, including senior employees of the conferences, current or former employees of member institutions, and class plaintiffs. The NCAA identified senior members of its staff, NCAA legislative bodies, and employees of member institutions, conferences, and major and minor professional sports teams. The Defendants also identified numerous categories of documents upon which they intend to rely.

## VIII. STATUS OF DISCOVERY AND DISCOVERY PLAN

**_Jenkins_ Plaintiffs' Statement**

Regarding document discovery, on January 8, 2014, the parties stipulated that the NCAA would produce documents from certain past actions in which the NCAA was a party. *See* Stipulated Order Regarding Production of Documents from Certain Cases (Dkt. 187). As of the date of this submission, the NCAA's production is still not complete. However, the NCAA continues to make productions pursuant to that stipulation, the most recent of which occurred on September 11, 2015.

In addition, a little less than one year ago (on November 13, 2014), the *Jenkins* Plaintiffs made written discovery requests for additional documents that were not produced in prior actions.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Defendants have produced limited documents in response to those requests. Over the past nine months, the parties have engaged and continue to engage in telephonic meet and confers related to the production of the requested documents, including matters regarding search terms, custodians, and specific records, such as financial data and commercial contracts. The parties disagree regarding the relevance of certain requested documents, including certain NCAA financial information, conference financial data, documents related to conference realignment, NCAA enforcement documents, and documents related to the settlement of past NCAA cases. The parties continue to discuss these matters, but the *Jenkins* Plaintiffs intend to seek appropriate relief from the magistrate, if resolution is delayed further.

On July 17, 2015, the *Jenkins* Plaintiffs made additional written requests to which Defendants have made written responses and objections. The *Jenkins* Plaintiffs expect to engage in meet and confers with Defendants related to these requests.

On July 17, 2015, the *Jenkins* Plaintiffs also served subpoenas on several third-party NCAA member institutions seeking document discovery. Telephonic meet and confers related to the production of documents pursuant to those subpoenas are ongoing.

As discussed above, the parties have entered into a Stipulated Protective Order (Dkt. 189) and an Addendum thereto (Dkt. 234) regarding the use of confidential information and a Stipulated Order Re Discovery of Electronically Stored Information (Dkt. 208). The *Jenkins* Plaintiffs believe that documents such as television and media-rights contracts to which Defendants or their affiliated entities are parties should be produced in full and that there is no basis for the redaction of terms under claims of confidentiality.

Finally, Defendants have deposed all three *Jenkins* Plaintiffs. Each party has also deposed the opposing parties' experts who submitted reports during briefing of Plaintiffs' Joint Amended Motion for Class Certification. No other depositions have been conducted thus far.

**CAC Plaintiffs' Statement**

Supplementing the information set forth above by the *Jenkins* Plaintiffs, the CAC Plaintiffs provide the following information about their discovery efforts thus far. On November 10, 2014, the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

CAC Plaintiffs served their first set of document requests upon all defendants. On March 19, 2015, the CAC Plaintiffs served their second set of document requests upon all defendants and their first set of interrogatories on all defendants. On August 14, 2015, the CAC Plaintiffs served their third set of documents requests upon all defendants. The CAC Plaintiffs have and/or will meet and confer with defendants regarding the various responses and document productions. Where possible in regards to overlapping document requests, the CAC Plaintiffs have coordinated their meet/confer efforts with the *Jenkins* Plaintiffs and Defendants. Any discovery issues that cannot be resolved via the meet and confer process will be raised with Magistrate Cousins.

On May 14, 2015, the CAC Plaintiffs issued a subpoena on a third-party NCAA member institution seeking document discovery. Telephonic and written meet and confers related to the production of documents pursuant to that subpoena are ongoing.

The CAC Plaintiffs have produced documents in response to Defendants document requests. Defendants have deposed the CAC Plaintiffs serving as class representatives for Plaintiffs' Joint Amended Motion for Class Certification. Each party has also deposed the opposing parties' expert(s) who submitted report(s) during briefing of Plaintiffs' Joint Amended Motion for Class Certification. No other depositions have been conducted thus far.

**Defendants' Statement**

The scope and volume of document discovery sought by each set of Plaintiffs, and that already has been produced by defendants, is significant. The CAC Plaintiffs have served three sets of document requests (44 requests total); the *Jenkins* Plaintiffs have served two sets of requests (51 requests total). The requests are quite broad and seek significant discovery relating to dozens of NCAA bylaws and sub-bylaws and, to the extent they exist, conference rules on the same subjects. Plaintiffs have requested substantial volumes of documents related to the NCAA's amateurism bylaws, financial aid limits, permissible benefits bylaws, recruiting bylaws, and Division I membership rules, including (but not limited to) documents related to all proposed amendments to those bylaws since January 2008 and extensive information regarding those bylaws' enforcement, interpretation, and discussion. Plaintiffs also have requested significant discovery from all

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

13

1   Defendants related to topics as varied as recent governance dialogue and restructuring at the NCAA,

2   student-athlete "pay," time-demands, the "collegiate model," government relations, "beverage

3   policies" at NCAA tournaments, and the availability of unlimited meals and snacks for participants in

4   intercollegiate athletics.  Additionally, Plaintiffs have sought significant discovery into Defendants'

5   and their members' financial, commercial and marketing information.

6       In response to those requests, Defendants have engaged in numerous meetings and conferences

7   with Plaintiffs and have exchanged extensive correspondence with them regarding appropriate

8   custodians and search terms to use in creating the universe of potentially responsive documents from

9   each Defendant's electronically-stored information, and the scope and relevance of some of Plaintiffs'

10  document requests.  Defendants have agreed collectively to produce documents from more than 100

11  individual custodians and dozens more institutional custodians (such as documents created by and for

12  various committees).  Defendants initially proposed approximately 240 search term combinations;

13  after multiple exchanges and several telephone conversations over the course of the past six months,

14  that list has been expanded by Plaintiffs to include more than 3,000 search term combinations.  In

15  addition, each Defendant has been working with Plaintiffs to come to an agreed resolution on the

16  scope of each Defendant's financial information that will be produced in this case.

17      While these negotiations have been occurring, Defendants have produced more than 2.3

18  million pages of discovery materials.  The NCAA has reproduced the entirety of its document

19  production from *O'Bannon v. NCAA*, Case No. 09-cv-3329-CW (N.D. Cal.), in addition to all of its

20  witnesses' deposition transcripts (and videos) and expert materials.  The NCAA has also reproduced

21  more than half of the document production it made last year in *Rock v. NCAA*, Case No.

22  12-cv-1019-JMS (S.D. Ind.).  The NCAA also reproduced its document production from *White v.*

23  *NCAA*, Case No. 06-cv-0999-VBF (C.D. Cal.), and worked with Plaintiffs to attempt to obtain

24  permission to reproduce documents produced by NCAA member institutions in both *O'Bannon* and

25  *White* in response to third-party subpoenas.  Conference Defendants, similarly, have produced tens of

26  thousands of pages of documents that they produced as third-parties in *O'Bannon* and *White*.

27      The discovery sought from and produced by Plaintiffs is, of course, much smaller in scope and

28

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

14

volume.   Defendants have served interrogatories and document requests on Plaintiffs and have deposed those named Plaintiffs who are seeking to serve as class representatives in the pending motions for class certification under Rule 23(b)(2).  Defendants will need to depose the remaining Plaintiffs.  Defendants also may seek merits discovery from third-parties.

Because of Plaintiffs' expansive discovery requests—and Defendants' good faith effort to comply with those requests—once custodians and search terms are finalized and the parties conclude their negotiations regarding that agreed scope of discovery, document discovery likely will take a year to complete.

## IX.   CLASS ACTIONS

### *Jenkins* Plaintiffs' Statement

*Jenkins* Plaintiffs have moved for certification of two Rule 23(b)(2) injunctive classes of (1) all NCAA Division I Football Bowl Subdivision football players who received or will receive a written offer for a full grant-in-aid as defined in NCAA Bylaw 15.02.5, or who received or will receive such a full grant-in-aid; and (2) all NCAA Division I men's basketball players who received or will receive a written offer for a full grant-in-aid as defined in NCAA Bylaw 15.02.5, or who received or will receive such a full grant-in-aid.  The *Jenkins* Plaintiffs do not seek certification of a damages class or of any class consisting of women's basketball players. The hearing on the Plaintiffs' Joint Amended Motion for Class Certification is set for October 1, 2015, in conjunction with the Case Management Conference.

### CAC Plaintiffs' Statement

The pending Joint Motion for Class Certification, to be heard in connection with the Case Management Conference, details the CAC Plaintiffs' proposed classes.  The CAC Plaintiffs will move for certification of damages classes under Federal Rule of Civil Procedure 23(b)(3) after the close of discovery.

### Defendants' Statement

Defendants oppose Plaintiffs' Joint Amended Motion for Class Certification on the ground, among others, that there are inherent conflicts of interest among the putative class members in

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Plaintiffs' proposed classes. The free market model of professional sports that Plaintiffs propose, in which student-athletes would compete for compensation on the basis of their value to their teams, would inevitably benefit some class members, star athletes, while harming others, absent class members who are not star athletes and would lose some or all of their athletic scholarships as a result of the diversion of university resources to pay for the compensation of other putative class members.

In addition, the legal theories that would be in the interests of some putative class members to advance—for instance, that the cap on the amount of the maximum permissible grant-in-aid that was in effect when these actions originally were filed was artificially low as a result of an alleged antitrust violation, and that the applicable NCAA rules should allow for the grant of the full cost of attendance—are legally inconsistent with the legal theories that other putative class members would advance (and some do advance)—that the only legally permissible collegiate model is a "free and open market" for student athletes.

Indeed, the CAC Plaintiffs identify above conflicting theories in their descriptions of the relief they seek for the purported injunctive relief and damages classes. For injunctive relief, they seek the elimination of the "present NCAA Bylaw that limits athletics-related financial aid to the presently-defined grant-in-aid" which is currently defined as the full Cost of Attendance. For damages, they inconsistently seek "an award of damages for the difference between the value of athletics grants-in-aid awarded [presumably prior to the January 2015 amendment] and the Cost of Attendance." This means they are simultaneously arguing that the present definition of the maximum grants-in-aid at the full cost of attendance is unlawful under the antitrust laws, but they seek to use the full cost of attendance as their measure of damages in their proposed but-for world for damages calculations. The latter proposal, in addition to being legally inconsistent, would pit the interests of star athletes who would claim they would have received more compensation than the full cost of attendance in a free market against those of less recognized players, who would be happy to obtain the difference between the grants-in-aid they did receive and their hypothetical individual cost of attendance at their specific schools.

These irreconcilable conflicts of interest prevent certification of any classes pursuant to Rule

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

16

1   23(b)(2) or (b)(3).

2       Also, Plaintiffs' unprecedented suggestion that the Court certify separate, overlapping

3   injunctive relief classes in the *Jenkins* and CAC actions, asserting the same issues of alleged antitrust

4   illegality of the same NCAA rules, and to allow them to be tried separately, does nothing to avoid or

5   resolve the conflicts of interest among the putative class members, and would violate mandatory

6   bedrock legal principles governing class action litigation and the constitutional rights of the

7   Defendants and/or absent class members.

8       The proposed CAC and *Jenkins* classes overlap completely—the classes proposed by the CAC

9   Plaintiffs include all of the putative class members proposed by the *Jenkins* Plaintiffs, but are broader,

10  and include women basketball players, former players, and seek monetary damages as well as

11  injunctive relief.  Both actions are based on the alleged illegality under Section 1 of the Sherman Act

12  of the same NCAA rules relating to scholarships and limits on compensation to student-athletes.

13  Litigation of those claims will involve identical legal and factual issues.

14      Fundamental, and binding, legal principles of *res judicata*, the single action doctrine, and the

15  Seventh Amendment right to a jury trial—not to mention practical matters of case

16  management—preclude the litigation of those same claims in two separate, overlapping class actions.

17  For instance, if the *Jenkins* action were allowed to race ahead to final judgment (in another court) as

18  *Jenkins* counsel suggest, that judgment would bind all members of the same class or classes on all of

19  their class claims, and *res judicata* will preclude the litigation of the same claims in any other action.

20  The *Jenkins* Plaintiffs have decided not to pursue claims for monetary damages.  If a separate trial of

21  their injunctive relief-only claims were allowed, the single action doctrine and *res judicata* would

22  preclude the pursuit of damages claims—which the CAC Plaintiffs have asserted on behalf of the same

23  classes.

24      As well, Defendants are entitled to a jury trial on all legal claims, which include at a minimum

25  any claims for monetary damages.  The liability issues for injunctive relief and damages in these

26  actions are the same.  Controlling United States Supreme Court law applying the Seventh Amendment

27  entitles Defendants—and the CAC Plaintiffs—to a jury trial of all such issues, prohibiting a separate

28

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

bench trial of the injunctive relief claims as the *Jenkins* Plaintiffs propose.

As stated above, Defendants believe that the CAC Plaintiffs' motion for certification of a Rule 23(b)(3) damages class should be scheduled to be submitted as promptly as possible, and that determination of whether claims may be certified in this action under 23(b)(3) must be decided before these and other significant case management matters can be decided by the Court.   The CAC Plaintiffs' proposal that class certification await the conclusion of discovery should be rejected.   As Rule 23(c)(1)(A) makes clear, whether an action may proceed as a class action must be determined early in the case.   Awaiting the close of discovery is wholly inconsistent with Rule 23(c)(1)(A).

## X.   RELATED CASES

The parties do not believe there is anything new to report regarding Related Cases.

## XI.   RELIEF

### *Jenkins* Plaintiffs' Statement

The *Jenkins* Plaintiffs seek declaratory and injunctive relief, attorneys' fees and costs, and any other relief to which *Jenkins* Plaintiffs and members of the class are entitled, as may be appropriate.

### CAC Plaintiffs' Statement

The CAC Plaintiffs seek individual and class-wide damages, declaratory and injunctive relief, attorneys' fees and costs, and other relief to which the CAC Plaintiffs and members are entitled.

### Defendants' Statement

As stated above, the Defendants oppose all forms of relief sought by the *Jenkins* and CAC Plaintiffs and contend that none of the claims they assert may properly be certified as class actions under applicable law.

The CAC Plaintiffs have not identified "the amount of any damages sought and a description of the bases on which damages are calculated" as required by Local Rules of Court 16-9, 16-10 and the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement.

Defendants do not believe that injury-in-fact, antitrust injury, or any purported damages could be determined on the basis of common, class-wide evidence, or on any basis that could satisfy

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

applicable class action legal requirements.  Injury and damages would be required to be determined, and calculated, on an individual plaintiff-by-plaintiff basis, based on evidence unique to individual plaintiffs and putative class members, and that Plaintiffs therefore would "fall[] far short of establishing that damages are capable of measurement on a class-wide basis" as they are required to do.  *Comcast Corp. v. Behrend*, 569 U.S. ___, ___, 133 S. Ct. 1426, 1433 (2013).

## XII.   SETTLEMENT AND ADR

The parties commenced mediation on February 25, 2015 with Professor Eric D. Green.  They were unable to conclude a settlement of the actions.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to proceed before a Magistrate Judge for all purposes.

## XIV.   OTHER REFERENCES

This case is not suitable for binding arbitration or for the appointment of a special master.

## XV.   NARROWING OF ISSUES

### *Jenkins* **Plaintiffs' Statement**

The *Jenkins* Plaintiffs note that the issues in their case are narrower than the issues posed by the CAC Plaintiffs.  The *Jenkins* action does not require the court to consider certification of a damages class, damages calculations, or a women's basketball class.  The *Jenkins* Plaintiffs' Second Amended Complaint defines the issues as narrowly as possible at this time.

### **CAC Plaintiffs' Statement**

The CAC Plaintiffs are not presently aware of ways to narrow the issues, but after the close of discovery will consider whether they can narrow any issues by dispositive motion practice.

### **Defendants' Statement**

Defendants have no suggestions for narrowing the issues at this time.

## XVI.   EXPEDITED SCHEDULE

The parties do not believe that the Expedited Trial Procedure of General Order No. 64 Attachment A is appropriate for this case.

As set forth below, the *Jenkins* Plaintiffs propose a schedule that would allow trial to begin

19

within approximately one year of the Court's decision on the Joint Amended Motion for Class Certification.

## XVII. SCHEDULING

### *Jenkins* Plaintiffs' Statement

The *Jenkins* Plaintiffs seek only injunctive and declaratory relief, and will be remanded to trial in New Jersey. They seek an expedited schedule, separate from the CAC Plaintiffs' damages claims. The Court has ordered a separate round of briefing to address certification of a class of CAC Plaintiffs under Rule 23(b)(3). That motion practice will not implicate, and therefore should not delay, the *Jenkins* Plaintiffs' claims. The *Jenkins* Plaintiffs suggest the following deadlines for their action:

The parties exchange expert disclosures under Rule 26(a)(2) thirty days after the Court's decision on the Joint Amended Motion for Class Certification.

The parties complete fact discovery, including fact depositions, within six months of the Court's decision on the Joint Amended Motion for Class Certification.

The parties file their affirmative expert reports thirty days after the close of fact discovery. This would include Defendants filing affirmative expert reports regarding any proffered procompetitive justifications for the restraints at issue because Defendants bear the burden of proof for such justifications. *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 985 (N.D. Cal. 2014).

The parties file any rebuttal expert reports ninety days after the affirmative reports.

The parties complete expert discovery fifteen days after the rebuttal expert reports are filed.

Dispositive motions will be due forty-five days after the close of expert discovery. Responses to dispositive motions will be due thirty days after dispositive motions are filed. Replies to responses will be due twenty-one days after responses are filed.

The *Jenkins* action is remanded to the District of New Jersey for trial.

### CAC Plaintiffs' Statement

The CAC Plaintiffs concur with the *Jenkins* Plaintiffs that an additional six month discovery period is appropriate. The CAC Plaintiffs additionally suggest that, in order to make the six month

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

deadline achievable, the parties work together to present stipulated or competing discovery plans to Magistrate Cousins that, for example (1) identify key document custodians for whom Defendants will prioritize document productions; and (2) provides targeted, percentage-based completion dates for various stages of Defendants' anticipated document productions (for example, 75% of documents produced within 3 months) so that Plaintiffs have adequate time to review documents and to prepare for and take depositions based on the documents.

The CAC Plaintiffs believe that discovery that is specific to their damages issues can continue to proceed in parallel with the discovery that is common to both cases.

The CAC Plaintiffs are in accord with the *Jenkins* Plaintiffs' proposed schedule regarding expert discovery.

The CAC Plaintiffs additionally state that class certification proceedings can proceed in parallel with dispositive motion practice and in accord with the schedule set forth above by the *Jenkins* Plaintiffs. If that proves to be unworkable, the parties can report to the Court and provide alternative suggestions on how to proceed.

**Defendants' Statement**

Defendants oppose the *Jenkins* Plaintiffs' suggestion that pre-trial proceedings for the *Jenkins* action and the CAC action should be conducted on different schedules. These actions were transferred to this Court for coordinated pre-trial proceedings, and the schedule should be consistent with that transfer order.

If, for any reason, Plaintiffs' pending motion for certification of injunctive relief classes is not denied in its entirety, the CAC Plaintiffs' motion for certification of a Rule 23(b)(3) damages class should be heard promptly. The CAC Plaintiffs' proposal that class certification await the conclusion of discovery should be rejected. As Rule 23(c)(1)(A) makes clear, whether an action may proceed as a class action must be determined early in the case. Awaiting the close of discovery is wholly inconsistent with Rule 23(c)(1)(A).

Moreover, the CAC Plaintiffs' suggestion that (b)(3) class certification proceedings be held in abeyance pending discovery and then double-track with dispositive motion practice is unworkable,

would unduly burden and prejudice Defendants, and is contrary to the CAC Plaintiffs' prior submission to this Court which proposed the filing of their opening brief and expert submissions a mere seventy-one (71) days after the filing of Plaintiffs' reply in support of the (b)(2) motion. *See* Case Management Report on Class Certification Briefing and Settlement at 1:8-13, 1:21-23 (Dkt. 141). It is now well past that deadline. CAC Plaintiffs have at no prior time suggested that their (b)(3) certification motion needed to await the close of discovery, and the Court should direct the prompt filing of that motion.

Defendants would file their opposition to Plaintiffs' motion for (b)(3) class certification 120 days after Plaintiffs file their motion. Plaintiffs would file their reply papers, if any, sixty days after Defendants file their opposition papers.

In the meantime, the parties will continue to work on discovery; however, given the significant amount of document discovery Plaintiffs have requested and the over 100 witnesses identified in Plaintiffs' initial disclosures, completion of document discovery and fact depositions within a six month period, as proposed by Plaintiffs, is unrealistic. After determination of the (b)(2) and (b)(3) class certification motions, Plaintiffs and Defendants can work with Magistrate Judge Cousins to develop a reasonable discovery plan, and Defendants reserve their responses to CAC Plaintiffs' specific, illustrative suggestions for that plan above, for that negotiation.

Once custodians and search terms are finalized, Defendants will proceed with document production, which, because of Plaintiffs' expansive discovery requests, likely will take a year to complete. Fact depositions will commence upon the substantial completion of document production and should be completed within six months following their commencement. The parties should exchange expert disclosures under Rule 26(a)(2)(A) thirty days after the completion of fact depositions.

The parties should file their affirmative expert reports sixty days after the exchange of expert disclosures.

The parties should complete expert discovery thirty days after the rebuttal expert reports are filed.

Dispositive motions should be due sixty days after the close of expert discovery. Responses to dispositive motions should be due sixty days after dispositive motions are filed. Replies to responses should be due thirty days after responses are filed.

## XVIII. TRIAL

### *Jenkins* **Plaintiffs' Statement**

The *Jenkins* Plaintiffs will have a bench trial in the U.S. District Court for the District of New Jersey. The *Jenkins* Plaintiffs are unable to estimate the length of the trial at this time.

### **CAC Plaintiffs' Statement**

The CAC Plaintiffs will have a jury trial on damages in this Court, and will further ask the Court to enter an injunction and grant declaratory relief. The CAC Plaintiffs are unable to precisely estimate the length of trial at this time, but believe that it likely could be completed in fifteen (15) court days.

### **Defendants' Statement**

If the action is not dismissed prior to trial, Defendants submit that there should be only one trial of this matter. Defendants are unable to estimate the length of the trial at this time.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES

### *Jenkins* **Plaintiffs' Statement**

The *Jenkins* Plaintiffs have no non-party interested entities to disclose.

### **CAC Plaintiffs' Statement**

The CAC Plaintiffs have no non-party interested entities to disclose.

### **Defendants' Statement**

Defendants have complied with their disclosure obligations under Civil Local Rule 3-15. Pursuant to those disclosures, the National Collegiate Athletic Association stated that it has no non-party interested entities to disclose and each of the Conference Defendants identified their member schools. Those member schools are identified by name in the attached Exhibit A.

## XX. PROFESSIONAL CONDUCT

The parties' attorneys of record have reviewed the Guidelines for Professional Conduct for the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

23

Northern District of California.

## XXI.   OTHER

The CAC Plaintiffs note that there are two administrative motions pending relating to certain confidential documents and information filed in connection with the pending joint motion for class certification.  The CAC Plaintiffs do not believe that the parties have any disputes as to those motions, and they are ready to be granted by this Court, or referred to Magistrate Cousins if the Court deems it appropriate to do so.

Dated:  September 24, 2015.

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

24

1

By: /s/ Jeffrey L. Kessler
Jeffrey L. Kessler
David G. Feher
David L. Greenspan
Timothy M. Nevius
Joseph A. Litman
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com

Derek J. Sarafa
**WINSTON & STRAWN LLP**
35 W. Upper Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
dsarafa@winston.com

Sean D. Meenan
Jeanifer E. Parsigian
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
smeenan@winston.com

*Counsel for Jenkins Plaintiffs*
*Plaintiffs' Interim Co-Lead Class Counsel*

By: /s/ Steve W. Berman
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

By: /s/ Bruce L. Simon
Bruce L. Simon
Aaron M. Sheanin
Benjamin E. Shiftan
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Plaintiffs' Interim Co-Lead Class Counsel*

By: /s/ Elizabeth C. Pritzker
Elizabeth C. Pritzker
Jonathan K. Levine
Bethany L. Caracuzzo
Shiho Yamamoto
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110

*Additional Class Counsel*

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

25

By: /s/ Karen Hoffman Lent
Jeffrey A. Mishkin
Karen Hoffman Lent
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (917) 777-2000
jeffrey.mishkin@skadden.com

Raoul D. Kennedy
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
raoul.kennedy@skadden.com

*Counsel for National Collegiate Athletic Association and Western Athletic Conference*

By: /s/ Benjamin C. Block
Benjamin C. Block
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5205
Facsimile: (202) 778-5205
bblock@cov.com

Rebecca A. Jacobs (SBN 294430)
**COVINGTON & BURLING LLP**
One Front Street
San Francisco, CA 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
rjacobs@cov.com

*Counsel for American Athletic Conference*

By: /s/ Leane K. Capps
Leane K. Capps
Caitlin J. Morgan
**POLSINELLI PC**
Saint Ann Court
2501 N. Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 397-0030
lcapps@polsinelli.com

Amy D. Fitts
**POLSINELLI PC**
120 W. 12th Street
Kansas City, MO 64105
Telephone: (816) 218-1255
afitts@polsinelli.com

Wesley D. Hurst
**POLSINELLI PC**
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 556-1801
whurst@polsinelli.com

*Counsel for the Big 12 Conference, Inc. and Conference USA*

By: /s/ Andrew S. Rosenman
Andrew S. Rosenman
Britt M. Miller
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606-46537
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
arosenman@mayerbrown.com

Richard J. Favretto
**MAYER BROWN LLP**
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
rfavretto@mayerbrown.com

*Counsel for The Big Ten Conference, Inc.*

26

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

By: */s/ R. Todd Hunt*
R. Todd Hunt
**WALTER HAVERFIELD LLP**
The Tower at Erieview
1301 E. 9th Street, Suite 3500
Cleveland, OH  44114-1821
Telephone:  (216) 928-2935
Facsimile:  (216) 916-2372
rthunt@walterhav.com

*Counsel for Mid-American Conference*

By: */s/ Adam Brezine*
Adam Brezine
**BRYAN CAVE LLP**
560 Mission Street, 25th Floor
San Francisco, CA  94105
Telephone:  (415) 674-3400
Facsimile:  (415) 675-3434
adam.brezine@bryancave.com

Richard Young
Brent Rychener
**BRYAN CAVE LLP**
90 South Cascade Avenue, Suite 1300
Colorado Springs, CO  80903
Telephone:  (719) 473-3800
Facsimile:  (719) 633-1518
richard.young@bryancave.com
brent.rychener@bryancave.com

*Counsel for Mountain West Conference*

By: */s/ Robert W. Fuller*
Robert W. Fuller, III
Nathan C. Chase Jr.
Mark W. Merritt
Lawrence E. Moore, III
Pearlynn G. Houck
Amanda R. Pickens
**ROBINSON BRADSHAW & HINSON**
101 N. Tryon St., Suite 1900
Charlotte, NC  28246
Telephone:  (704) 377-2536
Facsimile:   (704) 378-4000
rfuller@rbh.com

Mark J. Seifert
Robert R. Moore
**ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP**
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111
Telephone:  (415) 837-1515
Facsimile:  (415) 837-1516
mseifert@allenmatkins.com

*Counsel for Southeastern Conference*

By: */s/ Mark A. Cunningham*
Mark A. Cunningham
**JONES WALKER**
201 St. Charles Avenue
New Orleans, LA  70170-5100
Telephone:  (504) 582-8536
Facsimile:   (504) 589-8536
mcunningham@joneswalker.com

*Counsel for Sun Belt Conference*

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

27

By: */s/ D. Erik Albright*
D. Erik Albright
**SMITH MOORE LEATHERWOOD LLP**
300 North Greene Street, Suite 1400
Greensboro, NC 27401
Telephone: (336) 378-5368
Facsimile: (336) 433-7402
erik.albright@smithmorrelaw.com

Jonathan P. Heyl
**SMITH MOORE LEATHERWOOD LLP**
101 N. Tryon Street, Suite 1300
Charlotte, NC 28246
Telephone: (704) 384-2625
Facsimile: (704) 384-2625
jon.heyl@smithmoorelaw.com

Charles La Grange Coleman, III
**HOLLAND & KNIGHT LLP**
50 California Street, Suite 2800
San Francisco, CA 94111-4624
Telephone: (415) 743-6900
Facsimile: (415) 743-6910
ccoleman@hklaw.com

*Counsel for The Atlantic Coast Conference*

By: */s/ Scott P. Cooper*
Scott P. Cooper
Jennifer L. Jones
Jacquelyn N. Ferry
**PROSKAUER ROSE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
scooper@proskauer.com

*Counsel for Pac-12 Conference*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

28

**ECF ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from each of the other signatories above.


_____*/s/ Jeffrey L. Kessler*_____
Jeffrey L. Kessler

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802