# EXHIBIT A

Steve W. Berman *(Pro Hac Vice)*
Craig R. Spiegel (122000)
Ashley A. Bede *(Pro Hac Vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
craigs@hbsslaw.com
ashleyb@hbsslaw.com

Bruce L. Simon (96241)
Aaron M. Sheanin (214472)
Benjamin E. Shiftan (265767)
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
asheanin@pswlaw.com
bshiftan@pswlaw.com

*Plaintiffs' Interim Co-Lead Class Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ATHLETIC GRANT-IN-AID CAP ANTITRUST LITIGATION | No. 4:14-md-2541-CW<br><br>SETTLEMENT AGREEMENT |
| This Document Relates to:<br><br>ALL ACTIONS EXCEPT<br><br>*Jenkins v. Nat'l Collegiate Athletic Ass'n*<br>Case No. 14-cv-0278-CW | COMPLAINT FILED: March 5, 2014 |

This Settlement Agreement (hereinafter, "Agreement") is made and entered into as of the 3rd day of February, 2017, by and between: National Collegiate Athletic Association ("NCAA"), Pac-12 Conference, The Big Ten Conference, Inc., The Big 12 Conference, Inc., Southeastern Conference, Atlantic Coast Conference, American Athletic Conference, Conference USA, Mid-American Athletic Conference, Inc., Mountain West Conference, Sun Belt Conference, and Western Athletic Conference (collectively, the "Conference Defendants"; collectively with the NCAA, "Defendants"), and Plaintiffs Shawne Alston, Nicholas Kindler, Afure Jemerigbe, and D.J. Stephens (collectively, "Plaintiffs"), both individually and on behalf of the Classes (defined herein). This Agreement is intended by the Settling Parties (defined herein) to fully, finally and forever resolve, discharge and settle the Released Claims (defined herein), upon and subject to the terms and conditions hereof.

# R E C I T A L S

WHEREAS, Plaintiffs are prosecuting the above-captioned litigation on their own behalf and on behalf of the Classes against Defendants;

WHEREAS, Plaintiffs allege, among other things, that Defendants' amateur athlete eligibility rules violate Section 1 of the Sherman Act, 15 U.S.C. § 1, *et seq.* ("Section 1") as alleged in Plaintiffs' Consolidated Amended Complaint filed in MDL Docket No. 60;

WHEREAS, Defendants deny each and all of the claims and allegations of wrongdoing made by the Plaintiffs; deny that any Defendant has violated any law or other duty; deny that any Defendant has engaged in any wrongdoing or any other act or omission that would give rise to liability or cause Plaintiffs injuries, damages or entitlement to any relief; deny that they have collectively or individually participated in any unlawful conspiracy; would contest certification of a non-settlement Rule 23(b)(3) damages class; and state that they are entering into this Agreement to avoid the further uncertainties, expense, inconvenience, delay and distraction of burdensome and protracted litigation, and thereby to put to rest this controversy with respect to the Plaintiffs and the Classes and avoid the risks inherent in complex litigation;

WHEREAS, Plaintiffs and Defendants agree that the fact of this Agreement, any of the terms in this Agreement, any documents filed in support of this Agreement, or any statement made in the

-1-

negotiation thereof shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law, (ii) any liability or wrongdoing by Defendants, (iii) liability on any of the claims or allegations, or (iv) the propriety of certifying a litigation class in any proceeding, and shall not be used by any Person for any purpose whatsoever in the Actions (defined herein) or any other legal proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of this Agreement;

WHEREAS, Plaintiffs and Defendants engaged the services of Professor Eric Green as a mediator to assist in their negotiations, and starting in February 2015, engaged in extensive settlement negotiations, which included multiple in-person and telephonic mediation sessions with Professor Green before agreeing to the terms of this arm's-length Agreement, which embodies all of the terms and conditions of the Settlement (defined herein) between the Settling Parties, and has been reached (subject to the approval of the Court) as provided herein and is intended to supersede any prior agreements between the Settling Parties;

WHEREAS, Plaintiffs and Plaintiffs' Class Counsel (defined herein) have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Plaintiffs' Consolidated Amended Complaint filed in MDL Docket No. 60, the legal and factual defenses thereto and the applicable law, that it is in the best interests of the Plaintiffs and the Classes to enter into this Agreement to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Plaintiffs and the Classes, and, further, that Plaintiffs' Class Counsel consider the Settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Plaintiffs and the Classes; and

WHEREAS, for the avoidance of all doubt, this Agreement does not settle or release any claim(s) solely for prospective injunctive relief that Plaintiffs, the Classes, or any other party in this or any other proceeding has brought or could bring in the future;

-2-

**AGREEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Parties, by and through their attorneys of record, that, subject to the approval of the Court, the Actions and the Released Claims (defined herein) as against Defendants shall be finally and fully settled, compromised and dismissed on the merits and with prejudice upon and subject to the terms and conditions of this Agreement, as follows:

**A.**     **Definitions**

**1.**     As used in this Agreement the following terms have the meanings specified below:

(a)     "Actions" means *In Re*: *National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litigation,* Case No. 4:14-MD-02541-CW, and each of the cases brought on behalf of Plaintiffs previously consolidated and/or included as part of MDL Docket No. 2541 (excluding *Jenkins v. Nat'l Collegiate Athletic Ass'n*, Case No. 4:14-cv-02758-CW (the "*Jenkins* Action")).

(b)     "Affiliates" means entities controlling, controlled by or under common control with a Releasee or Releasor.

(c)     "Authorized Recipient" means any Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution consistent with any Distribution Plan or order of the Court.

(d)     "Class" or "Classes" are defined as:

**Division I FBS Football Class**: All current and former NCAA Division I Football Bowl Subdivision ("FBS") football student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval (defined herein) of this Settlement, received from an NCAA member institution for at least one academic term (such as a semester or quarter) (1) a full athletics grant-in-aid required by NCAA rules to be set at a level below the cost of attendance, and/or (2) an otherwise full athletics grant-in-aid.

**Division I Men's Basketball Class**: All current and former NCAA Division I men's basketball student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval of this Settlement, received from an NCAA member institution for at least one academic term (such as a semester or quarter) (1) a full athletics grant-in-aid required by NCAA rules to be set at

a level below the cost of attendance, and/or (2) an otherwise full athletics grant-in-aid.

**Division I Women's Basketball Class:** All current and former NCAA Division I women's basketball student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval of this Settlement, received from an NCAA member institution for at least one academic term (such as a semester or quarter) (1) a full athletics grant-in-aid required by NCAA rules to be set at a level below the cost of attendance, and/or (2) an otherwise full athletics grant-in-aid.

(e)    "Class Counsel" means the law firms of Hagens Berman Sobol Shapiro LLP; and Pearson, Simon & Warshaw, LLP.

(f)    "Class Member" means a Person who falls within the definition of the Classes and has not timely and validly elected to be excluded from the Classes pursuant to the procedures set forth herein.

(g)    "Court" means the United States District Court for the Northern District of California.

(h)    "Day" or "Days" has the meaning ascribed to it in Fed. R. Civ. P. 6, and all time periods specified in this Agreement shall be computed in a manner consistent with Fed. R. Civ. P. 6.

(i)    "Distribution Plan" means the plan or formula of allocation of the Gross Settlement Fund whereby the Net Settlement Fund shall in the future be distributed to Authorized Recipients, to be approved by the Court in the form attached hereto as Exhibit A and made a part of this Agreement.

(j)    "Effective Date" means the first date by which all of the events and conditions specified in paragraph 29 of this Agreement have occurred and have been met.

(k)    "Escrow Account" means the bank account to be established at a banking institution chartered pursuant to the National Bank Act by Class Counsel and maintained by the Escrow Agent into which the Gross Settlement Fund shall be deposited, pursuant to the Escrow Agreement. Such Escrow Account is to be administered under the Court's continuing supervision and control.

-4-

(l) "Escrow Agent" means the agent designated by Class Counsel and any successor agent.

(m) "Escrow Agreement" means the agreement to be mutually agreed to by the Settling Parties concerning the Escrow Account. The Escrow Agent shall act only in accordance with the Escrow Agreement.

(n) "Exclusion/Objection Deadline" means the deadline for requesting exclusion from the Classes or objecting to the Settlement, as set forth in the notice to Class Members.

(o) "Execution Date" means the date of the last signature set forth on the signature pages below.

(p) "Final" means, with respect to any order of the Court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Agreement, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind. Any appeal or other proceeding pertaining solely to any order issued with respect to an application for attorneys' fees and expenses consistent with this Agreement shall not in any way delay or preclude the Judgment from becoming Final.

(q) "Gross Settlement Fund" means the Settlement Amount plus any interest that may accrue.

-5-

(r)    "Judgment" means the order of judgment and dismissal of the Actions with prejudice.

(s)    "Net Settlement Fund" means the Gross Settlement Fund, less the payments set forth in paragraph 18(a)-(c).

(t)    "Notice and Administrative Costs" means the reasonable and authorized costs and expenses not in excess of $4,000,000 absent written consent of all Settling Parties, to be paid out of the Gross Settlement Fund to pay for notice to the Classes and related administrative costs.

(u)    "Notice and Claims Administrator" means the claims administrator(s) to be selected by Class Counsel and approved by the Court.

(v)    "Opt-Out" means a Person who falls within the definition of the Classes who has timely and validly elected to be excluded from the Classes pursuant to the procedures set forth herein.

(w)    "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs, predecessors, successors, representatives or assignees of any of the foregoing.

(x)    "Released Claims" means any and all past, present and future claims, demands, rights, actions, suits, or causes of action, for monetary damages of any kind (including but not limited to actual damages, statutory damages, and exemplary or punitive damages), whether class, individual or otherwise in nature, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or

hereafter can, shall or may have, arising out of or relating in any way to any act or omission of the Releasees (or any of them) that is alleged in Plaintiffs' Actions or could have been alleged in Plaintiffs' Actions. Notwithstanding the foregoing, no claims expressly excluded from the scope of the releases pursuant to paragraph 12 are "Released Claims."

(y)     "Releasees" means the NCAA, each of the Conference Defendants, and each of their respective member institutions (past and present), subsidiary, parent, related, and affiliated Persons, and each of their respective former, present and future officers, directors, employees, managers, members, partners, agents, servants, shareholders (in their capacity as shareholders), attorneys and legal representatives, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing.

(z)     "Releasors" means the Plaintiffs and each and every Class Member, on their own behalf and on behalf of their respective families, their former, present or future agents and legal representatives, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing.

(aa)    "Settlement" means the settlement of the Released Claims set forth herein.

(bb)    "Settlement Amount" means the total sum of $208,664,445.00.

(cc)    "Settling Parties" means collectively, Defendants and Plaintiffs (on behalf of themselves and the Classes).

(dd)    "Unknown Claims" means any Released Claim that a Plaintiff and/or Class Member does not know or suspect to exist in his favor at the time of the release of the Releasees that if known by him or her, might have affected his or her settlement with and release of the Releasees, or might have affected his or her decision not to object to or opt out of this Settlement.

**B.** **Preliminary Approval Order, Notice Order and Settlement Hearing**

**2.** **Reasonable Best Efforts to Effectuate This Settlement**. The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement.

**3.** **Certification of Classes.** For settlement purposes only, the Settling Parties agree to certification of the Classes pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Settling Parties' stipulation to the certification of the Classes is for purposes of the Settlement set forth in this Agreement only. Defendants' agreement to the certification of the Classes solely for the purpose of this Agreement does not, and shall not, constitute, in this or any other proceeding, an admission by any Defendant of any kind or any determination that certification of a class for trial or other litigation purposes in the Actions or any other separate action is, or would be, appropriate. If the Settlement is not granted Final Approval or this Agreement is otherwise terminated or rendered null and void, the certification of the Classes shall be automatically vacated and shall not constitute evidence or any determination that the requirements for certification of a class for trial or other litigation purposes in these Actions or any other action are satisfied; in such circumstances, Defendants reserve all rights to challenge certification of any class or subclass for trial or other litigation purposes in the Actions or in any other action on all available grounds as if no class had been certified in these Actions for purposes of the Settlement.

**4.** **Motion for Preliminary Approval**. As soon as practicable following the Execution Date, Class Counsel shall submit this Agreement (including Exhibit A) to the Court and shall apply for entry of a preliminary approval order ("Preliminary Approval Order"), requesting, *inter alia*, preliminary approval ("Preliminary Approval") of the Settlement. The texts of the Motion for Preliminary Approval (including the Preliminary Approval Order, and Notice Plan (defined herein)) have been provided to Defendants for review. The proposed form of Notice to be used pursuant to the Notice Plan is attached hereto as Exhibit B.

5.       **Proposed Form of Notice**.  As part of the Motion for Preliminary Approval, Class Counsel shall submit to the Court for approval a proposed form of, method for and schedule for dissemination of notice to the Classes (the "Notice Plan").  This Notice Plan shall recite and ask the Court to find that the proposed form of and method for dissemination of notice to the Classes constitutes valid, due and sufficient notice to the Classes, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23. Defendants shall be responsible for providing all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to be provided to state attorneys general or to the United States of America.

6.       **Motion for Final Approval and Entry of Final Judgment**.  Not less than thirty-five (35) Days prior to the date set by the Court to consider whether this Settlement should be finally approved, Class Counsel shall submit a motion for final approval ("Final Approval") of the Settlement by the Court.  The Motion for Final Approval (including the Final Approval Order (defined herein) and supporting papers) shall be provided to Defendants for review at least 7 Days prior to the filing of the Motion for Final Approval, and Defendants will have an opportunity to comment on its contents before it is filed.  Class Counsel shall seek entry of the final approval order ("Final Approval Order") and Judgment:

(a)     finding that the Court has personal jurisdiction over the Plaintiffs and all Settlement Class Members and that the Court has subject matter jurisdiction to approve this Settlement and Agreement;

(b)     certifying the Classes, pursuant to Federal Rule of Civil Procedure 23, solely for purposes of this Settlement;

(c)     fully and finally approving the Settlement contemplated by this Agreement and its terms as being fair, reasonable and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms and conditions;

(d)    declaring this Agreement and the Final Approval Order and Judgment to be binding on and to have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the Releasors, as well as their agents, heirs, executors or administrators, successors, insurers and assigns;

(e)    finding that the notice given to the Class Members pursuant to the Notice Plan (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably calculated under the circumstances to apprise Class Members of the pendency of the Actions, of their right to object to or exclude themselves from the proposed Settlement as applicable and of their right to appear at the final approval hearing and of their right to seek relief, (iii) constituted reasonable, due, adequate and sufficient notice to all Persons entitled to receive notice, and (iv) complies in all respects with the requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable law;

(f)    finding that Class Counsel and the Plaintiffs adequately represented the Class Members for purposes of entering into and implementing this Agreement and Settlement;

(g)    directing that the claims for damages be dismissed with prejudice and, except as provided for herein, without costs;

(h)    discharging and releasing the Releasees from all Released Claims;

(i)    permanently barring and enjoining the institution and prosecution, by Releasors, of any of the Released Claims;

(j)    approving the Opt-Out List (defined herein) and determining that the Opt-Out List is a complete list of all Persons who have timely requested exclusion from the Classes, and accordingly, shall neither share in nor be bound by the Final Approval Order and Judgment;

-10-

(k)      determining that the Agreement and the Settlement provided for herein and any proceedings taken pursuant thereto are not and should not in any event be offered or received as evidence of a presumption, concession, acknowledgment or an admission of liability or of any wrongdoing by Defendants or any Releasees or of the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the Agreement;

(l)      reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation and enforcement of this Agreement;

(m)      determining pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of a final judgment as to the claims for damages;

(n)      authorizing the Settling Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement as shall be consistent in all material respects with the Final Approval Order and Judgment and not limit the rights of the Settling Parties or Class Members; and

(o)      containing such other and further provisions consistent with the terms of this Agreement to which the Settling Parties expressly consent in writing.

Class Counsel also will request that the Court approve an application for attorneys' fees and reimbursement of expenses (as described below).

**7.      Stay Order**.  Upon the date that the Court enters the Preliminary Approval Order, Plaintiffs and all Class Members shall be barred and enjoined from commencing, instituting or continuing to prosecute any action or any proceeding seeking damages of any kind (including but not limited to actual damages, statutory damages, and exemplary or punitive damages) in any court of

-11-

law, arbitration tribunal, administrative forum or other forum of any kind worldwide, based on the Released Claims.  Nothing in this provision shall prohibit the Plaintiffs or Class Counsel from continuing to prosecute claims solely for injunctive relief or participate in discovery in the Actions.

### C.   **Releases**

**8.     Released Claims**.  Upon the Effective Date, pursuant to the Court's entry of the Final Approval Order and Judgment, the Released Claims against each and all of the Releasees shall be released and dismissed with prejudice and on the merits (without an award of costs to any party other than those provided in paragraphs 24 and 25 herein).  The Releasors (regardless of whether any such Releasor ever seeks or obtains any recovery by any means, including, without limitation, by receiving any distribution from the Gross Settlement Fund) shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all Released Claims against the Releasees.

**9.     No Future Actions Following Release**.  The Releasors shall not, after the Effective Date, seek (directly or indirectly) to commence, institute, maintain or prosecute any suit, action or complaint for damages of any kind (including but not limited to actual damages, statutory damages, and exemplary or punitive damages) against Defendants or any other Releasees (including pursuant to the Actions), based on the Released Claims, in any forum worldwide, whether on his or her own behalf or as part of any putative, purported or certified class.

**10.    Covenant Not to Sue**.  Releasors hereby covenant not to sue the Releasees with respect to any such Released Claims.  Releasors shall be permanently barred and enjoined from instituting, commencing or prosecuting any claims against the Releasees for damages of any kind (including but not limited to actual damages, statutory damages, and exemplary or punitive damages) based on the Released Claims.  The Settling Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of any Releasors seeking damages of any kind (including but not limited to actual damages, statutory damages, and exemplary or punitive damages) based on the Released Claims.

**11.     Waiver of California Civil Code § 1542 and Similar Laws**.  In addition to the provisions of paragraph 10, the Releasors expressly acknowledge that they are familiar with and, upon final approval of this Settlement, will waive and release with respect to the Released Claims any and all provisions, rights, and benefits conferred either (a) by Section 1542 of the Civil Code of the State of California, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

(b) by any law of any and all equivalent, similar or comparable federal or state rules, regulations, laws or principles of law of any other jurisdiction that may be applicable herein, or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in paragraph 10 hereof.  The Releasors hereby expressly agree that by executing this Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Released Claims, including Unknown Claims.  The Releasors acknowledge that they may hereafter discover claims or facts other than or different from those which they know, believe, or suspect to be true with respect to the subject matter of the Released Claims, but the Releasors hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or unasserted, contingent or non-contingent, and accrued or unaccrued claim, loss or damage with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts.  The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is contractual and not a mere recital.

**12.     Claims Excluded from Release.**     Notwithstanding the foregoing, the releases provided herein shall not release claims against Defendants solely for prospective injunctive relief for claims arising out of the facts and allegations of the Actions (including but not limited to the claims currently asserted in the *Jenkins* Action).  This Settlement and the release of the Released Claims also is not intended to, and does not, settle, release or discharge the separate claims currently

-13-

asserted in: *Pugh v. National Collegiate Athletic Association*, Case No. 1:15-cv-01747 (S.D. Ind.); *Deppe v. National Collegiate Athletic Association*, Case No. 1:16-cv-00528 (S.D. Ind.); *Vassar v. National Collegiate Athletic Association, et al.*, Case No. 1:16-cv-10590 (N.D. Ill.); *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation*, Case No. 1:13-cv-09116 (N.D. Ill.); *Dawson v. National Collegiate Athletic Association et al.*, Case No. 16-cv-05487 (N.D. Cal.); and *O'Bannon v. National Collegiate Athletic Association*, Case No. 16-15803 (9th Cir.). This Settlement and the release of the Released Claims also is not intended to, and does not, settle, release or discharge any individual personal injury claim including concussion-related claims against the NCAA and/or any member school or conference. This Agreement shall not impair or otherwise affect the right or ability of the plaintiffs in those actions to continue to prosecute those actions or any settlements reached therein. Additionally, the releases provided herein shall not release any claims to enforce the terms of this Agreement.

**13. Dismissal.** Subject to Court approval, all Releasors shall be bound by this Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Actions or this Settlement.

**D. <u>Settlement Fund</u>**

**14. Settlement Payment**. In full, complete, and final settlement of any and all claims for damages in the Actions, Defendants shall pay by wire transfer in immediately available funds fifty percent (50%) of the Settlement Amount ($104,332,202.50) into the Escrow Account within thirty (30) Days after the Court's entry of the Preliminary Approval Order, and the remaining fifty percent (50%) of the Settlement Amount within thirty (30) Days after the Court's entry of the Final Approval Order. In the event that the foregoing dates fall on a Saturday, Sunday, or U.S. bank holiday, the payments will be made on the next business day. The Settlement Amount is an "all in" number which includes, without limitation, all monetary benefits and distributions to the Class Members, attorneys' fees and expenses, escrow fees, taxes, tax expenses, and all other costs and expenses relating to the Settlement (including, but not limited to, administration costs and expenses, notice costs and expenses, and settlement costs and expenses). Under no circumstances will the Defendants

-14-

be required to pay more than the Settlement Amount pursuant to this Agreement and the Settlement set forth herein.  In no event shall any of the Defendants be liable for making any payments under this Settlement before the deadlines set forth in this Agreement.

**15.    Disbursements Prior to Effective Date**.  The Gross Settlement Fund will remain subject to the jurisdiction of the Court, until such time as it is fully distributed in compliance with the Agreement, Escrow Agreement and any applicable Court order.  No amount may be disbursed from the Gross Settlement Fund unless and until the Effective Date, except that:  (a) Notice and Administrative Costs, which may not exceed $4,000,000 absent written consent of all Settling Parties, may be paid from the Gross Settlement Fund as they become due; (b) Taxes and Tax Expenses (as defined in paragraph 16(b) below) may be paid from the Gross Settlement Fund as they become due; and (c) attorneys' fees and reimbursement of litigation costs and expenses ordered by the Court may be disbursed during the pendency of any appeals which may be taken from the Final Approval Order and Judgment.  Class Counsel will attempt in good faith to minimize the amount of Notice and Administrative Costs.

**16.    Taxes**.  The Settling Parties and the Escrow Agent agree to treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)    For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.   The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B-2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or

withholding requirements imposed on distributions from the Gross Settlement Fund, and (iii) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)) and paying any taxes reported thereon.  Such returns (as well as the election described in this paragraph) shall be consistent with the provisions of this paragraph and in all events shall reflect that all Taxes as defined in paragraph 16(b) below on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in paragraph 18 hereof;

(b)     The following shall be paid out of the Gross Settlement Fund:  (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Gross Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon Defendants or its counsel with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this paragraph, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph (collectively, "Tax Expenses").

(c)     In all events neither Defendants nor their counsel shall have any liability or responsibility for the Taxes or the Tax Expenses.  With funds from the Gross Settlement Fund, the Escrow Agent shall indemnify and hold harmless Defendants and their counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further,

-16-

Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall timely be paid by the Escrow Agent out of the Gross Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Recipients any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Defendants nor their counsel are responsible therefor, nor shall they have any liability therefor.  The Settling Parties agree to cooperate with the Escrow Agent, each other, their tax attorneys and their accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**E.**     **Administration and Distribution of Gross Settlement Fund**

**17.**     **Time to Appeal**.  The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether or not an application for attorneys' fees and expenses has been submitted to the Court or resolved.

**18.**     **Distribution of Gross Settlement Fund**.  Upon further orders of the Court, the Notice and Claims Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer the Settlement and shall oversee distribution of the Gross Settlement Fund to Authorized Recipients pursuant to the Distribution Plan.  Subject to the terms of this Agreement, the Distribution Plan and any order(s) of the Court, the Gross Settlement Fund shall be applied as follows:

(a)     To pay all costs and expenses reasonably and actually incurred in connection with providing notice to the Classes in connection with administering and distributing the Net Settlement Fund to Authorized Recipients, and in connection with paying escrow fees and costs as detailed herein, if any;

(b)     To pay the Taxes and Tax Expenses as defined herein;

    (c)    To pay any Fee and Expense Award (defined herein) that is allowed by the Court, subject to and in accordance with the Agreement; and

    (d)    To distribute the balance of the Net Settlement Fund to Authorized Recipients as allowed by the Agreement, the Distribution Plan or order of the Court.

**19.**　**Distribution of Net Settlement Fund**.  Upon the Effective Date and thereafter, and in accordance with the terms of this Agreement, the Distribution Plan and such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Escrow Agent shall distribute the Net Settlement Fund to Authorized Recipients, subject to and in accordance with the following:

    (a)    Each Authorized Recipient who can be identified through records shall receive his or her distribution either by check or electronic payment;

    (b)    If a Class Member who cannot be identified through records timely presents information adequately documenting his or her eligibility for a payment as an Authorized Recipient, distribution will be made to him or her;

    (c)    Except as otherwise ordered by the Court, each member of the Classes who cannot be identified through available records or fails to submit adequate records verifying entitlement to distribution, or otherwise allowed, shall be forever barred from receiving any distributions pursuant to this Agreement and the Settlement set forth herein;

    (d)    The Net Settlement Fund shall be distributed to Authorized Recipients substantially in accordance with the Distribution Plan.  No funds from the Net Settlement Fund shall be distributed to Authorized Recipients until after the Effective Date; and

    (e)    All Class Members shall be subject to and bound by the provisions of this Agreement, the releases contained herein, and the Judgment with respect to all Released Claims, regardless of whether such Class Members seek or obtain any distribution from the Gross Settlement Fund or the Net Settlement Fund.

-18-

20.     **No Liability for Distribution of Settlement Funds**.  Releasees will make reasonable efforts to facilitate Class Counsel's receipt of records necessary to identify Class Members entitled to distribution from the Settlement Amount.  Neither the Releasees nor their counsel, however, shall have any responsibility for, or liability whatsoever with respect to, the distribution of the Gross Settlement Fund; the Distribution Plan; the determination, administration or calculation of claims; the Settlement Fund's qualification as a "qualified settlement fund"; the payment or withholding of Taxes or Tax Expenses; the distribution of the Net Settlement Fund; or any losses incurred in connection with any such matters.  In addition to the releases set forth in paragraphs 10 and 11 herein, the Releasors hereby fully, finally and forever release, relinquish and discharge the Releasees and their counsel from any and all such liability.  No Person shall have any claim against Class Counsel or the Notice and Claims Administrator based on the distributions made substantially in accordance with the Agreement and the Settlement contained herein, the Distribution Plan or further orders of the Court.

21.     **Balance Remaining in Net Settlement Fund**.  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), subject to Court approval, Class Counsel may distribute such balance in an equitable and economic fashion consistent with the Distribution Plan set forth in Exhibit A.    In no event shall the Net Settlement Fund revert to Defendants, and in no event shall any Class Member receive a distribution for any given year that exceeds his or her gap for that year.

22.     **All Claims Satisfied by Net Settlement Fund.**  Each Class Member shall look solely to the Net Settlement Fund for settlement and satisfaction, as provided herein, of all claims released herein.  Except as provided by order of the Court pursuant to this Settlement Agreement, no Class Member shall have any interest in the Gross Settlement Fund, the Net Settlement Fund, or any portion thereof.

23.     **Student-Athlete Eligibility.**   No current student-athlete claiming or receiving a distribution pursuant to this Settlement shall be ineligible to compete in any student-athletics at any

-19-

college or university that is a member of the Defendants as a result of claiming or receiving such distribution.

### F.    Attorneys' Fees and Reimbursement of Expenses

24.    **Fee and Expense Application**.   Class Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Gross Settlement Fund for:  (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Actions; plus (c) any interest on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Settlement Fund, as appropriate, and as may be awarded by the Court.

25.    **Payment of Fee and Expense Award**.   Any amounts that are awarded by the Court pursuant to paragraph 24 (the "Fee and Expense Award") shall be paid from the Gross Settlement Fund consistent with the provisions of this Agreement.

26.    **Award of Fees and Expenses Not Part of Settlement**.   The procedure for, and the allowance or disallowance by the Court of, the Fee and Expense Application are not part of the Settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Agreement.   Any order or proceeding relating to the Fee and Expense Application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment and the Settlement of the Actions as set forth herein.   No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award shall constitute grounds for cancellation or termination of this Agreement.   To the extent that any award of attorneys' fees or expenses is modified or reversed on appeal, the balance shall be returned to the Escrow Account within thirty (30) days of such modification or reversal becoming final and not subject to further appellate review.

27.    **No Liability for Fees and Expenses of Class Counsel**.   Neither the Releasees nor their counsel shall have any responsibility for, or interest in, or liability whatsoever with respect to

-20-

any payment(s) to Class Counsel pursuant to this Agreement and/or to any other Person who may assert some claim thereto or any Fee and Expense Award that the Court may make in the Actions, other than as set forth in this Agreement.  Similarly, neither the Releasees nor their counsel shall have any responsibility for, or interest in, or liability whatsoever with respect to allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

28.    **Final Approval**.  In the event that this Agreement fails to receive Final Approval by the Court as contemplated herein or in the event that it is terminated by either of the Settling Parties under any provision herein, the Settling Parties agree that neither Plaintiffs nor Class Counsel shall be permitted to introduce in evidence, at any hearing, or in support of any motion, opposition or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any information provided by Defendants or the Releasees in furtherance of the performance of this Agreement.

**G.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

29.    **Effective Date**.  The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

(a)    Defendants no longer have any right under paragraph 32(c) to terminate this Agreement or, if Defendants do have such right, they have given written notice to Class Counsel that they will not exercise such right;

(b)    the Court has finally approved the Settlement as described herein, following notice to the Classes and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and has entered the Final Approval Order and Judgment; and

(c)    the Released Claims are dismissed with prejudice pursuant to the Final Approval Order and Judgment; and

(d)    the expiration of appeal periods and/or resolution of all appeals:

-21-

(1)     If no appeal is taken from the Final Approval Order or Judgment, the date after the time to appeal therefrom has expired; or

(2)     If any appeal is taken from the Final Approval Order or Judgment, the date after all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom has expired, in a manner resulting in an affirmance without material modification of the relevant order or judgment.

30.     **Occurrence of Effective Date**.  Upon the occurrence of all of the events referenced in the above paragraph, any and all remaining interest or right of Defendants in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished, and the Gross Settlement Fund (less any Notice and Administrative Costs, Taxes, Tax Expenses or Fee and Expense Award paid) shall be transferred from the Escrow Agent to the Notice and Claims Administrator as successor Escrow Agent within ten (10) Days after the Effective Date.

31.     **Failure of Effective Date to Occur**.  If all of the conditions specified in paragraph 29 are not met, then this Agreement shall be cancelled and terminated, subject to and in accordance with paragraph 36 unless the Settling Parties mutually agree in writing to proceed with this Agreement.  The effectiveness of the Settlement is expressly conditioned on the Settlement being approved by the Court and any appellate court reviewing the Settlement without this Agreement being rejected or required to be modified by any Court ruling or any order resulting from an appeal or other review.  If the Settlement is not finally approved by the Court and any appellate court reviewing the Settlement without modification as set forth in this Agreement, the Agreement shall terminate and cease to have any effect.

32.     **Exclusions**. Any Class Member who wishes to opt out of the Classes must do so on or before the Exclusion/Objection Deadline specified in the notice to Class Members.

(a)     In order to become an Opt-Out, a Class Member must complete and send to the Notice and Claims Administrator a request for exclusion that is post-marked no later than the Exclusion/Objection Deadline.  The request for exclusion must include any information specified in the notices.  Opt-Outs may opt out of the Class only on an individual basis; so-called "mass" or "class" opt-outs shall not be allowed and shall be of no force or effect.

(b)     Class Counsel shall cause copies of requests for exclusion from the Classes to be provided to Defendants' counsel.  No later than fourteen (14) Days after the Exclusion/Objection Deadline, Class Counsel shall provide to Defendants' counsel a complete and final list of Opt-Outs.  With the motion for final approval of the Settlement, Class Counsel will file with the Court a complete list of Opt-Outs, including the name, city and state of the person requesting exclusion and the college or university he or she attended (the "Opt-Out List").  With respect to any Opt-Outs, Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether the person qualifies as a Class Member and/or has standing to bring any claim.

(c)     Defendants shall have the option to terminate this Agreement if the number of Opt-Outs equals or exceeds five percent (5%) of the total combined number of Class Members and Opt-Outs.  After meeting and conferring with Class Counsel, Defendants may elect to terminate this Agreement by serving written notice on Class Counsel by email and overnight courier and by filing a copy of such notice with the Court no later than thirty (30) Days before the date for the final approval hearing of this Agreement, except that Defendants shall have a minimum of ten (10) Days in which to decide whether to terminate this

Agreement after receiving the final Opt-Out List.  In the event that Defendants exercise their option to terminate this Agreement:  (i) this Agreement shall be null and void as to Defendants, and shall have no force or effect and shall be without prejudice to the rights and contentions of Releasees and Releasors in this or any other litigation; and (ii) the Gross Settlement Fund, plus interest thereon, shall be refunded promptly to Defendants, minus such payment (as set forth in this Agreement) of Notice and Administrative Costs and Taxes and Tax Expenses, consistent with the provisions of paragraph 15(a)-(b).

**33.    Objections.** Class Members who wish to object to any aspect of the Settlement must file with the Court a written statement containing their objection prior to the Exclusion/Objection Deadline.  Any award or payment of attorneys' fees made to the counsel of an objector to the Settlement shall be made only by Court order and upon a showing of the benefit conferred to the Classes.  In determining any such award of attorneys' fees to an objector's counsel, the Court will consider the incremental value to the Classes caused by any such objection.  Any award of attorneys' fees by the Court will be conditioned on the objector and his or her attorney stating under penalty of perjury that no payments shall be made to the objector based on the objector's participation in the matter other than as ordered by the Court.  Any such award shall be payable from the Gross Settlement Fund.  Defendants shall have no responsibility for any such payments.

**34.    Failure to Enter Proposed Preliminary Approval Order, Final Approval Order or Judgment**.  If the Court does not enter the Preliminary Approval Order, the Final Approval Order or the Judgment, or if the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified or reversed, then this Agreement and the Settlement incorporated therein shall be cancelled and  terminated;  provided, however, the Settling Parties agree to act in good faith to secure Final Approval of this Settlement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any appellate court.

**35.   Other Orders.**   No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any Settling Party.  Without limiting the foregoing, Defendants shall have, in their sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Actions and the Released Claims.

**36.   Termination**.   Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate, or be cancelled or otherwise fail to become effective for any reason, including, without limitation, in the event that Defendants elect to terminate this Agreement pursuant to paragraph 32(c), the Settlement as described herein is not finally approved by the Court, or the Final Approval Order or Judgment is reversed or vacated following any appeal taken therefrom, then:

(a)   within five (5) Days after written notification of such event is sent by counsel for Defendants to the Escrow Agent, the Gross Settlement Fund—including the Settlement Amount and all interest earned on the Settlement Fund while held in escrow excluding only (i) Notice and Administrative Costs that have either been properly disbursed or are due and owing, (ii) Taxes and Tax Expenses that have been paid or that have accrued and will be payable at some later date, and (iii) attorneys' fees and costs that have been disbursed pursuant to Court order—will be refunded, reimbursed and repaid by the Escrow Agent to Defendants; if said amount or any portion thereof is not returned within such five (5) Day period, then interest shall accrue thereon at the rate of three percent (3%) per annum until the date that said amount is returned;

(b)   within thirty (30) Days after written notification of such event is sent by counsel for Defendants to Class Counsel, all attorneys' fees and costs which

-25-

have been disbursed to Class Counsel pursuant to Court order shall be refunded, reimbursed and repaid by Class Counsel to Defendants; if said amount or any portion thereof is not returned within such thirty (30) Day period, then interest shall accrue thereon at the rate of three percent (3%) per annum until the date that said amount is returned;

(c)   the Escrow Agent or its designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the proceeds to Defendants, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, pursuant to such written request;

(d)   the Settling Parties shall be restored to their respective positions in the Actions as of the Execution Date, with all of their respective claims and defenses preserved as they existed on that date;

(e)   the Settling Parties shall request the Court to vacate any order certifying the Classes for purposes of the Settlement;

(f)   the terms and provisions of this Agreement, with the exception of this paragraph, the termination provisions of paragraph 3 ("Certification of Classes"), and paragraphs 28 ("Final Approval"), 38 ("Federal Rule of Evidence 408"), 39 ("Use of Agreement as Evidence"), 41 ("Subsequent Events Impacting Administration"), and 46 ("Confidentiality of Settlement Negotiations") (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Actions or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(g)  any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

**H.     No Admission of Liability**

**37.     Final and Complete Resolution**.  The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Actions and Released Claims and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Actions.

**38.     Federal Rule of Evidence 408**.  The Settling Parties agree that this Agreement, its terms and the negotiations surrounding this Agreement shall be governed by Federal Rule of Evidence 408 and any state-law equivalents and shall not be admissible or offered or received into evidence in any suit, action or other proceeding, except upon the written agreement of the Settling Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, declare or enforce the rights of the Settling Parties with respect to any provision of this Agreement.

**39.     Use of Agreement as Evidence**.  Whether or not this Agreement becomes final or is terminated pursuant to its terms, the Settling Parties expressly agree that neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, any allegation made in the Actions, or any violation of any statute or law or of any wrongdoing or liability of Defendants, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other proceeding; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of the Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the

-27-

Settlement; provided, however, that the Releasees may file this Agreement, the Preliminary Approval Order, the Final Approval Order and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## I.   <u>Miscellaneous Provisions</u>

**40.   Voluntary Settlement**.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement as described herein were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

**41.   Subsequent Events Impacting Administration.**   In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Settling Parties, and failing agreement, as shall be ordered by the Court.

**42.   Claims in Connection with Administration.**   No Person shall have any claim against the Plaintiffs, Defendants, Defendants' Counsel, Notice and Claims Administrator, or the Releasees or their agents based on administration of the Settlement substantially in accordance with the terms of the Agreement or any order of the Court or any appellate court.

**43.   Binding Effect**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs and Class Counsel shall be binding upon all Class Members.

**44.   Authorization to Enter Settlement Agreement**.  The undersigned representatives of Defendants represent that they are fully authorized to enter into and to execute this Agreement on behalf of Defendants.  Class Counsel, on behalf of Plaintiffs and the Classes, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Classes pursuant to this Agreement to effectuate its terms and to enter into and

execute this Agreement and any modifications or amendments to the Agreement on behalf of the Classes that they deem appropriate.

**45.    Notices**.  All notices under this Agreement shall be in writing.  Each such notice shall be given either by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) FedEx or similar overnight courier; and, if directed to any Class Member, shall be addressed to Class Counsel at their addresses set forth below, and if directed to Defendants, shall be addressed to their attorneys at the addresses set forth below or such other addresses as Class Counsel or Defendants may designate, from time to time, by giving notice to all Settling Parties hereto in the manner described in this paragraph.  Copies of all notices under this Agreement may, at the notifying party's option, be transmitted by email to the appropriate parties.  Providing a copy by email shall only be in addition to, and not a substitute for, the formal mechanisms provided for in (a), (b), or (c) of this paragraph.

If directed to the Plaintiffs or any Class Member, address notice to:

> Steve W. Berman
> Craig R. Spiegel (122000)
> Ashley A. Bede *(Pro Hac Vice)*
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 1918 Eighth Avenue, Suite 3300
> Seattle, WA 98101
>
> Bruce L. Simon (96241)
> Aaron M. Sheanin (214472)
> Benjamin E. Shiftan (265767)
> PEARSON, SIMON & WARSHAW, LLP
> 44 Montgomery Street, Suite 2450
> San Francisco, CA 94104
> ***Plaintiffs' Interim Co-Lead Class Counsel***

If directed to Defendants, address notice to:

> Jeffrey A. Mishkin
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, NY 10036
> jeffrey.mishkin@skadden.com
> ***Counsel for NCAA and Western Athletic Conference***

-29-

Scott P. Cooper
Proskauer Rose LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
scooper@proskauer.com
*Counsel for Pac-12 Conference*

Robert W. Fuller
Robinson Bradshaw & Hinson, P.A.
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
rfuller@rbh.com
*Counsel for Southeastern Conference*

D. Erik Albright
Smith Moore Leatherwood LLP
300 North Greene Street, Suite 1400
Greensboro, NC 27401
erik.albright@smithmoorelaw.com
*Counsel for Atlantic Coast Conference*

Britt M. Miller
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
bmiller@mayerbrown.com
*Counsel for The Big Ten Conference, Inc.*

Leane K. Capps
Polsinelli PC
Saint Ann Court
2501 N. Harwood Street, Suite 1900
Dallas, TX 75201
lcapps@polsinelli.com
*Counsel for The Big 12 Conference, Inc. and Conference USA, Inc.*

Benjamin C. Block
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
bblock@cov.com
*Counsel for American Athletic Conference*

R. Todd Hunt
Walter | Haverfield LLP
The Tower at Erieview
1301 East 9th Street, Ste 3500
Cleveland, OH 44114
rthunt@walterhav.com
*Counsel for Mid-American Athletic Conference, Inc.*

-30-

Brent Rychener
Bryan Cave LLP
90 South Cascade Avenue, Suite 1300
Colorado Springs, CO 80903
brent.rychener@bryancave.com
***Counsel for Mountain West Conference***

Mark Cunningham
Jones Walker
201 St. Charles Avenue
New Orleans, LA 70170
mcunningham@joneswalker.com
***Counsel for Sun Belt Conference***

**46.     Confidentiality of Settlement Negotiations.**  The Settling Parties and their counsel shall keep strictly confidential and not disclose to any third party any non-public information regarding the Settling Parties' negotiation of this settlement and/or this Agreement.  For the sake of clarity, information contained within this Agreement shall be considered public as well as any information requested by the Court in the approval process, or other such information necessary to implement this settlement.

**47.     No Conflict Intended; Headings**.  Any inconsistency between this Agreement and the exhibits attached hereto shall be resolved in favor of this Agreement.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

**48.     No Party Deemed to Be the Drafter**.  None of the Settling Parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

**49.     Choice of Law**.  This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the Settling Parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that state's choice of law principles.

**50.     Amendment; Waiver**.  This Agreement shall not be modified in any respect except by a writing executed by Defendants and Class Counsel, and the waiver of any rights conferred

-31-

hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

**51.**     **Execution in Counterparts**.   This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Settling Parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

**52.**     **Integrated Agreement**.   This Agreement constitutes the entire agreement between the Settling Parties with respect to the Settlement.  This Agreement supersedes all prior negotiations and agreements and may not be modified or amended except by a writing signed by the Settling Parties and their respective counsel. The Settling Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true. Each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

**53.**     **Attorneys' Fees and Costs.**   Except as otherwise expressly provided herein, each party shall bear its own costs and attorneys' fees.

**54.**     **Return or Destruction of Confidential Materials**.   The Settling Parties agree to comply with paragraph 11 of the Protective Order entered in these Actions at the conclusion of these Actions.  All agreements made and orders entered during the course of the Actions relating to the confidentiality of information shall survive this Agreement.

**55.**     **Intended Beneficiaries.**   No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not one of the Plaintiffs, a Class Member, one of the

-32-

Releasees, or Class Counsel except that this Agreement will be binding upon and inure to the benefit of the successors and assigns of the Settling Parties.  No Plaintiff, Class Member or Class Counsel may assign or otherwise convey any right to enforce any provision of this Agreement.

*[Signatures Appear on the Following Page]*

1    IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized

2 representatives, have executed this Agreement as of the date first herein above written.

3 DATED: February ___3___, 2017

4

5                          **Class Plaintiffs**

6

7                          Steve W. Berman
                           HAGENS BERMAN SOBOL SHAPIRO LLP
8                          1918 Eighth Avenue, Suite 3300
                           Seattle, WA 98101
9                          *Co-Lead Interim Class Counsel*

10

11                         Bruce L. Simon
                           PEARSON, SIMON & WARSHAW, LLP
12                         44 Montgomery Street, Suite 2450
                           San Francisco, CA 94104
13                         *Co-Lead Interim Class Counsel*

14

15                         **National Collegiate Athletic Association**

16

17                         Mark Emmert
                           President
18                         National Collegiate Athletic Association
                           1802 Alonzo Watford Sr.
19                         Indianapolis, IN  46202

20                         **Pac-12 Conference**

21

22                         Larry Scott
                           Commissioner
23                         Pac-12 Conference
                           360 3rd Street, 3rd Floor
24                         San Francisco, CA 94107

25

26

27

28                         -34-

1    IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized

2    representatives, have executed this Agreement as of the date first herein above written.

3    DATED:  February ___, 2017

4

5                                              **Class Plaintiffs**

6

7                                              _____
                                               Steve W. Berman
8                                              HAGENS BERMAN SOBOL SHAPIRO LLP
                                               1918 Eighth Avenue, Suite 3300
9                                              Seattle, WA 98101
                                               *Co-Lead Interim Class Counsel*
10

11                                             _____
                                               Bruce L. Simon
12                                             PEARSON, SIMON & WARSHAW, LLP
                                               44 Montgomery Street, Suite 2450
13                                             San Francisco, CA 94104
                                               *Co-Lead Interim Class Counsel*
14

15                                             **National Collegiate Athletic Association**

16

17                                             _____
                                               Mark Emmert
                                               President
18                                             National Collegiate Athletic Association
                                               1802 Alonzo Watford Sr.
19                                             Indianapolis, IN  46202

20                                             **Pac-12 Conference**

21

22                                             _____
                                               Larry Scott
23                                             Commissioner
                                               Pac-12 Conference
24                                             360 3rd Street, 3rd Floor
                                               San Francisco, CA 94107
25

26

27

28
                                               -34-

1    IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized

2  representatives, have executed this Agreement as of the date first herein above written.

3  DATED:  February ___, 2017

4

5                                          **Class Plaintiffs**

6

7                                          _____
                                           Steve W. Berman
8                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                           1918 Eighth Avenue, Suite 3300
9                                          Seattle, WA 98101
                                           *Co-Lead Interim Class Counsel*
10

11                                         _____
                                           Bruce L. Simon
12                                         PEARSON, SIMON & WARSHAW, LLP
                                           44 Montgomery Street, Suite 2450
13                                         San Francisco, CA 94104
                                           *Co-Lead Interim Class Counsel*
14

15                                         **National Collegiate Athletic Association**

16

17                                         _____
                                           Mark Emmert
                                           President
18                                         National Collegiate Athletic Association
                                           1802 Alonzo Watford Sr.
19                                         Indianapolis, IN  46202

20                                         **Pac-12 Conference**

21

22                                         _____
23                                         Larry Scott
                                           Commissioner
24                                         Pac-12 Conference
                                           360 3rd Street, 3rd Floor
25                                         San Francisco, CA 94107

26

27

28
                                           -34-

**The Big Ten Conference, Inc.**

James E. Delany
Commissioner
The Big Ten Conference, Inc.
5440 Park Place
Rosemont, IL 60018

**The Big 12 Conference, Inc.**

Robert Bowlsby
Commissioner
The Big 12 Conference, Inc.
400 East John Carpenter Freeway
Irving, TX 75062

**Southeastern Conference**

Greg Sankey
Commissioner
Southeastern Conference
2201 Richard Arrington Blvd. North
Birmingham, AL 35203-1103

**Atlantic Coast Conference**

Name:
Title:
Atlantic Coast Conference
4512 Weybridge Lane
Greensboro, NC 27407

**American Athletic Conference**

Michael L. Aresco
Commissioner
American Athletic Conference
15 Park Row West
Providence, RI 02903

-35-

1

**The Big Ten Conference, Inc.**

2

3  James E. Delany
   Commissioner
4  The Big Ten Conference, Inc.
   5440 Park Place
5  Rosemont, IL 60018

6  **The Big 12 Conference, Inc.**

7

8  Robert Bowlsby
   Commissioner
9  The Big 12 Conference, Inc.
   400 East John Carpenter Freeway
10 Irving, TX 75062

11

12 **Southeastern Conference**

13

14 Greg Sankey
   Commissioner
15 Southeastern Conference
   2201 Richard Arrington Blvd. North
16 Birmingham, AL 35203-1103

17 **Atlantic Coast Conference**

18

19 Name:
   Title:
20 Atlantic Coast Conference
   4512 Weybridge Lane
21 Greensboro, NC 27407

22

23 **American Athletic Conference**

24

25 Michael L. Aresco
   Commissioner
26 American Athletic Conference
   15 Park Row West
27 Providence, RI 02903

28

-35-

**The Big Ten Conference, Inc.**

_____
James E. Delany
Commissioner
The Big Ten Conference, Inc.
5440 Park Place
Rosemont, IL 60018

**The Big 12 Conference, Inc.**

_____
Robert Bowlsby
Commissioner
The Big 12 Conference, Inc.
400 East John Carpenter Freeway
Irving, TX 75062

**Southeastern Conference**

_____
Greg Sankey
Commissioner
Southeastern Conference
2201 Richard Arrington Blvd. North
Birmingham, AL 35203-1103

**Atlantic Coast Conference**

_____
Name:
Title:
Atlantic Coast Conference
4512 Weybridge Lane
Greensboro, NC 27407

**American Athletic Conference**

_____
Michael L. Aresco
Commissioner
American Athletic Conference
15 Park Row West
Providence, RI 02903

-35-

**The Big Ten Conference, Inc.**

_____

James E. Delany
Commissioner
The Big Ten Conference, Inc.
5440 Park Place
Rosemont, IL 60018

**The Big 12 Conference, Inc.**

_____

Robert Bowlsby
Commissioner
The Big 12 Conference, Inc.
400 East John Carpenter Freeway
Irving, TX 75062

**Southeastern Conference**

_____

Greg Sankey
Commissioner
Southeastern Conference
2201 Richard Arrington Blvd. North
Birmingham, AL 35203-1103

**Atlantic Coast Conference**

_____

Name: John D. Swofford
Title: Commissioner
Atlantic Coast Conference
4512 Weybridge Lane
Greensboro, NC 27407

**American Athletic Conference**

_____

Michael L. Aresco
Commissioner
American Athletic Conference
15 Park Row West
Providence, RI 02903

-35-

**The Big Ten Conference, Inc.**

_____

James E. Delany
Commissioner
The Big Ten Conference, Inc.
5440 Park Place
Rosemont, IL 60018

**The Big 12 Conference, Inc.**

_____

Robert Bowlsby
Commissioner
The Big 12 Conference, Inc.
400 East John Carpenter Freeway
Irving, TX 75062

**Southeastern Conference**

_____

Greg Sankey
Commissioner
Southeastern Conference
2201 Richard Arrington Blvd. North
Birmingham, AL 35203-1103

**Atlantic Coast Conference**

_____

Name:
Title:
Atlantic Coast Conference
4512 Weybridge Lane
Greensboro, NC 27407

**American Athletic Conference**

_____

Michael L. Aresco
Commissioner
American Athletic Conference
15 Park Row West
Providence, RI 02903

-35-

**Conference USA**

Judy MacLeod
Commissioner
Conference USA
5201 North O'Conner Boulevard, Suite 300
Dallas, TX 75039

**The Mid-American Conference, Inc.**

Dr. Jon A. Steinbrecher
Commissioner
The Mid-American Athletic Conference, Inc.
24 Public Square, 15th Floor
Cleveland, OH 44113

**Mountain West Conference**

Craig Thompson
Commissioner
Mountain West Conference
10807 New Allegiance Drive, Suite 250
Colorado Springs, Colorado 80921

**Sun Belt Conference**

Karl Benson
Commissioner
Sun Belt Conference
Mercedes-Benz Superdome
1500 Sugar Bowl Drive
New Orleans, LA 70112

**Western Athletic Conference**

Jeff Hurd
Commissioner
Western Athletic Conference
9250 E. Costilla Ave., Suite 300
Englewood, CO 80112-3662

-36-

**Conference USA**

_____
Judy MacLeod
Commissioner
Conference USA
5201 North O'Conner Boulevard, Suite 300
Dallas, TX 75039

**Mid-American Athletic Conference, Inc.**

_____
Dr. Jon A. Steinbrecher
Commissioner
Mid-American Athletic Conference, Inc.
24 Public Square, 15th Floor
Cleveland, OH 44113

**Mountain West Conference**

_____
Craig Thompson
Commissioner
Mountain West Conference
10807 New Allegiance Drive, Suite 250
Colorado Springs, Colorado 80921

**Sun Belt Conference**

_____
Karl Benson
Commissioner
Sun Belt Conference
Mercedes-Benz Superdome
1500 Sugar Bowl Drive
New Orleans, LA 70112

**Western Athletic Conference**

_____
Jeff Hurd
Commissioner
Western Athletic Conference
9250 E. Costilla Ave., Suite 300
Englewood, CO 80112-3662

**Conference USA**

_____
Judy MacLeod
Commissioner
Conference USA
5201 North O'Conner Boulevard, Suite 300
Dallas, TX 75039

**The Mid-American Conference, Inc.**

_____
Dr. Jon A. Steinbrecher
Commissioner
The Mid-American Athletic Conference, Inc.
24 Public Square, 15th Floor
Cleveland, OH 44113

**Mountain West Conference**

_____
Craig Thompson
Commissioner
Mountain West Conference
10807 New Allegiance Drive, Suite 250
Colorado Springs, Colorado 80921

**Sun Belt Conference**

_____
Karl Benson
Commissioner
Sun Belt Conference
Mercedes-Benz Superdome
1500 Sugar Bowl Drive
New Orleans, LA 70112

**Western Athletic Conference**

_____
Jeff Hurd
Commissioner
Western Athletic Conference
9250 E. Costilla Ave., Suite 300
Englewood, CO 80112-3662

-36-

**Conference USA**

<table>
<tr><td>_____</td></tr>
</table>

Judy MacLeod
Commissioner
Conference USA
5201 North O'Conner Boulevard, Suite 300
Dallas, TX 75039

**The Mid-American Conference, Inc.**

<table>
<tr><td>_____</td></tr>
</table>

Dr. Jon A. Steinbrecher
Commissioner
The Mid-American Athletic Conference, Inc.
24 Public Square, 15th Floor
Cleveland, OH 44113

**Mountain West Conference**

<table>
<tr><td>_____</td></tr>
</table>

Craig Thompson
Commissioner
Mountain West Conference
10807 New Allegiance Drive, Suite 250
Colorado Springs, Colorado 80921

**Sun Belt Conference**

Karl Benson
Commissioner
Sun Belt Conference
Mercedes-Benz Superdome
1500 Sugar Bowl Drive
New Orleans, LA 70112

**Western Athletic Conference**

<table>
<tr><td>_____</td></tr>
</table>

Jeff Hurd
Commissioner
Western Athletic Conference
9250 E. Costilla Ave., Suite 300
Englewood, CO 80112-3662

-36-

1

**Conference USA**

2

3     Judy MacLeod
    Commissioner
4     Conference USA
    5201 North O'Conner Boulevard, Suite 300
5     Dallas, TX 75039

6

**Mid-American Athletic Conference, Inc.**

7

8     Dr. Jon A. Steinbrecher
    Commissioner
9     Mid-American Athletic Conference, Inc.
    24 Public Square, 15th Floor
10     Cleveland, OH 44113

11

12

**Mountain West Conference**

13

14     Craig Thompson
    Commissioner
15     Mountain West Conference
    10807 New Allegiance Drive, Suite 250
16     Colorado Springs, Colorado 80921

17

**Sun Belt Conference**

18

19     Karl Benson
    Commissioner
20     Sun Belt Conference
    Mercedes-Benz Superdome
21     1500 Sugar Bowl Drive
    New Orleans, LA 70112

22

23

**Western Athletic Conference**

24

25     Jeff Hurd
    Commissioner
26     Western Athletic Conference
    9250 E. Costilla Ave., Suite 300
27     Englewood, CO 80112-3662

28

# EXHIBIT A

The following Distribution Plan is designed to distribute the Net Settlement Fund.  This Net Settlement Fund is referred to as the "Fund" throughout this Distribution Plan.  (All defined terms used herein shall have the same meaning given to them in the Agreement.)

A.      Statement of Principles

a.      The following general principles summarize the provisions detailed in the more specific Detailed Application Section below (Section B), which controls the distribution of the Fund.  While these general principles are consistent with the Settling Parties' intent regarding the Settlement Agreement and Distribution Plan, they are for reference only and shall not have any effect on the interpretation of the Settlement Agreement or the Distribution Plan.

i.      A Class Member will be eligible for a distribution from the Fund for each academic term during the class period in which the Class Member: (a) attended any Division I COA School (as defined below); and (b) did not receive financial aid equal to his or her full cost of attendance ("COA"), after exclusion of SAF/SAOF distributions, Pell Grants, and certain exempt grants.

ii.     COA Schools are defined as those schools that provide, have provided, or have indicated by or before June 1, 2017 an intent to start providing any portion of the gap between the athletic grant-in-aid ("GIA") allowed prior to August 1, 2015 and full COA to at least one Class Member at that school.

iii.    Distributions to each eligible Class Member will be calculated either by using: (a) the actual value of the gap between the GIA he or she received and the COA calculated by his or her school; or (b) the gap between the average GIA and average COA when actual values are not reasonably available or require unreasonable efforts to process into useable form, minus (for both (a) and (b)) any non-athletic financial aid (other than SAF/SAOF distributions, Pell Grants, and certain exempt grants) the Class Member received above his or her GIA.

iv.     Defendants are responsible for providing the requisite data in processed, readily useable form, *e.g.*, in Excel spreadsheets, to calculate individual differences between GIA and COA for each Class Member, as well as to identify all Class Members who received non-athletic financial aid (excluding SAF/SAOF distributions, Pell Grants, and certain exempt grants) above the Class Member's GIA.

v.      Class Members who were identified on squad lists as having an equivalency between .8 and .98, and with respect to whom Defendants are unable to provide the requisite

1

data regarding their receipt of non-athletic financial aid necessary to apply Dr. Rascher's algorithm as described below will be eligible to receive distributions from the Fund.

      vi.    Plaintiffs will make available the data used to calculate individual damages in the Rascher Reply Report (defined herein).

B. Detailed Application

1) For purposes of the Agreement and this Distribution Plan, a "full athletics grant-in-aid" as that phrase is used in the definition of "Class" and "Classes" means a one-semester (approximately 0.5 equivalent on a squad list) full grant-in-aid, a one- or two-quarter (approximately 0.33 or 0.67 equivalent on a squad list) full grant-in-aid, or a full-year (identified as 0.99 to 1.0 equivalent on a squad list) grant-in-aid. For purposes of the Agreement and this Distribution Plan, an "otherwise full athletics grant-in-aid" as that phrase is used in the definition of "Class" and "Classes" includes both: (a) "a full athletics grant-in-aid" (as defined in the immediately preceding sentence) provided to a student-athlete by the NCAA member institution he or she attended after NCAA rules no longer required that a full athletics grant–in-aid be set at a level below full cost of attendance regardless of whether it included the full cost of attendance; and (b) an athletics grant-in-aid that was not a full grant-in-aid (as defined in the immediately preceding sentence) or an otherwise full athletics grant-in-aid (as defined in clause (a) of this sentence) only because it was reduced by the applicable NCAA member institution by an amount of non-athletically related aid (excluding Pell Grants and the "Exempted Government Grants" identified in NCAA Division I Bylaw 15.2.5.1) received by the student-athlete. The student-athletes whose grants-in-aid are described in the immediately preceding clause (b) will be determined using the algorithm described by Dr. Daniel Rascher in paragraph 96 of the Expert Reply Report of Daniel A. Rascher on Damages Class Certification, as corrected, dated October 14, 2016 (the "Rascher Reply Report").

2) Authorized Recipients under this Distribution Plan include only those Class Members who attended a school that that provides, has provided, or has indicated by or before June 1, 2017 an intent to start providing any portion of the gap between the athletic grant-in-aid ("GIA") allowed prior to August 1, 2015 and full COA to at least one Class Member at that school.

3) All Authorized Recipients will receive the same pro rata payout for each dollar of "Gap" (defined in paragraph 4, below) in financial aid they received relative to the

full cost of attendance in each academic year in which they received a full grant-in-aid, measured annually per school. The Gap will be measured net of offset for non-athletically related aid received by the Authorized Recipient above his or her athletically related aid (as demonstrated by data identified in subparagraphs 3(a)-(b) below) (hereinafter, "Gap Offsets"), but not net of any distributions from the SAF/SAOF or any Pell Grants or "Exempted Government Grants" identified in NCAA Division I Bylaw 15.2.5.1.

    a. Where discovery has already provided data showing the amount of non-athletically related aid, and the data have been processed as part of the class certification process (i.e., for the four example conferences referenced in the Rascher Reply Report), those data may be used to calculate Gap Offsets.

    b. All other Gap Offsets will be limited to calculations based on data produced by Defendants or their member schools identifying the individuals subject to Gap Offsets and their respective amounts. Defendants will calculate the Gap Offsets using the formula developed by Dr. Daniel Rascher (as described in section 7 of the Rascher Reply Report).

4) For each academic year, the "Gap" for Authorized Recipients will be measured as the difference between each Authorized Recipient's athletically related aid and cost of attendance as reported in the data produced by Defendants or their member schools. If such information is not available for any particular Authorized Recipient, the Gap will be measured as the straight average of that school's listed in-state Gap and listed out-of-state Gap, per the NCAA Membership Financial Reporting System ("MFRS") data produced, unless the Defendants or their member schools provide data that allows for a distinction between in- and out-of-state Authorized Recipients.

    a. For those schools for which Defendants distinguish between in-state Authorized Recipients and out–of-state Authorized Recipients, the Gap will be defined for in-state students based on the in-state Gap per MFRS and the Gap for out-of-state students will be defined based on the out-of-state Gap per MFRS.

    b. For Authorized Recipients who meet the criteria for a full grant-in-aid for a given academic year based on receiving approximately 0.5 equivalent on a squad list, the annual Gap figure will be divided by 2. For Authorized

3

Recipients who meet the criteria for a full-grant-in-aid for a given academic year based on receiving approximately 0.33 or 0.67 equivalent on a squad list, the annual Gap figure will be divided by 3 or 1.5, respectively.

5) Recovery for Authorized Recipients is limited to the academic years 2009-10 through 2015-16.  The Gap values for academic years 2010-11 through 2015-16 will be calculated at full value for all Authorized Recipients.  For academic year 2009-10, all calculated Gap values will be reduced by 75% to account for the start of the class period which begins approximately 75% through the 2009-10 academic year.  For academic year 2009-10, no Gap value shall be calculated for Division I FBS Football Class Members who received a one-semester (approximately 0.5 on a squad list) full grant-in-aid, or a one-quarter (approximately 0.33 on a squad list) full grant-in-aid, as they would not have been receiving athletic aid during the Class period.

6) The allocation method will result in:

   a. Every Authorized Recipient will receive an identical percentage of his or her Gap calculated as described above as every other Authorized Recipient.

      i. Thus, for example, if one Authorized Recipient in a given year experienced a $2,000 Gap, then his/her recovery will be identical to the recovery for all other Authorized Recipients with a $2,000 Gap in any given year.

      ii. If one Authorized Recipient experienced a $2,000 Gap in any given year and another experienced a $4,000 Gap in any given year, the second Authorized Recipient's recovery for that year will be twice the size of the first Authorized Recipient's recovery for the year in question.

   b. To the extent the Gap calculation is based on the average values for two Authorized Recipients on the same team, in the same year, such Authorized Recipients will receive the same recovery, unless:

      i. One of those student-athletes received identified non-athletically related aid above his or her athletically related aid (excluding SAF/SAOF distributions, Pell Grants and the "Exempted Government Grants" identified in NCAA Division I Bylaw 15.2.5.1),

4

in which case that student-athlete's recovery will be reduced by the percentage of his/her Gap that was covered by his/her Gap Offset.

    ii. Defendants or their member schools provide data for a team's student-athletes' in-state vs. out-of-state status, in which case, all in-state team members in a given year will recover identical amounts, and all out-of-state team members will recover identical amounts, but the two subsets' recoveries will differ if the school's in-state and out-of-state Gap differed.

7) A Class Member who is shown to have received non-athletically related aid (excluding SAF/SAOF distributions, Pell Grants and the "Exempted Government Grants" identified in NCAA Division I Bylaw 15.2.5.1) that covered his/her entire Gap in a given academic year would receive no recovery for that year, and therefore, would not be an Authorized Recipient for that year.

8) A portion of the Fund, not to exceed $2,400,000.00, shall be set aside by the Escrow Agent for the period referenced in paragraph 9 as a reserve for claims by (1) Class Members who were not, but contend they should have been, identified as Authorized Recipients through this Distribution Plan, and (2) Authorized Recipients who contend they should have been entitled to a larger recovery under this Distribution Plan.

9) No sooner than 90 days after the distribution of recoveries to Authorized Recipients, any remaining amounts in the Fund, including any unused reserves described in paragraph 8, will be attempted to be redistributed in the following manner.

    a. If the unclaimed remaining amounts in the Fund are large enough to distribute across all locatable Authorized Recipients, such amounts will be distributed to locatable Authorized Recipients in the same proportionate shares as the first round of distribution.

    b. Alternatively, if there are insufficient funds to economically redistribute in that manner, redistribution may occur within schools in proportionate shares to other locatable Authorized Recipients at the same school, based on unclaimed monies for each school. If there are insufficient funds to economically redistribute in that manner, any unclaimed amounts will escheat to the state of the relevant Class Member's most recent known address.

5

c.  In any event, no Authorized Recipient will receive a distribution from the Fund for any given academic year that exceeds his or her Gap for that year. If the distributions contemplated by this paragraph 9 would cause such a circumstance to occur, any excess amount will escheat to the state of the relevant Authorized Recipient's most recent known address.

# EXHIBIT B

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

> **If You Played NCAA Division I Men's or Women's Basketball or FBS Football between March 5, 2010 and the Date of Preliminary Approval of this Settlement, You May Be a Class Member Entitled to Compensation.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

**If you are a Class Member, your legal rights are affected whether you act or do not act.**

### Please Read this Notice Carefully

This Notice provides information about a proposed class action Settlement concerning National Collegiate Athletic Association ("NCAA") Division I collegiate athletes who played men's or women's basketball, or Football Bowl Subdivision ("FBS") football between March 5, 2010 and the date of preliminary approval of the Settlement, and who received from an NCAA member institution for at least one academic term (such as a semester or quarter) (1) a full athletics grant-in-aid required by NCAA rules to be set at a level below the cost of attendance, and/or (2) an otherwise full athletics grant-in-aid.

The lawsuit involves claims by student-athletes who have received a scholarship package, referred to as a grant-in-aid, or GIA, since March 5, 2010.  The student-athletes argued for monetary damages based on the difference in athletically related aid they could have received under new NCAA rules allowing for athletically related aid up to the full "cost of attendance," typically a few thousand dollars more per academic year.  The defendants deny they did anything wrong. The Court has not ruled on the merits of these claims.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT ||
|---|---|
| **Participate in the Settlement and Receive Benefits** | • Eligible Class Members will receive a cash distribution with no claim form required. |
| **Exclude Yourself from the Settlement** | • Excluding yourself means **you will receive no cash distribution**. <br> • You must follow the instructions for requesting exclusion found in paragraph 19 and at the case website at **www.GrantInAidSettlement.com** |
| **Object to the Settlement** | • Write to the Court about why you do not like the Settlement. <br> • You cannot object in order to ask the Court for a higher cash distribution for yourself personally, although you can object to the distribution terms (or any other terms) that generally apply to the Class. <br> • More information about how to object can be found in paragraph 24 and at the case website at www.GrantInAidSettlement.com. |
| **Go to a Hearing** | • The Court will hold a hearing on _____ __, 2017 at _____. |

| | • You may ask to speak to the Court about the fairness of the Settlement. |
|---|---|

## WHAT THIS NOTICE CONTAINS
### {INSERT TOC}
### BASIC INFORMATION

**1.   What is this Notice and why should I read it?**

This Notice is to inform you of the proposed Settlement of part of an antitrust lawsuit titled *In re: National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litigation*, Case No. 4:14-md-02541-CW, brought on behalf of current and former NCAA Division I student-athletes and pending before Judge Claudia A. Wilken of the United States District Court for the Northern District of California. You need not live in California to receive a distribution under the Settlement.

The Court has granted preliminary approval of the Settlement and has set a final hearing to take place on _____ __, 2017 at __:__ a.m. in the _____ United States Courthouse, 1301 Clay Street, Courtroom 2 – 4th Floor, Oakland, CA 94612 to determine if the Settlement is fair, reasonable and adequate, and to consider the request by Class Counsel for Attorneys' Fees and Expenses and Service Awards (defined herein) for the Class Representatives (defined herein).

If you are a potential Class Member, you have a right to know about the proposed Settlement and about all your options before the Court decides whether to give "final approval". If the Court gives final approval of the Settlement, distributions will be made to known eligible Class Members, but only after any objections and appeals are resolved.

This Notice explains the litigation, your legal rights, what distribution amounts are available under the Settlement, who is eligible for them, and how to get them.

**2.   What is the Litigation about?**

Plaintiffs include current and former student-athletes that have challenged the NCAA's former rules capping athletically related financial aid packages for student-athletes, arguing new rules allow for athletically related aid up to the full cost of attendance. Plaintiffs allege that Defendants conspired to suppress competition by agreeing to and enforcing restrictive NCAA bylaws that cap the amount of athletically related aid and other benefits to student-athletes. Defendants are and continue to be public and open about their participation in NCAA activities. The student-athletes asked the court to certify three classes of student-athletes who have received a financial aid package, referred to as a grant-in-aid, or GIA, since March 5, 2010 — a class of Division I FBS football student-athletes, a class of Division I men's basketball student-athletes and a class of Division I women's basketball student-athletes. The Defendants deny the Plaintiffs' claim that Defendants violated the antitrust laws or did anything wrong. The Court has not ruled on the merits of these claims.

**3.   What is a Class Action and who are the Parties?**

In a class action lawsuit, one or more people, called "Class Representatives," sue on behalf of people who have similar claims. All these people together are Plaintiffs to the litigation and

are referred to as the "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who choose to exclude themselves from the Class (see Section 19).

The Defendants, or parties being sued in the cases, are the NCAA, the Pac-12 Conference, The Big Ten Conference, Inc., the Big 12 Conference, Inc., Southeastern Conference, Atlantic Coast Conference, American Athletic Conference, Conference USA, Mid-American Athletic Conference, Inc., Mountain West Conference, Sun Belt Conference, and Western Athletic Conference (collectively, "Defendants").   Together, the Class Representatives and the Defendants are called the "Parties."

**4.   Why is there a Settlement?**

The Court did not decide in favor of any Plaintiff or any Defendant on the legal claims being resolved here. Instead, all sides agreed to a Settlement, which avoids the risk and cost of a trial, but still provides relief to the people affected. The Class Representatives and their attorneys think that the Settlement is in the best interests of Class Members and that it is fair, adequate, and reasonable.

**WHO IS IN THE SETTLEMENT?**

To see if you are affected by the proposed Settlement, you first have to determine if you are a Class Member.

**5.   How do I know if I am part of the Settlement?  What are the Class definitions?**

If you fall under one of the Class definitions below for the Settlement, you are a Class Member in the Settlement and may be eligible for a cash distribution from the settlement fund. *See Paragraphs 11–12 for more detail about how distributions will be calculated.*

**Division I FBS Football Class:** All current and former NCAA Division I Football Bowl Subdivision ("FBS") football student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval (defined herein) of this Settlement, received from an NCAA member institution for at least one academic term (such as a semester or quarter) (1) a full athletics grant-in-aid required by NCAA rules to be set at a level below the cost of attendance, and/or (2) an otherwise full athletics grant-in-aid.

**Division I Men's Basketball Class:** All current and former NCAA Division I men's basketball student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval of this Settlement, received from an NCAA member institution for at least one academic term (such as a semester or quarter) (1) a full athletics grant-in-aid required by NCAA rules to be set at a level below the cost of attendance, and/or (2) an otherwise full athletics grant-in-aid.

**Division I Women's Basketball Class:** All current and former NCAA Division I women's basketball student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval of this Settlement, received from an NCAA member institution for at least one academic term (such as a semester or quarter) (1) a full athletics grant-in-aid required by NCAA rules to be set at a level below the cost of attendance, and/or (2) an otherwise full athletics grant-in-aid.

Excluded from the Classes are the Defendants, and their officers, directors, legal representatives, heirs, successors, and wholly or partly-owned subsidiaries or affiliated companies, Class Counsel and their employees, and their immediate family members, and the

judicial officers, and associated court staff assigned to the cases involved in this Settlement and their immediate family members.

The date of Preliminary Approval was _____ __, 2017.

All of the official definitions of terms in this Notice are set out in detail in the Settlement Agreement, which is posted at www.GrantInAidSettlement.com.

**6. What is a "Grant-in-Aid or GIA Scholarship"?**

For purposes of this Notice, athletic grant-in-aid is athletically-related financial aid provided by NCAA Division I member institutions to participating student-athletes.

**7. What is Cost of Attendance ("COA")?**

COA is the estimate of the total cost for a student to attend a particular college or university for an academic year (fall through spring) in accordance with guidelines established by federal law.  It includes, among other things, tuition and fees, books and supplies, room and board, transportation and certain kinds of personal expenses.  Colleges and universities may adjust their COAs year to year to reflect changes in expenses.

Here are some COAs that colleges and universities reported for the 2016-2017 academic year. These costs are for undergraduates living on campus and enrolled in liberal arts programs.

> **Private colleges and universities:**
> Cornell University (Ithaca, NY) – $67,613
> Duke University (Durham, NC) – $69,959
> Grinnell College (Grinnell, IA) – $63,438
> Rice University (Houston, TX) – $60,518
> Stanford University (Palo Alto, CA) – $67,291
> Swarthmore College (Swarthmore, PA) – $66,110
>
> **Public universities (COAs for state residents):**
> University of Arizona (Tucson) – $28,217
> University of California (Berkeley) – $34,972
> University of Idaho (Moscow) – $20,640
> University of North Carolina (Chapel Hill) – $24,630
> University of Massachusetts (Amherst) – $29,997
> University of Michigan (Ann Arbor) – $28,776

**8. The core claim in this case.**

The central issue in the case is Plaintiffs' allegation that the Defendants violated the antitrust laws by agreeing to and enforcing restrictive NCAA bylaws that cap the amount of athletically related financial aid and other benefits to student-athletes, including by capping athletic scholarships at a defined GIA amount that was lower than the full COA.  Plaintiffs allege that absent the Defendants' agreement to those NCAA bylaws, schools would have provided at least the full COA.  The Defendants have denied the plaintiffs' allegations that Defendants have violated the antitrust laws.  In January 2015, after this lawsuit was started, the NCAA amended its bylaws to allow colleges and universities to provide up to COA in athletically related aid.  Most of the schools in the conferences named in this lawsuit began providing full COA under the amended bylaws.

9. **I'm still not sure if I'm included.**

If you are still not sure whether you are included, you can get free help by contacting the Settlement Administrator using any of the methods listed in Section 29 below, or by visiting **www.GrantInAidSettlement.com**.

You are not required to pay anyone to assist you in obtaining information about the Settlement.

**SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY**

10. **What does the proposed Settlement provide?**

The total Settlement amount provides for Defendants to pay $208,664,445.00.  As calculated by Plaintiffs' expert economist, this amount provides distribution to all eligible Class Members of nearly the full amount of the difference between the GIA prior to January, 2015 and the COA at each of their respective schools.  Eligible Class Members will receive distributions under the Settlement with no claim form required.

11. **Distributions will be calculated based on the GIA – COA gap.**

For Class Members who attended schools that provide, have provided, or have indicated by or before June 1, 2017 an intent to start providing any portion of the gap between the athletic grant-in-aid allowed prior to August 1, 2015 and full cost of attendance to at least one Class Member at that school, each Class Member will receive a distribution that is calculated specifically to his or her school.  The distribution will be calculated either by using: (a) the actual value of the gap between the athletically related aid he or she received and the COA calculated by his or her school; or (b) the gap between the average grant-in-aid and average COA when actual values are not reasonably available or require unreasonable efforts to process into useable form, minus (for both (a) and (b)) any non-athletic financial aid (other than SAF/SAOF distributions, Pell Grants, and certain exempt grants) the Class Member received above his or her GIA (the "gap").  So for example, to the extent the gap calculation is based on the average values for particular schools (for instance, University A and College B), each Class Member who attended University A would receive the same distribution amount for a given full academic year as every other Class Member who attended University A that year, and all Class Members who attended College B would receive the same amount for a given academic year as all other College B Class Members for that year (except, in both examples, for Class Members who received non-athletically related financial aid).  But Class Members who attended University A would receive a higher average amount than those who attended College B if the average gap at University A was higher than at College B during that year.  The school-specific gap calculation will be the average of each school's listed "in-state" gap and listed "out-of-state" gap, unless Defendants provide data that allows for a distinction between in- and out-of-state Class Members (in which case the gap calculation will account for in- or out-of-state cost differences).  Distributions to Class Members who only attended school for part of an academic year will be adjusted lower accordingly.

For a Class Member who received full COA for an academic year from additional non-athletic financial aid (other than SAF/SAOF distributions, Pell Grants, and certain exempt grants), he or she will not receive any distribution because he or she already received his or her full COA.  But if a Class Member had only a portion of his or her gap covered from additional non-athletic financial aid  (other than SAF/SAOF distributions, Pell Grants, and certain exempt grants), he or she would receive a distribution that is proportional to his or her gap not covered by this aid (if Defendants provide data that allows for the calculation).

Finally, if there are sufficient unclaimed funds, they will be distributed to locatable Class Members in the same proportionate shares as the first round of distribution if feasible. Alternatively, if there are insufficient funds to feasibly redistribute to all Class Members, then any funds unclaimed by a Class Member would be redistributed within schools in proportionate shares to other locatable Class Members at the same school, based on unclaimed monies for each school. If there are insufficient funds to economically redistribute in that manner, any unclaimed amounts will escheat to the state of the relevant Class Member's most recent known address.

In any event, no Class Member will receive a distribution from the fund for any given year that exceeds his or her gap for that year. If the distributions of unclaimed funds would cause such a circumstance to occur, any excess amount will escheat to the state of the relevant Class Member's most recent known address.

## 12. Distribution eligibility.

A Class Member will be eligible for distribution for each school term in the class period during which the Class Member: (a) attended any Division I COA School; and (b) did not receive full cost of attendance (excluding SAF/SAOF distributions, Pell Grants, and certain other exempt grants).

COA Schools are defined as those schools that provide, have provided, or have indicated by or before June 1, 2017 an intent to start providing any portion of the gap between the GIA allowed prior to August 1, 2015 and full cost of attendance to at least one Class Member at that school. **THE COA SCHOOLS ARE LISTED AT www.GrantInAidSettlement.com AND WILL BE UPDATED PERIODICALLY UP UNTIL THE LAST DAY TO OPT OUT, WHICH IS \_\_\_\_ \_\_, 2017** (see paragraph 19 below for more information on opting out).

An eligible Class Member's distribution will be calculated either by using: (a) the actual value of the gap between the athletically related aid he or she received and the COA calculated by his or her school; or (b) the gap between the average grant-in-aid and average COA when actual values are not reasonably available or require unreasonable efforts to process into useable form, minus (for both (a) and (b)) any non-athletic financial aid (other than SAF/SAOF distributions, Pell Grants, and certain exempt grants) the Class Member received above his or her GIA.

## 13. How much will my distribution be?

The average recovery across all Class Members has not been precisely determined at this stage and will depend on which school the Class Member attended, the average yearly GIA and COA value for each school, and the number of years the Class Member received a GIA. The range of average distribution for Class Members who played his or her sport for four years is currently estimated to be approximately $5,000 to $7,500.

## 14. Why is my school included or not included as a COA School?

Plaintiffs' evidence showed that some schools (but not necessarily all) would have more likely than not provided athletically related aid above GIA during the class period if allowed to do so. As a result, and as part of the Settlement, Class Members are eligible for distribution who attended schools that provide, have provided, or have indicated by or before June 1, 2017 an intent to start providing any portion of the gap between the amount of GIA allowed prior to

August 1, 2015 and full COA to at least one Class Member at that school. For other schools, where the evidence indicated it was not more likely than not the schools would have provided athletically related aid above GIA, Class Members who attended those schools will not be eligible for distribution. The evidence included Plaintiffs' statistical model as well as whether there was evidence the school had provided athletically related aid above GIA when allowed to do so or stated a specific commitment to do so in the future.

## HOW TO GET A DISTRIBUTION FROM THE SETTLEMENT

### 15. How can I get a distribution?

Each eligible Class Member will be directly notified and a check mailed to him or her, with no claim form required to be submitted and no right of any reversion of funds to Defendants.

### 16. When will I get a distribution?

The distributions will be mailed to eligible Class Members after the Court grants "final approval" of the Settlement and after any appeals are resolved.

### 17. What am I giving up to receive a distribution from the Settlement?

Unless you exclude yourself from the Settlement, you are staying in the Class or Classes described in the Settlement, and that means that you can't sue or be part of any other lawsuit against the Defendants about the legal claims being settled in the Settlement. It also means that all of the Court's orders will apply to you and legally bind you.

The specifics of the release of claim are set out in more detail in the Settlement Agreement, which is posted at the case website at www.GrantInAidSettlement.com. The Settlement Agreement describes the release in specific legal terminology. Talk to Class Counsel (see the section on "The Lawyers Representing You," Section 22 below) or your own lawyer if you have questions about the release or what it means.

### 18. Will getting a distribution from the Settlement affect my NCAA eligibility?

No. Your request for or receipt of any distribution under this Settlement **will NOT affect your eligibility to compete in NCAA athletics if you are otherwise eligible.**

## HOW TO REQUEST EXCLUSION FROM THE SETTLEMENT

If you don't want a distribution from the Settlement, and instead you want to keep the right to sue the Defendants on your own about the legal issues in this litigation, then you must take steps to get out of the Settlement. This is called excluding yourself—or "opting out"—of the Class.

### 19. How do I "opt out" or request exclusion from the Settlement?

To exclude yourself from the Settlement, you must send a letter to the Settlement Administrator by first-class mail with a clear statement that you want to be excluded. Be sure to include your name, address, telephone number, and your signature.

Requests for exclusion must be submitted individually by a Class Member or his legally authorized representative, and not on behalf of a group or class of persons. If you have a personal lawyer, your lawyer may assist you with your exclusion request, but you must personally sign it unless the lawyer is also your Legally Authorized Representative.

You must mail your exclusion request, postmarked no later than ____ __, 2017, to the following address:

NCAA GIA Settlement Administrator

c/o KCC Gilardi

P.O. Box \_\_\_\_\_

Providence, RI \_\_\_\_\_-\_\_\_\_

You can't exclude yourself by phone, by e-mail, or on the website. If you ask to be excluded from the Settlement, you will not get any money from the Settlement, and you cannot object to the Settlement. You will not be legally bound by anything that happens in the lawsuit. You may be able to sue (or continue to sue) the Defendants in the lawsuit.

**20. If I don't exclude myself, can I sue the Defendants for the same thing later?**

No. Unless you exclude yourself from the Settlement, you give up any right to sue the Defendants for the claims that are resolved by the Settlement. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. Remember, the exclusion deadline is \_\_\_\_ \_\_, 2017.

**21. If I exclude myself, can I get a distribution from the Settlement?**

No. If you exclude yourself from the Settlement, you will not be able to get any money from the Settlement, and you cannot object to the Settlement. You will not be legally bound by anything that happens in the Settlement.

### THE LAWYERS REPRESENTING YOU

**22. Do I have a lawyer in this case?**

Yes. The Court has appointed the law firms listed below to represent you and other Class Members in the Settlement. These lawyers are called Class Counsel. You will not be charged for services performed by Class Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you want to contact Class Counsel about this Settlement, they can be reached through the Settlement Administrator by calling 1-877-XXX-XXXX or sending an email to info@GrantInAidSettlement.com.

| CLASS COUNSEL | |
|---|---|
| **HAGENS BERMAN SOBOL SHAPIRO LLP**<br>Steve W. Berman (Pro Hac Vice)<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101<br><br>www.GrantInAidSettlement.com | **PEARSON, SIMON & WARSHAW, LLP**<br>Bruce L. Simon (96241)<br>44 Montgomery Street, Suite 2450<br>San Francisco, CA 94104 |

**23. How will the lawyers be paid? Are the Class Representatives being paid?**

Class Counsel will ask the Court for an award of attorneys' fees and expenses in the Settlement (the "Fee and Expenses Award"), which will be paid from the Settlement Fund after Final Approval is granted. Class Counsel will ask the Court for the Fee and Expenses Award based on their services in this litigation, not to exceed 25% of the $208,664,445.00

Settlement Fund. Any payment to the attorneys will be subject to Court approval, and the Court may award less than the requested amount.

Service Awards are intended to compensate Class Representatives for work undertaken on behalf of a class.   Based on the contributions and commitments by Class Representatives, the Settlement Agreement contemplates a $20,000 award to each Class Representative.   Any Service Award will be subject to Court approval, and the Court may award less than the requested amount.

The Fee and Expenses Award, and Service Awards that the Court orders, plus the costs to administer the Settlement, will come out of the Settlement Fund.

When Class Counsel's motion for fees, expenses, and service awards is filed, it will be available at **www.GrantInAidSettlement.com.** The motion will be posted on the website 14 days before the deadline for requests for exclusion or objections to the Settlement and you will have an opportunity to comment on the motion.

## OBJECTING TO THE SETTLEMENT

### 24. How do I tell the Court I do not like the Settlement?

If you're a Class Member (or a Class Member's Legally Authorized Representative), and you haven't excluded yourself from the Settlement, you can object to the proposed Settlement if you don't like it. However, you cannot object if you have requested exclusion or "opted out." In other words, you must stay in the case as a Class Member in order to object to the Settlement.

You can object if you don't like any part of the proposed Settlement, including the Settlement's Distribution Plan, or the request for the attorneys' Fee and Expenses Award, or the request for Service Awards to the Class Representatives. You can give reasons why you think the Court should not approve any or all of these items, and the Court will consider your views.

You cannot object in order to ask the Court for a higher distribution for yourself personally, although you can object to the distribution terms that apply generally to the Class. The Court can only approve or disapprove the Settlement, but cannot change how much money you are personally eligible to receive from the Settlement. This means that if the Court agrees with your objection, the case won't be settled unless the parties agree to change the terms and the Court approves those changes.

To object, you must (a) mail your objection to the Settlement Administrator and (b) file it with the Court. To be timely, your objection must be mailed to the Settlement Administrator so that it is postmarked by _____ __, 2017, and must be filed with the Court by no later than _____ __, 2017 at the following addresses:

| Settlement Administrator | NCAA GIA Settlement Administrator<br>c/o KCC Gilardi<br>P.O. Box _____<br><br>Providence, RI _____-____ |
|---|---|
| The Court | District Judge Claudia Wilken<br><br>United States Courthouse |

| | 1301 Clay Street, Courtroom 2, 4th Floor |
| | Oakland, CA 94612 |

**NOTE:** You may mail your objection to the Court, but it must be received by the Court and filed by <mark>____ __, 2017</mark>. See **www.GrantInAidSettlement.com** for more information on how to object to the Settlement.

### 25. What's the difference between objecting and excluding yourself?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you stay in the Settlement. Excluding yourself is telling the Court that you don't want to be part of the Settlement. If you exclude yourself, you have no basis to object, because the case no longer affects you. If you object, and the Court approves the Settlement anyway, you will still be legally bound by the result.

### THE COURT'S FAIRNESS HEARING

### 26. When and where will the Court decide whether to approve the Settlement?

The Court will hold a "Fairness Hearing" (also known as a "Final Approval Hearing") to decide whether to finally approve the proposed Settlement. The Fairness Hearing will be on ____ __, 2017, at __:__ _.m. before Judge Claudia Wilken, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612.

At the Fairness Hearing, the Court will consider whether the proposed Settlement and all of its terms are adequate, fair, and reasonable. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the Fairness Hearing and have complied with the other requirements for objections explained in Section 24. The Court may also decide how much to award Class Counsel for fees and expenses, and whether and how much to award the Class Representatives for representing the Class.

At or after the Fairness Hearing, the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that. There is no set timeline for either the Court's final approval decision, or for any appeals that may be brought from that decision, so it is impossible to know exactly when the Settlement will become final.

The Court may change deadlines listed in this Notice without further notice to the Class. To keep up on any changes in the deadlines, please contact the Settlement Administrator or visit the case website at **www.GrantInAidSettlement.com**.

### 27. Do I have to go to the Fairness Hearing?

No. Class Counsel will answer any questions asked by the Court.

If you send an objection, you don't have to come to Court to talk about it. So long as you mailed your written objection on time and complied with the other requirements for a proper objection, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

### 28. May I speak at the Fairness Hearing?

Yes. If you submitted a proper written objection to the Settlement, you or your lawyer may, at your own expense, come to the Fairness Hearing and speak. To do so, you must follow the procedures set out in Section 24. You must also file a Notice of Intention to Appear, which must be mailed to the Settlement Administrator so that it is postmarked no later <mark>than ____ __,</mark>

2017, and it must be filed with the Clerk of the Court by that same date. If you intend to have a lawyer appear on your behalf, your lawyer must enter a written notice of appearance of counsel with the Clerk of the Court no later than ____ __, 2017. See Section 24 for the addresses of the Settlement Administrator and the Court. You cannot speak at the Fairness Hearing if you excluded yourself.

## GETTING MORE INFORMATION

### 29. How do I get more information about the Settlement?

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement, available at **www.GrantInAidSettlement.com**.

| YOU MAY OBTAIN ADDITIONAL INFORMATION BY | |
|---|---|
| **CALLING** | Call the Settlement Administrator toll-free at 1-877-XXX-XXXX to ask questions and receive copies of documents. |
| **E-MAILING** | Email the Settlement Administrator at info@GrantInAidSettlement.com |
| **WRITING** | Send your questions by mail to<br>NCAA GIA Settlement Administrator<br>c/o KCC Gilardi<br><br>P.O. Box ____<br>Providence, RI _____-____ |
| **VISITING THE SETTLEMENT WEBSITE** | Please go to **www.GrantInAidSettlement.com**, where you will find answers to common questions and other detailed information to help you. |
| **REVIEWING LEGAL DOCUMENTS** | You can review the legal documents that have been filed with the Clerk of Court in these cases at:<br>United States District Court, Northern District of California<br>1301 Clay Street<br>Oakland, CA 94612 |
| **ACCESSING PACER** | You can access the Court dockets in these cases through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov. |

**PLEASE DO NOT CALL THE JUDGE OR THE COURT CLERK TO ASK QUESTIONS ABOUT THE LAWSUITS, THE SETTLEMENT, OR THIS NOTICE.**