Caroline Tucker, Esq.
Tucker | Pollard
2102 Business Center Dr., Suite 130
Irvine, CA 92612
Office 949-253-5710
Fax 949-269-6401
ctucker@tuckerpollard.com

Attorney for Objector
DARRIN DUNCAN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ATHLETIC GRANT-IN-AID CAP ANTITRUST LITIGATION,<br><br>This Document Relates to:<br>ALL ACTIONS EXCEPT<br>Jenkins v. Nat'l Collegiate Athletic Ass'n<br>Case No. 14-cv-0278-CW | No. 4:14-md-2541-CW<br><br>**OBJECTION** |

OBJECTOR, Darrin Duncan, hereby files this objection to the Class Action Settlement in this case as follows:

A district court must act as a "fiduciary for the class" for the rights and interests of absent class members. *In re Mercury Interactive Corp.*, 618 F.3d 988, 994–95 (9th Cir. 2010) (internal quotation and citation omitted). This fiduciary role is necessary because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage," when counsel's "interest in getting paid the most for its work representing the class [is] at odds with the class' interest in

securing the largest possible recovery for its members." *Id*. at 994 (internal quotation and citation omitted).

There is thus no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010). "[T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. Proc. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

In this settlement, the requested attorney's fees are unreasonable. Even though class counsel is requesting 20% instead of the noticed 25% of the total settlement, this is still too high with a settlement value at $208,664,445.00. This equates to $41,732,889 for work done over a 3 year period. This is truly an exorbitant amount to award Class Counsel in light of the mega fund rule.

Specifically, the 20% attorney's fee request here is excessive because attorney's fees calculated as a percentage of the class fund should decline from the 25% benchmark when the case involves a mega-fund – over $100,000,000 – and settlement is reached before class certification, trial or appeal. The proposed order does not properly evaluate the reasonableness of the fee for many reasons. The percentage of the fund is the more appropriate method of evaluation for this case unless the court is willing to spend months evaluating the lodestar. The court should evaluate the fees based upon a percentage of the fund analysis and apply the mega-fund rule.

This case was settled in less than three years, no class certification, limited dispositive

motion practice, no trial and no appeal. Class counsel should be acknowledged for their admiral effort and rewarded with generous fees, but extensive discovery over a three year period does not warrant $41+ million in fees in light of the mega fund rule. This is exactly the fact pattern where the percentage of fund and the mega fund rule are appropriate based on the amount of effort class counsel had to do relative to the results achieved. One of the underlying principles of the common fund doctrine is to "compensate the attorneys in proportion to the benefit they have obtained for the entire class…" 4 *Newberg on Class Actions* 14:6 (4th ed.) at 1.

Although district courts have discretion as to what is reasonable, "the fund itself represents the benchmark from which reasonableness is measured." *Id.* The benchmark for reasonableness may be between 20% and 30% in common fund cases, but this does not apply to "extraordinarily large class recoveries." *In re Domestic Air Transporation Antitrust Litigation* 148 F.R.D 297, 350-351. (N.D. Ga. March 22, 1993). Class action settlement funds over $100,000,000 are considered mega funds. *See Carlson v. Zerox Corp.,* 596 F.Supp.2d 400, 406 (D. Conn. January 14, 2009); *Wal-Mart,* 396 F.3d. at 122.

The purpose of the mega fund rule is to shift the benefit to the class when the settlement is relatively large to cost of litigation, which is largely attorney fees. "The percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent." *Energy Holdings PLC*, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003).

In confirming the district court's reduction of class counsel's percentage of fund from 18% to 6.5%, the Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., the Second Circuit reasoned: "Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable." *Walmart*, 396 F.3d at 122, citing *Goldberger*, 209 F.3d at 52; see also *In re Indep. Energy*

*Holdings PLC*, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003).

The court reasoned that "[w]hile courts in mega-fund cases often award higher percentages of class funds as fees than the district court awarded in this instance. . . , the sheer size of the instant fund [$3.383 billion] makes a smaller percentage appropriate." *Walmart*, 396 F.3d at 123. The court confirmed the award in spite of the fact lead plaintiffs consented to the 18% fee. *Id*. In following the philosophy of the mega fund rule, the appellate court stated, "Asserting its jealous regard for absent class members, the court sought to compensate plaintiffs' counsel handsomely and at the same time limit the percentage of the award so that plaintiffs' counsel would not receive a windfall detrimental to the class." *Id*. at 122.

Although the Ninth Circuit has not required the mega fund rule be strictly applied, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), the court has concluded the size of the fund is a factor to be considered in evaluating fee requests in class actions. Comparatively, Vizcaino involved a fund of $97 million where here we are more than double at $208M+ further warranting application of the mega fund rule.

The fee award sought by counsel in this case is inconsistent with previous mega fund settlements and is misaligned from the foundational reasoning of such settlements. The $41+ million fee sought in this case is not consistent with the majority rule because it is well above the generally accepted standards set for this type of litigation, i.e., a putative class action settled before significant litigation or trial and before class certification.

Indeed, the $208+ million mega fund settlement here factors against a percentage more than the 25% benchmark under the size-of-fund factor and demands a lesser amount with respect to the size of the fund factor. But the preliminary order approving $41+ million in fees does not consider in the size of the fund factor, which is the principal factor in evaluating the reasonableness of a fee under mega fund philosophy.

There is a generally-accepted benchmark of 25% of the common fund in determining a

4

OBJECTION

reasonable fee award in a class action. However, district courts should look to the mega fund rule and adjust in extraordinary circumstances increasing or lowering a fee award as the facts dictate.

Courts consider a fund approaching or exceeding $100 million as an extraordinarily large fund creating a downward pressure on the percentage of fund allowed for fees – fees in the range of 6-10% are more common in mega-fund cases. *See 1 Attorney Fee Awards* § 2:9 (3d ed.).

Courts will deviate up or down from the benchmark when extraordinary circumstances are present. For example, the court awarded $19.5 million in fees, or 13% of the $150 million fund, where class counsel expedited litigation, certified the class, completed discovery, and finished 42 days of trial that dealt with complex medical and scientific issues of causation. *See In re Copley Pharmaceutical, Inc.* (1 F.Supp. 2d 1407 (D. Wyo. 1998); *1 Attorney Fee Awards* § 2:9 (3d ed.).

In *Walmart*, the district court found the fee petition of plaintiff's counsel "excessive [and] fundamentally unreasonable" where counsel sought a fee of $609,012,000 representing 18% of the settlement's compensatory relief under the percentage of fund method on a $3.05 billion dollar settlement. *Walmart*, 396 F.3d at 103, 106. The appellate court affirmed the lower court's award of $220,290,160.44 representing 6.5% of the settlement's compensatory relief under the percentage of fund method. *Id.* at 106. The court awarded counsel an additional $18,716,511.44 in costs and expenses for a case taking "seven years of hard-fought litigation." *Id.* at 103, 106.

One can hardly imagine a $41+ million dollar fee on a $208+ million dollar settlement after less than three years and not achieving class certification, much less no trial or appeal, compared to seven years of "hard-fought litigation" and a $220 million dollar fee on a settlement of $3.05 billion. "[I]n mega-fund cases with class recoveries of $75–$200 million, courts are even more stringent, and fees in the 6–10 percent range and lower are common." *In re Domestic Air Transp.*, 148 F.R.D. at 351. A 20% award of fees in the amount of $41+ million dollars on the $208+ million award represents an award more than the generally awarded range of 6-10% in mega fund cases, especially relative to the minimal amount of time expended on this case to settlement.

Moreover, with $3+ million in expenses, it seems reasonable to conclude that the attorney litigation was significantly supported such that the attorney effort was further minimized relative to the fee award.

The mega fund rule plays an important role in placing a check and balance on the cost benefit analysis between legal fees and class benefit. To whatever extent the mega fund class action rule does not apply within the Ninth Circuit, it is time for the Ninth Circuit to follow the majority rule of this Country especially considering the fact the class member's size and that they come from many States and Circuits of America.

The mega-fund rule requires the percentage of a fee award to be inversely related to the size of the settlement fund. This case settled without class certification, before an extensive and expensive trial or appeal. The risks and requirements of class counsel were thereby reduced substantially. For the reasons stated above, the recommended percentage fee of 20% is excessive. A mega fund analysis of the fee award warrants a downward departure from the benchmark and such savings should go back into the hands of the class members.

The Objector incorporates into this motion all other objections to the settlement to the extent such objections are not inconsistent with the Objector's positions as set forth herein.

If individual class members were to receive roughly $5,000.00 and Class Counsel were to receive their requested $41,732,889.00, then this settlement would indicate a subtle sign that Class Counsel's interests superseded the interests of the Class. It is insufficient that the settlement was at arm's length and without express collusion between the parties. "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The following signs are indicia of collusion and self-interest: (1) when counsel receives a

disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. See *Bluetooth*, 654 F.3d at 947. The Court must pay close attention to any and all signs of subtle collusion.

The Court must also pay attention to where funds from uncashed checks will go to. In this settlement, class members will receive a check without having to submit a claim form. Thus, they may not be expecting a check and it may be more likely to go uncashed. "If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." *In re BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015).

The settlement does not indicate at what dollar amount would be too small to redistribute funds before the funds would escheat to the state. The Court should ensure that the funds get into the hands of class members to the extent possible. The Court should order that the claims administrator distribute class funds until each class member would receive less than $3.00.

Finally, the requested amount of $20,000 for the class representatives renders the settlement unfair. "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "In cases where the class receives a monetary settlement, the awards are often taken from the class's recovery." *Id*. Thus, this Court must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Id*. This case is similar to *Staton v. Boeing Company*, 327 F.3d at 975–78, in which the 9th Circuit reversed the district court's approval of a

1  
2  class-action settlement because the settlement provided for disproportionately large payments to  
3  class representatives. The class representatives should not be awarded $20,000 for their service to  
4  the class.  
5        For the foregoing reasons, the Court should deny final approval of the settlement. Neither  
6  Objector nor I intend to appear at the fairness hearing.  
7  
8  Dated: September ~~19~~ 20th, 2017         DARRIN DUNCAN, Objector  
9  
10  
11  Date: September 20, 2017        Tucker | Pollard  
12         By: Caroline Tucker  
13         Caroline Tucker  
       *Attorney for Objector*  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

OBJECTION

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on September 20, 2017, and served by the same means on all counsel of record as well as served by USPS first class mail to Settlement Administrator:

NCAA GIA Settlement Administrator
c/o KCC Gilardi
P.O. Box 43034
Providence, RI 02940-3034

/s/ Caroline Tucker

_____

Caroline Tucker

---

1

OBJECTION