1  Steve W. Berman (*Pro hac vice*)
   Craig R. Spiegel (SBN 122000)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   1918 Eighth Avenue, Suite 3300
3  Seattle, WA 98101
   Telephone: (206) 623-7292
4  Facsimile:  (206) 623-0594
   steve@hbsslaw.com
5  craig@hbsslaw.com

6  Bruce L. Simon (SBN 96241)
   Benjamin E. Shiftan (SBN 265767)
7  PEARSON, SIMON & WARSHAW, LLP
   44 Montgomery Street, Suite 2450
8  San Francisco, CA 94104
   Telephone:  (415) 433-9000
9  Facsimile:   (415) 433-9008
   bsimon@pswlaw.com
10 bshiftan@pswlaw.com

11 *Class Counsel for Jenkins and Consolidated Action Plaintiffs*

12 [Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ATHLETIC GRANT-IN-AID CAP ANTITRUST LITIGATION | Case No. 4:14-md-02541-CW<br><br>**CLASS PLAINTIFFS' MOTION FOR IMPOSITION OF APPEAL BOND AGAINST OBJECTOR APPELLANT**<br><br>Judge:    Hon. Claudia Wilken<br>Date:     March 20, 2018<br>Time:     2:30pm<br>Courtroom: TBD<br><br>COMPLAINT FILED: March 5, 2014 |
| This Document Relates to:<br><br>ALL ACTIONS EXCEPT<br><br>*Jenkins v. Nat'l Collegiate Athletic Ass'n*<br>Case No. 14-cv-0278-CW | |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................2

II. BACKGROUND ..................................................................................................................2

III. ARGUMENT ........................................................................................................................3

    A. This Court has the authority to require Duncan to post an appeal bond. ....................3

    B. The relevant factors justify imposition of an appeal bond. .........................................4

        1. Mr. Duncan cannot show that he is unable to post a bond in any amount. .....4

        2. There is a substantial risk that Mr. Duncan and his counsel would not pay Plaintiffs' costs on appeal. ................................................................................5

        3. Mr. Duncan is unlikely to prevail on appeal because his objections are meritless. ...........................................................................................................6

    C. The appeal bond should be set at $78,893.80. ..............................................................8

        1. Taxable costs under Rule 39. ..........................................................................11

        2. Administrative costs caused by delay of settlement implementation. ...........11

        3. Costs related to providing additional notice to the class. ..............................12

IV. CONCLUSION ..................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) .................................................................... 9

*Azizian v. Federated Dep't Stores, Inc.*,
    499 F.3d 950 (9th Cir. 2007) .............................................................................. 8, 9, 10

*Barnes v. Fleetboston Fin. Corp.*,
    2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) .............................................. 9

*Bickley v. Schneider Nat'l, Inc.*,
    2016 WL 9114937 (N.D. Cal. Nov. 28, 2016) ............................................................... 4

*Dennings v. Clearwire Corp.*,
    928 F.Supp.2d 1270 (W.D. Wash. 2013) ..................................................................... 10

*Embry v. ACER Am. Corp.*,
    2012 WL 2055030 (N.D. Cal. June 5, 2012) ............................................................ 4, 10

*Family PAC v. Ferguson*,
    745 F.3d 1261 (9th Cir. 2014) .................................................................................. 9, 10

*Fleury v. Richemont N. Am., Inc.*,
    2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ................................................................ 4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 8

*In re Broadcom Corp. Secs. Litig.*,
    2005 WL 8152912 (C.D. Cal. Dec. 5, 2005) .................................................................. 8

*In re Checking Account Overdraft Litig.*,
    2012 WL 456691 (S.D. Fla. Feb. 14, 2012) ................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010) ...................................................................... 5, 11

*In re MagSafe Apple Power Adapter Litig.*,
    2012 WL 2339721 (N.D. Cal. May 31, 2012) .......................................................... 4, 11

*In re Netflix Privacy Litig.*,
    2013 WL 6173772 (N.D. Cal. Nov. 25, 2013) ............................................................. 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    520 F. Supp. 2d 274 (D. Mass. 2007) ............................................................................. 9

*Miletak v. Allstate Ins. Co.*,
  2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) ............................................................ 6, 10, 11

*Padgett v. Loventhal*,
  2015 WL 4240804 (N.D. Cal. July 13, 2015) .......................................................................... 6

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12128684 (C.D. Cal Dec. 20, 2013) ..................................................................... 10

*Schulken v Washington Mutual Bank*,
  2013 WL 1345716 (N.D. Cal. Apr. 2, 2013) .............................................................. 4, 10, 11

*In re Uponor, Inc. Plumbing Fittings Products Liab. Litig.*,
  2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012) ............................................................... 9

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
  2010 WL 786513 (D. Nev. Mar. 8, 2010) ...................................................................... 5, 6, 7

**FEDERAL STATUTES**

28 U.S.C. § 1920 ............................................................................................................................ 10

**FEDERAL RULES**

Federal Rule of Appellate Procedure 7 ................................................................................. *passim*

Federal Rule of Appellate Procedure 39 ............................................................................. 8, 10, 11

Federal Rule of Civil Procedure 38 ................................................................................................. 9

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 2:30pm on March 20, 2018, before the Honorable Claudia J. Wilken, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Plaintiffs will move the Court, pursuant to Federal Rule of Appellate Procedure 7, for entry of an order requiring the appellant objector to post an appeal bond in the amount of $78,893.80, consisting of:

1. $5,000 in direct costs related to the appeals;
2. $48,453.80 in anticipated administrative costs associated with delay caused by the appeals; and
3. $25,440 in costs related to providing supplemental notice to the class.

The motion is supported by: (i) this notice of motion and motion; (ii) the supporting memorandum of points and authorities; (iii) the Plaintiffs' Motion for Final Approval of Class Action Settlement, Case No. 4:14-md-2541-CW, Dkt. No. 706; (iv) the Plaintiffs' Response to Objections, *id.* Dkt. No. 711; (v) the Court's December 6, 2017 Order Granting Final Approval of Class Action Settlement and Final Judgement as to Damages Claims, *id.* Dkt. No. 746; (vi) the Court's Order Granting Plaintiffs' and Class Counsels' Motion for Attorneys' Fees, Expenses and Service Awards, *id.* Dkt. 745; (vii) any further papers filed in support of this motion; and (viii) all matters of record in the actions captioned *In re National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litigation*, Case No. 4:14-md-2541-CW (N.D. Cal.), and other related cases as identified in the settlement agreements.

MOTION FOR IMPOSITION OF APPEAL BOND
AGAINST OBJECTOR APPELLANT

010271-11 1009885 V1

-1-

Case No. 14-md-2541-CW

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

After more than three years of hard-fought litigation, Plaintiffs secured a substantial class action settlement of $208,664,445. One objector – out of 53,748 class members – has filed a notice of appeal which, although substantively baseless, will operate as a *de facto* bar to delay implementation of this extremely beneficial settlement until the appeal is resolved. This Court has already made clear that there are no valid reasons to attack – and now delay – the settlement, yet the lone objector, Darrin Duncan, persists in denying relief to the thousands of class members awaiting disbursements. Duncan and his counsel are the same objectors who appealed this Court's ruling in *O'Bannon*. The Court ordered a bond in that case to protect the settling class and because of the frivolous nature of Duncan's appeals – which he eventually dismissed. This repeat objector is again using a frivolous objection to the settlement to delay the resolution of this case for years. But this time his objections are even more frivolous and his appeal is preventing tens of thousands of student athletes from receiving substantial recovery – real money in their pockets (more than $5,000 per four-year student athlete on average).

The Court should require Duncan to post a bond under Federal Rule of Appellate Procedure 7 which permits the district court to ensure that Plaintiffs can recover their costs on appeal. *See* section III(A). Requiring a bond is appropriate here given the relevant factors. Duncan will not be able to demonstrate an inability to post a bond in any amount. *See* section III(B)(1). There is a substantial risk of non-payment, given that Duncan and his counsel have a history of filing similar frivolous appeals. *See* section III(B)(2). And Duncan is unlikely to prevail on appeal because Plaintiffs already addressed his objections, and the Court overruled those objections by granting final approval of the class settlement. *See* section III(B)(3). A bond in the amount of $78,893.80 is appropriate, given previous decisions of this and other courts. *See* section III(C).

## II.   BACKGROUND

On March 21, 2017, this Court granted preliminary approval to a settlement that resolved the damages claims in this case. Dkt. No. 611. Mr. Duncan filed the only objection to this settlement.

1   Dkt. No. 699. The Court held a hearing on Plaintiffs' Motion for Final Approval on November 17,
2   2017. Dkt. No. 735. Duncan and his counsel did not appear at the hearing despite that counsel resides
3   and practices in California. On December 6, 2017, the Court granted final approval of the settlement
4   and also granted Class Counsels' Motion for Attorneys' Fees, Expenses and Service Awards. Dkt.
5   No. 746, 745. Duncan subsequently appealed both of the Court's approval orders. Dkt. No. 751.

6         As outlined in greater detail below, each of Duncan's appeals is entirely without merit and is
7   motivated in bad faith. But, despite their equally frivolous nature, Plaintiffs are most imminently
8   concerned about the potential impact of Duncan's appeal of the Court's final approval of the
9   settlement. In contrast to his appeal of the fee order, which has no effect on distribution of the
10  settlement, the appeal of the settlement order has the potential to considerably delay the substantial
11  benefits of the settlement from reaching the more than 50,000 class members currently awaiting
12  payment. Although he offers no meritorious arguments that might benefit the class, Duncan's appeal
13  of the settlement will effectively stay the resolution of this case because, under the terms of the
14  settlement agreement, funds cannot be disbursed until all appeals are resolved. *See* Dkt. 560 at 21-22.
15  This delay will impose substantial additional costs on the class. Because the risk of harm to the class
16  is of primary importance, Plaintiffs seek a bond only if Duncan insists on continuing to hold up the
17  settlement distribution. On the other hand, if he is willing to drop his appeal of the settlement order
18  and proceed solely with respect to the fee award, Plaintiffs will not pursue a bond.

19                    **III.   ARGUMENT**

20  **A.   This Court has the authority to require Duncan to post an appeal bond.**

21        Federal Rule of Appellate Procedure 7 provides that, "the district court may require an
22  appellant to file a bond or provide other security in any form and amount necessary to ensure
23  payment of costs on appeal." Fed. R. App. P. 7. The purpose of an appeal bond is to "protect an

appellee against the risk of nonpayment by an unsuccessful appellant."[1] The Court has discretion in deciding whether to impose an appeal bond and in determining the amount of such a bond.[2]

**B.     The relevant factors justify imposition of an appeal bond.**

In determining whether to impose a bond, the Court should consider (1) the objector's ability to post the bond, (2) the risk that the objector will not pay Plaintiffs' costs if the appeal fails, and (3) the merits of the objector's appeals.[3] Each of these factors supports an appeal bond here.

**1.     Mr. Duncan cannot show that he is unable to post a bond in any amount.**

Where there is "no indication that [a] plaintiff is financially unable to post bond . . . this factor weighs in favor of a bond."[4] With respect to this factor, courts consider "not only whether Appellants currently possess sufficient assets to post a bond, but whether they can qualify for a bond in the amount imposed."[5] Even when this Court found that an objector had "limited financial means," where they had "the ability to post a bond in some amount," the first factor weighed in favor of requiring a bond.[6] Additionally, an objector's habit of filing frivolous appeals evidences at least some financial ability to assume the obligation to pay costs on appeal.[7] And further, even if an appellant provides real and concrete evidence of an inability to post – or qualify for – a bond in any amount (and Duncan has not made this showing here), an appeal bond is still appropriate when other relevant factors weigh in favor of imposing the bond.[8]

---

[1] *Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012) (quoting *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008)).

[2] *See Fleury*, 2008 WL 4680033, at *6 (citing Fed. R. App. P. 7, 1979 advisory committee note).

[3] *See Embry*, 2012 WL 2055030, at *1.

[4] *Fleury*, 2008 WL 4680033, at *7; *See also Embry*, 2012 WL 2055030, at *1 ("In the absence of evidence that posting a bond will pose a substantial hardship, this factor weighs in favor of requiring a bond.").

[5] *Bickley v. Schneider Nat'l, Inc.*, No. 08-CV-05806-JSW, 2016 WL 9114937, at *1 (N.D. Cal. Nov. 28, 2016).

[6] *Id.*, at *4.

[7] *See Schulken v Washington Mutual Bank*, No. 09-cv-02708-LHK, 2013 WL 1345716, at *4 (N.D. Cal. Apr. 2, 2013).

[8] *In re MagSafe Apple Power Adapter Litig.*, No. C 09-01911 JW, 2012 WL 2339721, at *2 (N.D. Cal. May 31, 2012).

Here, the evidence suggests that Duncan will be able to pay the bond. He has already paid the $505 filing fee with the Ninth Circuit, and this is the second class settlement appeal he has filed in less than three years. Duncan is represented by an attorney with substantial financial resources sufficient to pay the bonds and it is likely that the attorney is responsible for procuring the bond under a contingency arrangement. Finally, Duncan has presented no evidence that he would be unable to pay the bond and there is no reason to assume he cannot bear the additional financial obligations that accompany his appeal. Taken together, this factor weighs in favor of imposing an appeal bond.

**2.   There is a substantial risk that Mr. Duncan and his counsel would not pay Plaintiffs' costs on appeal.**

When analyzing this factor, courts have recognized the substantial risk that *professional* objectors will resist paying any costs imposed by an appellate court.[9]

This is not Duncan's first time objecting to a class action settlement and he is represented by Caroline Tucker, an attorney who appears to make a habit of filing objections to class settlements in the hope of getting paid to go away. Along with their efforts in this case, Duncan and Ms. Tucker also objected to the settlement and requested attorney's fees in the *Keller* case before this Court.[10] When they appealed to the Ninth Circuit, this Court held that imposition of an appellate bond was appropriate, particularly because Duncan's arguments were "not likely to succeed."[11] After filing her client's appeal in that case, Ms. Tucker attempted to extract a $200,000 under-the-table payout from

---

[9] *See In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 2:06-CV-00225-PMP-PAL, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) ("Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class . . . [which] persuades the Court that collecting costs from the four Objectors would be extremely difficult if not unlikely."); *see also In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting the settlement in hopes of extorting a greater share of the settlement for themselves and their clients. . . . Thus, the Objectors are required to file an appeal bond to secure payment of costs on appeal.").

[10] *See O'Bannon v. NCAA*, Case No. 4:09-CV-03329-CW (N.D. Cal.); *Keller v. Electronic Arts, Inc. et. al.*, Case No. 4:09-CV-01967-CW (N.D. Cal.).

[11] *O'Bannon*, Dkt. No. 442 at 8.

MOTION FOR IMPOSITION OF APPEAL BOND                                                                Case No. 14-md-2541-CW
AGAINST OBJECTOR APPELLANT
-5-
010271-11 1009885 V1

counsel for the settling class in exchange for dropping the meritless objections.[12] But the appellees filed a motion for sanctions based on her bad faith conduct, and Duncan's appeals were voluntarily dismissed shortly thereafter.[13] In addition to Ms. Tucker's representations of Duncan, she has also represented numerous other settlement objectors.[14] Ms. Tucker's conduct during the *O'Bannon* litigation, along with the fact that she and Duncan are serial objectors, indicates that there is an increased likelihood that they may resist paying any costs imposed on appeal in this case.

Courts in this District have also recognized that it can be difficult to collect costs from out-of-state appellants.[15] While Duncan and Ms. Tucker do reside in the state of California, that fact does not weigh against imposing a bond, and at worst, might render this factor neutral. And, even if the Court finds this factor neutral, the final factor is determinative given the frivolous nature of Duncan's appeals.[16]

### 3. Mr. Duncan is unlikely to prevail on appeal because his objections are meritless.

Paramount to the Court's analysis are the meritless objections at the heart of Duncan's appeals. In *Wal-Mart*, the district court required objectors to post bond on appeal where it found that the "objections [were] not supported by law or the facts and [were] indeed meritless."[17] In that case, the Court found the appeals "frivolous" and "tantamount to a stay of the Judgment entered by this

---

[12] *Id.*, Dkt. No. 9-1 at 11.

[13] *Id.*, Dkt. Nos. 9, 14.

[14] *See, e.g., Lorean Barrera v. Pharmavite LLC*, No. 2:11-CV-04153-CAS-AGR (C.D. Cal.) (Dkt. No. 438) (notice of appeal to the Ninth Circuit filed by Ms. Tucker on December 28, 2017); *Moises Zepeda, et al v. Paypal, Inc.*, No. 4:10-CV-02500-SBA (N.D. Cal.) (Dkt. No 361) (Notice of appeal to the Ninth Circuit filed by Ms. Tucker on April 19, 2017 – appeal voluntarily dismissed on July 6, 2017); *Hendricks v. Starkist*, No. 3:13-CV-00729-HSG (N.D. Cal.) (representing appellant-objector in 2017 appeals to the Ninth Circuit.).

[15] *See e.g., Padgett v. Loventhal*, No. 5:04-CV-03946-EJD, 2015 WL 4240804, at *3 (N.D. Cal. July 13, 2015).

[16] *See Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012) ("The second factor – namely, the difficulty of collecting payment post-appeal – is neutral because [the objector] is a resident of California. However, the merits of [the objector's] appeal weigh heavily in favor of requiring a bond.") (Internal citation omitted.).

[17] *Wal-Mart*, 2010 WL 786513, at *1.

1  Court . . . approving the comprehensive class settlement in this case which provides fair

2  compensation to millions of class members."[18]

3        Plaintiffs have already addressed Duncan's objections in detail in their Motion for Final

4  Approval of Class Action Settlement ( Dkt. No. 706), and their Response to Objections ( Dkt. No.

5  711). And the Court examined and overruled the objections in its Order Granting Final Approval of

6  Class Action Settlement and Final Judgment (Dkt. No. 746), and Order Granting Plaintiffs' and

7  Class Counsels' Motion for Attorneys' Fees, Expenses and Service Awards ( Dkt. No. 745).

8  Accordingly, Plaintiffs will simply summarize Duncan's arguments for purposes of this motion.

9        With respect to Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards,

10  Duncan first objected that the attorney's fees requested were unreasonably excessive. Dkt. No. 699.

11  But Plaintiffs' counsel explained – and this Court agreed – that Plaintiffs' 20% fee request is well

12  within the Ninth Circuit standards of reasonableness under any method of evaluation, particularly

13  given "the complexity of the issues presented in this case," the "contingent nature of the

14  representation," and the "exceptional results achieved." Dkt. No. 745 at 4, 5, 6. Duncan also objected

15  to Plaintiffs' request for $20,000 service awards to each of the class representatives. Dkt. No. 699.

16  But again, the Court held that such compensation is reasonable because it is "consistent with service

17  awards in other cases," and reflects the substantial work that the class representatives did to assist

18  with this litigation. Dkt. No 745 at 17, 18. Thus, appeal of these issues is frivolous.[19]

19        With respect to Final Approval of the Settlement, Duncan objected only to Plaintiffs'

20  proposed method of redistribution in the event that checks to the class go uncashed. Dkt. No. 699.

21  But, as the Court correctly found, "there is no merit to Mr. Duncan's request that the Court order that

22  the claims administrator distribute class funds until each class member would receive less than $3.00.

23  Mr. Duncan provides no legal or factual basis for that request." Dkt. No. 745 at 18. The Court found

24  that "the Settlement Agreement's Distribution Plan is fair, reasonable, and adequate," especially in

25  light of the fact that "there is no reversion of the Net Settlement Fund, maximizing the amount of

---

[18] *Id.*, at *2.

[19] Again, despite that Duncan's objections to the fee award are devoid of merit, Plaintiffs will not seek a bond with respect to this appeal if Duncan agrees to dismiss his appeal of the settlement order.

1  payments to Settlement Class Members." Dkt. No. 746 at 10, 11. It further noted that this settlement
2  is "a tremendous result in comparison to most large antitrust settlements." Dkt. No. 746 at 8. Thus
3  appeal of this issue is also frivolous.

4  The fact that **Duncan is the only objector** further indicates that his appeals are without merit.
5  The Court's approval of the settlement can only be reversed if the Ninth Circuit finds that the Court
6  abused its discretion.[20] This review is "extremely limited,"[21] and there is nothing to suggest that it
7  could yield a victory for Duncan. Given his prospects on appeal, the nature of his objections, and he
8  and his counsels' history of filing similar objections, it is clear that Duncan's appeals are motivated
9  solely by the desire for personal gain – accomplished by delaying relief to other class members. For
10 that reason, an appeal bond is warranted to ensure that Duncan's actions do not cause further harm
11 by imposing costs on Plaintiffs that they are unable to recover when his appeals inevitably flounder.

12 **C.     The appeal bond should be set at $78,893.80.**

13 Once it is determined that an appeal bond is appropriate, the Court must determine the proper
14 amount for the bond. The amount should be sufficient to cover Plaintiffs' anticipated costs on appeal.
15 The Federal Rules of Appellate Procedure provide that a district court may tax costs resulting from
16 "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to
17 determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights
18 pending appeal; and (4) the fee for filing the notice of appeal."[22] Further, the Ninth Circuit has held
19 that "the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on
20 appeal."[23]

21 There has been increasing recognition of the great harm a single objector can inflict on the
22 absent class in a class action lawsuit and the role that Rule 7 bonds can play in ensuring that the
23 appeal process is not misused.[24] In numerous cases around the country, courts have required

---

[20] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027, 1029 (9th Cir. 1998).

[21] *Id.* at 1026.

[22] Fed. R. App. P. 39(e).

[23] *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007).

[24] *See In re Broadcom Corp. Secs. Litig.*, No. SACV-01-275DT, 2005 WL 8152912, at *3 (C.D. Cal. Dec. 5, 2005) ("While objector did not formally move to stay the judgment, its appeal

1   objectors to post bonds to secure the anticipated damages resulting from a delay in the

2   implementation of a class-action settlement.[25]

3         While the Ninth Circuit has held that an appeal bond cannot include appellate ***attorney's fees***

4   or ***damages and penalties*** that would be imposed under Federal Rule of Civil Procedure 38 for filing

5   a frivolous appeal, the Court of Appeals has yet to directly address the extent to which a bond can

6   include administrative or other delay ***costs*** attendant to an appeal. In *Azizian*, the Court determined

7   that attorney's fees cannot be included in an appeal bond in the absence of an applicable cost-shifting

8   statute.[26] However, the *Azizian* court did not discuss the issue of whether Rule 7 permits the

9   inclusion of administrative costs and there is no language in the decision which suggests that other

10  costs, such as class administration expenses pending appeal or supplemental notice expenses cannot

11  be covered under Rule 7.[27] In a more recent decision, the Ninth Circuit recognized that the issue in

12  *Azizian* was limited to "whether the term 'costs' in Federal Rule of Appellate Procedure 7. . .

13  includes attorney's fees recoverable as part of costs."[28] In fact, *Family PAC* specifically

---

effectively imposes a stay, forcing the Class to bear the same risks. Because there is no supersedeas bond to protect the class from these risks, the court finds it proper to impose a Rule 7 bond to serve the same purpose… [a]s such, the bond will include the costs of delay in the amount of $517,700.00"); *see also In re Checking Account Overdraft Litig.*, No. 1.09-CV-02036-JLK, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) ("Appellants insist that they cannot be required to post a supersedeas bond under FRAP 8 because they have not sought a stay… However, because the filing of this appeal prevents distribution of the Settlement proceeds as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate.").

[25] *See e.g., In re Checking Account Overdraft Litig*, 2012 WL 456691, at *1-3 (ordering objector-appellants to post $621,338 in bonds to cover costs and "to account for the delay in distribution of the benefits of the Settlement."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986 CIV, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006) (ordering objector to $1 billion class settlement to post a $13.5 million appeal bond to cover "damages, costs, and interest" that the class would incur or lose as a result of the delay); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (ordering objector to post $61,000 bond for administrative costs that class will suffer as a result of delay in distribution of class settlement); *Barnes v. Fleetboston Fin. Corp.,* No. 01-10395 (NG), 2006 U.S. Dist. LEXIS 71072, at *8-9 (D. Mass. Aug. 22, 2006) (ordering appealing objector to $12.5 million class settlement to post $645,111.60 bond to cover costs and interest for anticipated one-year delay in distribution to class); *In re Uponor, Inc. Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012) (recognizing that "additional class notice may be required due to the delay occasioned by the appeal" and including $125,000 in bond to cover the costs of such notice.).

[26] *Azizian*, 499 F.3d at 958.

[27] *Id.*

[28] *Family PAC v. Ferguson*, 745 F.3d 1261, 1265 (9th Cir. 2014).

---

MOTION FOR IMPOSITION OF APPEAL BOND  
AGAINST OBJECTOR APPELLANT

Case No. 14-md-2541-CW

-9-

010271-11 1009885 V1

distinguished attorney's fees from administrative costs in this context. The Court emphasized that the costs set forth in Rule 39(e) "are all administrative costs."[29] It further noted that 28 U.S.C. § 1920, which provides statutory authorization for taxation of appeal costs, similarly "enumerates a set of uniformly administrative costs."[30] Ultimately, the Ninth Circuit concluded that "[t]aken together, Rule 39(e) and the drafter's invocation of § 1920 lead us to conclude that the drafters intended 'costs' under Rule 39 to refer narrowly to administrative costs, not to attorney's fees."[31]

In the eleven years since *Azizian* was decided, numerous courts within this Circuit have held that administration expenses caused by delay may still be included in appellate bonds where the appellees are able to identify a concrete basis for the amounts sought and where those amounts are akin to costs, and not damages.[32]

Because the purpose of a Rule 7 bond is to protect the interests of the litigants (in this case the class) during the appeal period, and because the basis for Plaintiffs' motion is not attorney's fees or other damages but rather the various administrative costs outlined below, their request is consistent with the prior rulings in the Ninth Circuit. Ignoring the increased administrative costs here would be far more harmful to the class than any harm to Duncan by requiring a bond to cover the

---

[29] *Id.* at 1266.

[30] *Id.* (citing Fed. R. App. P. 39 advisory committee note).

[31] *Id.*

[32] *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772 (N.D. Cal. Nov. 25, 2013) (finding that including $21,344 in administrative costs was proper where "Plaintiffs [did] not seek a bond for delay damages or attorneys' fees, but rather for the administrative costs incurred during the delay of settlement"); *Miletak*, 2012 WL 3686785, at *2 (declining to grant request for inclusion of "delay damages" to cover lost post-judgment interest, but awarding $50,000 in "administrative costs" consisting of "the costs incurred in order to continue to service and respond to class members' needs pending the appeal"); *Dennings v. Clearwire Corp.*, 928 F.Supp.2d 1270 (W.D. Wash. 2013) (ordering appeal bond including $39,150 to cover the "increased costs of administering the settlement as a result of the appeal"); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12128684 (C.D. Cal Dec. 20, 2013) (ordering bond including $16,510.50 in additional administration costs "attributable to the delay caused by [objector's] appeal"); *Embry*, 2012 WL 2055030, at *2 (declining to grant request for "anticipated delay damages," but imposing appeal bond of $70,650, which encompassed both administrative and taxable costs.); *Schulken*, 2013 WL 1345716, at *8 (declining to include delay expenses where appellees "could neither concretely identify the basis for their $10,000 estimate, nor clearly distinguish the projected costs from those that could be claimed as attorney's fees").

costs of the delay he has caused and is causing to the class. In short, this Court is well within its discretion to award the full amount requested.

### 1. Taxable costs under Rule 39.

When imposing appeal bonds, courts routinely approve taxable cost estimates in excess of $5,000.[33] In fact, when it imposed a bond against this same objector in the *O'Bannon* and *Keller* cases, this Court found $5,000 to be a reasonable estimate for taxable costs.[34]

Given the expenses that Plaintiffs will face in addressing Duncan's appeals, Plaintiffs request $5,000 in taxable costs. This figure represents a conservative estimate of the projected costs to prepare the relevant reporter transcripts and copy the record and briefs on appeal, as well as the various motions associated with the appeals that Plaintiffs intend to file, including moving to dismiss the appeal and/or moving for summary disposition and moving for monetary sanctions against Duncan, if and when his appeals are ultimately found to be frivolous.

### 2. Administrative costs caused by delay of settlement implementation.

Following preliminary approval of this settlement, the settling parties hired Gilardi & Co. to serve as Settlement Administrator. Having conferred with Gilardi, Plaintiffs estimate that, if the appeals further extend the time period of the settlement administration, the additional expenses will be approximately $3,286 per month.[35] This estimate encompasses the cost of: (1) maintaining the settlement website and toll-free telephone number; (2) maintaining the settlement fund escrow account; (3) handling inquiries and calls from class members; and (4) keeping class members informed about the status of the appeals, during the appeals period. In addition, Plaintiffs anticipate an additional fixed cost of $4,750. This figure includes the costs associated with (1) updating the toll-free phone line and (2) filing an additional tax return. The median length of appeals in the Ninth

---

[33] *See, e.g.*, *Schulken*, 2013 WL 1345716, at *5 (requiring objector to post $5,000 for taxable costs); *Miletak*, 2012 WL 3686785, at *2 (imposing appeal bond that included $10,000 in taxable costs); *Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 295 (granting appeal bond that included $25,000 in taxable costs); *MagSafe*, 2012 WL 2339721, at *1 (granting $15,000 in taxable costs).

[34] *See O'Bannon*, Dkt. 442.

[35] *See* Exhibit A (KCC Administration Services Estimate) to the Declaration of Steve W. Berman in Support of Class Plaintiffs' Motion for Imposition of Appeal Bond Against Objector Appellant ("Berman Decl.").

1  Circuit is currently 13.3 months.[36] Therefore, multiplying the estimated monthly expense of $3,286
2  by 13.3 months and adding the estimated fixed costs of $4,750 results in a total of $48,453.80 in
3  expected additional administration costs, which are attributable to the delay caused by Duncan's
4  appeal.

5        **3.**      **Costs related to providing additional notice to the class.**

6  It is also possible that a class member, objector, or some other third party may later argue that
7  additional notice needs to be given to the class because of the delay caused by this appeal. Although
8  Class Counsel do not believe that a full round of supplemental published and direct notice will be
9  required following an unsuccessful appeal, the settling parties should not bear the risk that additional
10 notice may be required. Duncan should instead post a bond to cover such costs, and if the costs never
11 materialize, the bond will not be accessed. Class Counsel estimate that the cost of supplemental
12 noticing would be approximately $25,440.[37] This cost includes the expenses associated with sending
13 additional notice as well as the cost of renewed address verification services which will be necessary
14 to determine whether any class members have moved during the appeals period.

15 Each of the expenses outlined above are reasonable and necessary and should be borne by
16 Duncan if he is unsuccessful. Thus, Plaintiffs request that they be included in the amount of the
17 appellate bond.

18       **IV.**      **CONCLUSION**

19 If he persists with his frivolous appeal of the settlement, Duncan will wrongfully and
20 unnecessarily delay relief to thousands of individuals. Because his objections are meritless and serve
21 only to frustrate resolution of this case, Plaintiffs request that the Court impose an appeal bond in the
22 amount of $78,893.80 or any other such amount that it finds appropriate.

---

[36] Table, U.S. Courts of Appeals – Federal Court Management Statistics, Summary – During the 12-month period ending June 30, 2017.
http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appsumary0630.2017.pdf (last visited Jan. 23, 2017 at 6:00 PM).

[37] *See* Berman Decl., Ex. A (KCC Administration Services Estimate).

MOTION FOR IMPOSITION OF APPEAL BOND
AGAINST OBJECTOR APPELLANT

Case No. 14-md-2541-CW

-12-

010271-11 1009885 V1

| | | |
|---|---|---|
| 1 | DATED: January 31, 2018 | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | By   */s/ Steve W. Berman* |
| 4 | | STEVE W. BERMAN (*pro hac vice*) |

Craig R. Spiegel (SBN 122000)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*craigs@hbsslaw.com*

Jeff D. Friedman (SBN 173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
*jefff@hbsslaw.com*

PEARSON, SIMON & WARSHAW, LLP

By   */s/ Bruce L. Simon*
         BRUCE L. SIMON (SBN 96241)

Benjamin E. Shiftan (SBN 265767)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:   (415) 433-9008
*bsimon@pswlaw.com*
*bshiftan@pswlaw.com*

*Class Counsel for Jenkins and Consolidated Action Plaintiffs*