Sean Eskovitz (SBN 241877)
WILKINSON WALSH + ESKOVITZ LLP
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Telephone:  (424) 316-4000
Facsimile:  (202) 847-4005
seskovitz@wilkinsonwalsh.com

Beth A. Wilkinson (*pro hac vice*)
Brant W. Bishop, P.C. (*pro hac vice*)
James Rosenthal (*pro hac vice*)
WILKINSON WALSH + ESKOVITZ LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone:  (202) 847-4000
Facsimile:  (202) 847-4005
bwilkinson@wilkinsonwalsh.com
bbishop@wilkinsonwalsh.com
jrosenthal@wilkinsonwalsh.com

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION

Patrick Hammon (SBN 255047)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
Telephone:  (650) 470-4500
Facsimile:  (650) 470-4570
patrick.hammon@skadden.com

Jeffrey A. Mishkin (*pro hac vice*)
Karen Hoffman Lent (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, NY  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
jeffrey.mishkin@skadden.com
karen.lent@skadden.com

Attorneys for Defendants
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION and WESTERN ATHLETIC
CONFERENCE

[Additional Counsel Listed on Signature
Page]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ATHLETIC GRANT-IN-AID CAP ANTITRUST LITIGATION | MDL Docket No. 4:14-md-02541-CW |
| | **DEFENDANTS' OPPOSITION TO PLAIN-TIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS** |
| This Document Relates to: | Hearing Date:  July 17, 2019 |
| ALL ACTIONS EXCEPT *Jenkins v. National Collegiate Athletic Ass'n*, Case No. 14-cv-02758-CW | Time:  2:00 p.m.<br>Place:  Courtroom 5, 4th Floor<br>Judge:  Hon. Nathanael Cousins |

1

## TABLE OF CONTENTS

2     INTRODUCTION ...................................................................................................1

3     ARGUMENT ........................................................................................................2

4     I.     PLAINTIFFS' LODESTAR SHOULD BE REDUCED BY AT LEAST 10% .................2

5     II.    PLAINTIFFS ARE NOT ENTITLED TO A POSITIVE MULTIPLIER ..........................7

6            A.     Plaintiffs' Claimed High Risk of Not Prevailing or Recovering Their Fees
7                   and Costs Does Not Justify a Positive Multiplier ......................................7

             B.     Plaintiffs' Claimed "Exceptional Results" Do Not Justify a Positive
8                   Multiplier ............................................................................................9

9     III.   A SUBSTANTIAL NEGATIVE MULTIPLIER SHOULD BE APPLIED TO
             PLAINTIFFS' FEE REQUEST GIVEN THAT THEY ACHIEVED ONLY
10           PARTIAL SUCCESS ..................................................................................12

11    IV.    PLAINTIFFS' REQUEST FOR COSTS SHOULD BE DENIED OR
             SUBSTANTIALLY REDUCED .......................................................................13
12
             A.     Plaintiffs Are Not Entitled to Recover for Unsupported Costs ..........................14
13
             B.     Plaintiffs Seek Reimbursement for Impermissible Costs and Expenses ...............15
14
      V.     PLAINTIFFS' REQUEST FOR SERVICE AWARDS IS OVERBROAD....................17
15
      CONCLUSION......................................................................................................17
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Allen v. Berryhill*,
  No. 17-cv-03384-SI, 2019 WL 343422 (N.D. Cal. Jan. 28, 2019) ........................................4

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  49 F. Supp. 3d 710 (S.D. Cal. 2014) (denying request for 1.5 multiplier despite ..........10, 13

*Banas v. Volcano Corp.*,
  47 F. Supp. 3d 957 (N.D. Cal. 2014) .............................................................................14, 17

*In re Bluetooth Headset Products Liability Litigation*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................................................8

*Bravo v. City of Santa Maria*,
  810 F.3d 659 (9th Cir. 2016) ...........................................................................................15

*Campbell v. National Passenger Railroad Corp.*,
  718 F. Supp. 2d 1093 (N.D. Cal. 2010) .........................................................................10

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
  No. C-07-5944 JST, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ....................................15

*City of Burlington v. Dague*,
  505 U.S. 557 (1992).......................................................................................................7, 9

*Competitive Technologies v. Fujitsu Ltd.*,
  No. C-02-1673 JCS, 2006 WL 6338914 (N.D. Cal. Aug. 23, 2006)...................................16

*Cruz v. Starbucks Corp.*,
  No. C-10-01868 JCS, 2013 WL 2447862 (N.D. Cal. June 5, 2013) ..............................14, 15

*de Jesus Ortega Melendres v. Arpaio*,
  Nos. 13-16285 & 13-17238, 2017 WL 10808812 (9th Cir. Mar. 2, 2017) ...............2, 3, 5, 6

*Dehoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) .....................................................................................9

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
  122 F.3d 1211 (9th Cir. 1997) .........................................................................................6

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) .........................................................................................3

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...............................................................................................13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).......................................................................................2, 3, 4, 11, 12

*Intel Corp. v. Terabyte International, Inc.*,
  6 F.3d 614 (9th Cir. 1993) ...............................................................................................4

*Kalitta Air L.L.C. v. Central Texas Airborne System Inc.*,
  741 F.3d 955 (9th Cir. 2013) ...........................................................................................16

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016) ...................................................................10

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) .........................................................................2

*League for Coastal Protection v. Kempthorne*,
    No. C 05-0991-CW, 2006 WL 3797911 (N.D. Cal. Dec. 22, 2006) ....................6

*O'Bannon v. National Collegiate Athletic Association*,
    802 F.3d 1049 (9th Cir. 2015) ...................................................................11

*O'Bannon v. National Collegiate Athletic Association*,
    114 F. Supp. 3d 819 (N.D. Cal. 2015) ........................................................15

*O'Bannon v. National Collegiate Athletic Association*,
    No. 4:09-cv-03329-CW, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016) ............14

*Pacific West Cable Co. v. City of Sacramento, California*,
    693 F. Supp. 865 (E.D. Cal. 1988).............................................................4

*Perdue v. Kenny A ex rel. Winn*,
    559 U.S. 542 (2010)....................................................................7, 8, 9, 10

*Reyes v. Bakery & Confectionery Union*,
    281 F. Supp. 3d 833 (N.D. Cal. 2017) .....................................................8, 10

*Robinson v. Open Top Sightseeing San Francisco, LLC*,
    No. 14-cv-00852-PJH, 2018 WL 2088392 (N.D. Cal. May 4, 2018)..................3

*Rodriguez v. Barrita, Inc.*,
    *53 F. Supp. 3d 1268 (N.D. Cal. 2014)* ......................................................13

*Romberg v. Nichols*,
    970 F.2d 512 (9th Cir. 1992) ), *vacated and remanded on other grounds*, 506 U.S.
    1075 (1993)................................................................................................6

*Rudebusch v. Arizona*,
    No. 95-CV-1313-PCT-RCB, 2007 WL 2774482 (D. Ariz. Sept. 21, 2007) .........3

*St. Louis Police Retirement System v. Severson*,
    No. 12-cv-5086 YGR, 2014 WL 3945655 (N.D. Cal. Aug. 11, 2014).................9

*Schwarz v. Secretary of Health & Human Servives*,
    73 F.3d 895 (9th Cir. 1995) ......................................................................13

*State of Ariz. v. Maricopa County Medical Society*,
    578 F. Supp. 1262 (D. Ariz. 1984) .............................................................9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .....................................................................9

*Tuttle v. Sky Bell Asset Management*,
    No. C 10-03588 WHA, 2012 WL 3257799 (N.D. Cal. Aug. 8, 2012) ...............14

*United States ex rel. Sant v. Biotronik, Inc.*,
    716 F. App'x 590 (9th Cir. 2017) ..............................................................13

*Van Gerwen v. Guarantee Mutual Life Co.*,
 214 F.3d 1041 (9th Cir. 2000) ..................................................................7, 8, 9, 10

*Vitamin C Antitrust Litigation*, No. 06-MD-1738 (BMC)(JO),
 2013 WL 6858853 (E.D.N.Y. Dec. 30, 2013) .....................................................15

*Weiss v. York Hosp.*,
 628 F. Supp. 1392 (M.D. Pa. 1986) ........................................................................9

*Willis v. City of Fresno*,
 No. 1:09-CV-01766-BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014), *aff'd*, 680
 F. App'x 589 (9th Cir. 2017) ...........................................................................8, 13

## **STATUTES**

15 U.S.C. § 26.......................................................................................................................1

**INTRODUCTION**

On March 26, 2019, plaintiffs filed their motion for attorneys' fees, expenses and service awards (Dkt. 1169), supported by the declarations of Jeffrey L. Kessler of the firm of Winston & Strawn LLP ("Winston"), Steve W. Berman of the firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), Bruce L. Simon of the firm of Pearson, Simon & Warshaw, LLP ("Pearson Simon") and Elizabeth C. Pritzker of the firm of Pritzker Levine LLP ("Pritzker") (Dkt. 1169-1, 1169-2, 1169-3, 1169-4), seeking $44,917,341.30 in attorneys' fees under the statutory fee-shifting provisions of the Clayton Act, 15 U.S.C. § 26, and an additional $1,346,741.69 in costs.  Plaintiffs base their enormous fee request on a $29,944,894.20 lodestar and a positive multiplier of 1.5, which they attempt to justify by citing the "significant risks and investments involved" and the "exceptional result" they purportedly obtained in the litigation.

Defendants do not dispute that, if plaintiffs prevail through all appeals in this matter, they would be entitled to recover their reasonable attorneys' fees under the Clayton Act.  But plaintiffs' request far exceeds the bounds of what could possibly be described as reasonable.  For example, plaintiffs seek recovery for hours expended keeping *Jenkins v. National Collegiate Athletic Association*, 14-cv-2758 (N.D. Cal.), separate from the consolidated action.  Such hours indisputably did not contribute to the result achieved on behalf of the consolidated plaintiffs, and thus are not compensable.  And while plaintiffs may be seeking compensation for other excessive, redundant and unnecessary hours, their refusal to provide detailed billing records, submitting instead evidence only of the total number of hours spent by various attorneys *by year*—or in one instance *across all years of the litigation*—without identifying the subject matter of any individual's time expenditures has made it impossible for defendants or the Court to evaluate whether the time spent on particular tasks was reasonable.  The Court should reduce plaintiffs' requested lodestar by at least 10% as a practical means of excluding non-compensable hours from their fee application.

Additionally, plaintiffs' request for a 1.5 positive multiplier is entirely meritless.  Plaintiffs do not—and cannot—credibly argue that the lodestar is unreasonably low or that a multiplier is necessary to ensure they receive a reasonable fee.  Nor do plaintiffs' claims of "significant risks and investments" and "exceptional results" provide valid bases for application of a multiplier.  In

1   cases involving federal fee-shifting statutes, the risk assumed and the result achieved do not, as a

2   matter of law, warrant a positive multiplier.  In any event, plaintiffs have failed to show any great

3   assumption of risk or that they have achieved anything more than partial success—even with the

4   support of Dr. Rascher's inherently flawed  report—much less the "rare and exceptional" circum-

5   stances in which courts will consider granting a positive multiplier.  Quite the contrary, because

6   the relief plaintiffs obtained is much more limited than the relief they sought, defendants submit

7   that a substantial negative multiplier is warranted.

8        Finally, plaintiffs' request for costs is unsupported, inappropriate and unreasonable.  This

9   Court should therefore deny or at least substantially reduce plaintiffs' requested reimbursement for

10  costs.

11       Accordingly, defendants respectfully request that the Court reduce plaintiffs' lodestar by at

12  least 10%, deny plaintiffs' request for a positive multiplier, grant defendants' request for a substan-

13  tial negative multiplier to plaintiffs' attorneys' fees request, and deny or reduce plaintiffs' request

14  for costs as set forth below.

15                              **ARGUMENT**

16  **I.    PLAINTIFFS' LODESTAR SHOULD BE REDUCED BY AT LEAST 10%**

17       Under federal fee-shifting statutes, district courts calculate attorneys' fees using the lode-

18  star method.  "The lodestar is calculated by multiplying the number of hours reasonably expended

19  by a reasonable hourly rate, taking into consideration the relevant factors in *Kerr v. Screen Extras*

20  *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)."  *de Jesus Ortega Melendres v. Arpaio*, Nos. 13-

21  16285 & 13-17238, 2017 WL 10808812, at *1 (9th Cir. Mar. 2, 2017) ("*Arpaio*").[1]  The party

22  seeking attorneys' fees "bears the burden of establishing entitlement to an award and documenting

23  the appropriate hours expended and hourly rates."  *Hensley v. Eckerhart*, 461 U.S. 424, 437

---

24  [1]  The twelve *Kerr* factors relevant to a determination of reasonable attorneys' fees are:  "(1) the
25  time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requi-
     site to perform the legal service properly, (4) the preclusion of other employment by the attorney
     due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7)
26  time limitations imposed by the client or the circumstances, (8) the amount involved and the re-
     sults obtained, (9) the experience, reputation, and the ability of the attorneys, (10) the 'undesirabil-
27  ity' of the case, (11) the nature and length of the professional relationship with the client, and (12)
     awards in similar cases."  526 F.2d at 70.

28

1  (1983). "The district court should also exclude from this initial fee calculation hours that were not

2  'reasonably expended,'" including "hours that are excessive, redundant or otherwise unnecessary."

3  *Id.* at 434-35 (citation omitted).

4  Where the court is unable to review detailed billing records to ensure that non-compensable

5  hours are not included in the application for attorneys' fees, the court should make an "across-the-

6  board percentage cut[] either in the number of hours claimed or in the final lodestar figure as a

7  practical means of [excluding non-compensable hours] from [the] fee application." *Gonzalez v.*

8  *City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (second alteration in original). In such cas-

9  es, courts within the Ninth Circuit "can impose a small reduction, no greater than 10 percent—a

10  'haircut'—based on its exercise of discretion and without a more specific explanation." *Id.* (cita-

11  tion omitted); *see also Robinson v. Open Top Sightseeing San Francisco, LLC*, No. 14-cv-00852-

12  PJH, 2018 WL 2088392, at *2 (N.D. Cal. May 4, 2018) (noting that court "can make 'across-the-

13  board percentage cuts either in the number of hours claimed or in the final lodestar figure as a

14  practical means of trimming the fat from a fee application'" (citation omitted)). Where the court

15  has the ability and the inclination to review detailed billing records, the reduction for non-

16  compensable time can be even greater. *See*, *e.g.*, *Arpaio*, 2017 WL 10808812, at *2, 11 (reducing

17  $585,616.09 attorneys' fee demand to $396,815.34—a reduction of approximately 33%—for ex-

18  cessive time spent on various tasks during the litigation).

19  As discussed below, given plaintiffs' failure to provide detailed billing records to establish

20  the number of hours reasonably expended, coupled with the fact that plaintiffs have included time

21  in their fee application for aspects of this case for which they are not entitled to recover their attor-

22  neys' fees, defendants request that the Court reduce plaintiffs' lodestar by at least 10%.

23  As an initial matter, plaintiffs have failed to meet their burden of showing the number of

24  hours reasonably expended. Although counsel "is not required to record in great detail how each

25  minute of [their] time was expended," they must, at minimum, list the hours expended and "identi-

26  fy the general subject matter of [the] time expenditures." *Hensley*, 461 U.S. at 437 n.12; *see also*

27  *Rudebusch v. Arizona*, No. 95-CV-1313-PCT-RCB, 2007 WL 2774482 at *8 (D. Ariz. Sept. 21,

28  2007) ("Basically, the records supporting an attorneys' fee motion 'should be comparable to those

1   that a private attorney would present to a client to substantiate a fee.'" (citation omitted)); N.D.

2   Cal. Local Rule 54-5(b)(2) (requiring "[a] *statement of the services rendered by each person* for

3   whose services fees are claimed together with a summary of the time spent by each person" (em-

4   phasis added)).

5          Here, plaintiffs have submitted charts merely identifying the total number of hours purport-

6   edly spent by various individuals (either each year or across all years of the litigation) and their

7   hourly rates.  (*See* Dkt. 1169-1 at 8-11; Dkt. 1169-2, Ex. B; Dkt. 1169-3, Ex. B; Dkt. 1169-4, Ex.

8   A.)  Plaintiffs have not identified the subject matter of any individual's time expenditures, making

9   it impossible to determine "whether the time devoted to particular tasks was reasonable and

10  whether there was improper overlapping of hours."  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614,

11  623 (9th Cir. 1993).  Because defendants should not be required to simply take plaintiffs' counsel's

12  word that all of their requested hours were reasonable, defendants moved for the production of

13  plaintiffs' detailed billing records.  Plaintiffs have refused to provide those records.

14         Plaintiffs' failure to submit adequate documentation detailing their hours justifies a reduc-

15  tion to their requested lodestar.  *See Hensley*, 461 U.S. at 433 ("Where the documentation of hours

16  is inadequate, the district court may reduce the award accordingly."); *Allen v. Berryhill*, No. 17-cv-

17  03384-SI, 2019 WL 343422, at *4 (N.D. Cal. Jan. 28, 2019) (reducing fees awarded by 5% when

18  evidence submitted did not itemize the time expended on specific tasks, but instead grouped work

19  "across entire weeks and months into a single time entry"); *Pac. W. Cable Co. v. City of Sacra-*

20  *mento, Cal.*, 693 F. Supp. 865, 870 (E.D. Cal. 1988) (holding plaintiff's counsel had "not met its

21  burden of providing sufficiently detailed information regarding the number reasonable of hours"

22  because "[a] significant number of the time slips submitted to the court merely attribute[d] time to

23  work for [plaintiff] without describing how that time was spent or whether the work related to the

24  litigation").[2]

25  _____

26  [2]  Plaintiffs' assertion that "the fees sought have already been discounted in an effort to be con-
    servative and eliminate the need for any further reduction due to any possible inefficiencies" (Dkt.
    1169, at 20), is insufficient to ensure the exclusion of excessive, redundant and unnecessary hours.

27  Only one of the four firms requesting fees has even purported to reduce its request on this basis.
    And with respect to the firm that has made such a reduction, plaintiffs have submitted insufficient

28  evidence for defendants and the Court to make any assessment as to whether the "roughly

*(cont'd)*

Because plaintiffs have failed to submit adequate documentation, it is impossible for defendants to identify precisely which of their hours were not "reasonably expended." But the fee application suggests that plaintiffs are seeking recovery for at least some categories of work that are not compensable. For example, plaintiffs are seeking fees for all work that Winston did in connection with the proceedings before the United States Judicial Panel on Multidistrict Litigation, including briefing on "several transfer issues, including whether the cases were suitable for coordination, and which court would be an appropriate transferee forum." (Dkt. 1169, at 4.) In those proceedings, Winston strenuously opposed transfer to this forum and any formal coordination or consolidation with the other grant-in-aid actions. (*See In re NCAA Athletic Grant-in-Aid Antitrust Litig.*, MDL No. 2541, Dkt. 24, Jenkins Plaintiffs' Opp. to Alston's Motion for Transfer of Actions to the Northern District of California for Coordinated or Consolidated Pretrial Proceedings (J.P.M.L. Apr. 10, 2014); *id.*, Dkt. 80, Official Transcript of Hearing, at 12-21 (J.P.M.L. June 19, 2014).) Once transferred to this Court, Winston, Hagens Berman and Pearson Simon became co-counsel for the Rule 23(b)(2) classes in both the consolidated case and *Jenkins*. (*See* Consolidated Plaintiffs' and Jenkins' Plaintiffs' Joint Brief re Coordination and Impact of Ninth Circuit Ruling, 14-cv-2758, Dkt. 149; Order Granting Motion for Rule 23(b)(2) Class Certification, 14-cv-2758, Dkt. 154.) They nevertheless insisted that *Jenkins* continue as a separate action. (*Id.*) Even after the Court issued its findings of fact and conclusions of law following a ten-day bench trial in the consolidated action, these three law firms continued to argue that *Jenkins* should be maintained as an ongoing action and transferred to the District of New Jersey to have the case heard there. (*See* Plaintiffs' Opp. to Motion to Dismiss *Jenkins*, 14-cv-2758, Dkt. 435.) The hours plaintiffs' counsel have spent seeking to keep *Jenkins* separate from the consolidated action were extraneous, unnecessary and not helpful to the result obtained by the consolidated plaintiffs at trial, and thus are not compensable. *See Arpaio*, 2017 WL 10808812, at *8 (holding time expended on "argument

_____
*(cont'd from previous page)*
$900,000" reduction for the time of "certain timekeepers that worked only limited hours, or only for short periods of time" is sufficient to eliminate excessive or unnecessary time from a requested lodestar of nearly $30 million.

1  that was unnecessary or unhelpful to result" not compensable); *Romberg v. Nichols*, 970 F.2d 512,

2  524 n.8 (9th Cir. 1992) (explaining that attorneys' efforts expended on extraneous and dismissed

3  claims or issues that did not contribute to the successful claims or issues should not be compen-

4  sated), *vacated and remanded on other grounds*, 506 U.S. 1075 (1993).

5  In addition, plaintiffs cannot receive compensation for hours expended on the damages por-

6  tion of the case because they have already received more than $40 million from the settlement fund

7  for that purpose.  (*See*  Dkt. 688, 745.)  Although Hagens Berman, Pearson Simon and Pritzker

8  claim that they seek to recover only "fees and expenses attributable to work done specifically for

9  the injunctive portion of the case" (Dkt. 1169, at 20), their failure to submit adequate billing rec-

10  ords has made it impossible for defendants to verify that assertion.  Moreover, as discussed more

11  fully below, their inclusion of the costs of depositions related solely to the damages phase of the

12  case in their bill of costs squarely belies this claim.  Defendants should not be required to blindly

13  rely on these law firms' judgment calls regarding what constitutes work in furtherance of the in-

14  junctive case versus the damages case.  *See Entm't Research Grp., Inc. v. Genesis Creative Grp.,*

15  *Inc.*, 122 F.3d 1211, 1232 n.13 (9th Cir. 1997) (explaining that "we do not mean to impute to [the

16  party seeking fees] or its attorneys any intent to mislead the court[,] [b]ut one does not always see

17  one's own situation with the perspicacity available to one's opponents").

18  Plaintiffs' failure to provide even a general delineation of the time and tasks undertaken by

19  various attorneys has unfairly prevented defendants from identifying whether their request contains

20  additional categories of excessive, redundant or unnecessary hours.[3]  Given the deficiencies in the

21  evidence plaintiffs have submitted and the fact that their request includes non-compensable hours,

22  defendants request that the Court reduce plaintiffs' lodestar by at least 10%.

23

24  [3]  For example, defendants currently have no way to confirm whether plaintiffs are requesting fees
for non-compensable clerical work or media activities.  *See, e.g.*, *Arpaio*, 2017 WL 10808812, at
25  *10 ("[P]urely clerical or secretarial tasks . . . should not be billed at a paralegal [or lawyer's] rate,
regardless of who performs them." (alterations in original) (citation omitted)); *League for Coastal*
26  *Protection v. Kempthorne*, No. C 05-0991-CW, 2006 WL 3797911, at *8 (N.D. Cal. Dec. 22,
2006) (denying recovery for time spent on media activities when plaintiffs had "not shown the re-
27  quired direct, intimate relationship between their press activities and success on the merits of the
case").

28

## II.     PLAINTIFFS ARE NOT ENTITLED TO A POSITIVE MULTIPLIER

Once the lodestar is calculated, there is a "'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("*Dague*") (citation omitted). "'[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee'" and "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542, 553 (2010); *Dague*, 505 U.S. at 563 ("Taking account of [factors subsumed in the lodestar] again through lode-star enhancement amounts to double counting.").

A multiplier, therefore, may be used to adjust the lodestar only in "'rare' and 'exceptional cases'" based on "factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Application of a multiplier must be "supported by both 'specific evidence' on the record and detailed findings by the lower court[] that the lodestar amount is unreasonably low or unreasonably high." *Id.* A "fee applicant who seeks more than [the lodestar bears] the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.'" *Dague*, 505 U.S. at 562 (citation omitted).

Plaintiffs have failed to overcome the strong presumption that their lodestar, based on the factors articulated by the Ninth Circuit in *Kerr*, is not unreasonably low. Indeed, plaintiffs' counsel does not even argue that the nearly $30 million lodestar they seek (which still amounts to near-ly $27 million when reduced by 10% for the reasons discussed above) is not a reasonable fee. In-stead, they simply assert that a positive multiplier of 1.5 should be applied because they have (a) "made substantial outlays of resources during a protracted litigation . . . even though there was a high risk of not prevailing at all, or not recovering the costs or fees expended," and (b) "ultimately achieved exceptional results for plaintiffs." (Dkt. 1169, at 22.) These proffered bases, even if true, are already captured in the *Kerr* factors, which are presumed to be included in the lodestar amount, and therefore do not support the application of a positive multiplier.

### A.     Plaintiffs' Claimed High Risk of Not Prevailing or Recovering Their Fees and Costs Does Not Justify a Positive Multiplier

Plaintiffs contend that a positive multiplier should be applied to their lodestar because the

1   case was "risky and required tremendous resources." (Dkt. 1169, at 22.) As an initial matter,

2   plaintiffs' counsel's claimed "risk" is vastly overstated. Hagens Berman, Pearson Simon and

3   Pritzker hedged their risk by settling the damages portion of the consolidated case for more than

4   $200 million and recovering more than $40 million in fees from that settlement. This hedge can-

5   not be reconciled with counsel's assertion that they have undertaken significant risk in litigating

6   their requested injunctive relief in the consolidated action. In any event, each of plaintiffs' argu-

7   ments in support of their request for a risk multiplier is meritless and should be rejected.

8        *First*, plaintiffs' assertion that a multiplier should be applied because the matter involved

9   "novel, complex issues" must be rejected as impermissible double counting, given that this *Kerr*

10  factor is presumptively included in the lodestar. It is well established that "the novelty and com-

11  plexity of a case generally may not be used as a ground for an enhancement because these factors

12  'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue*,

13  559 U.S. at 553 (alteration in original) (citation omitted); *see also Van Gerwen*, 214 F.3d at 1045

14  n.2 ("novelty and complexity of the issues should not be considered at the multiplier stage"); *Reyes*

15  *v. Bakery & Confectionery Union*, 281 F. Supp. 3d 833, 857 (N.D. Cal. 2017) ("novelty and com-

16  plexity of the issues" are among the "[f]actors that cannot serve as independent bases for adjusting

17  fee awards" (citation omitted)); *Willis v. City of Fresno*, No. 1:09-CV-01766-BAM, 2014 WL

18  3563310, at *22 (E.D. Cal. July 17, 2014) (rejecting request for an upward adjustment to the lode-

19  star because, *inter alia*, "[t]he difficulty and novelty of the underlying legal issues are reflected in

20  the significant number of hours logged over the course of this litigation"), *aff'd*, 680 F. App'x 589

21  (9th Cir. 2017). Notably, plaintiffs' motion repeatedly references the novelty and complexity of

22  issues to support the reasonableness of their lodestar (Dkt. 1169, at 1, 16-18), confirming that it

23  should not be considered at the multiplier stage.[4]

24       *Second*, plaintiffs' argument that a multiplier should be applied because there was a high

25  ――――――――――――――――

26  [4]  Plaintiffs' reliance on *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011), in support of their argument for a multiplier is misplaced. That case did not award a positive multiplier and expressly recognized that "[m]any of the[] [reasonableness] factors are

27  'subsumed within the initial calculation of hours reasonably expended at a reasonable rate.'" *Id.* at 942 n.7 (citation omitted).

28

1    risk of non-payment—*i.e.*, they litigated this case on a contingent-fee basis (*see* Dkt. 1169-2 ¶ 73;

2    1169-3 ¶ 23)—is contrary to law.  In cases involving federal fee-shifting statutes, multipliers are

3    not permitted based on the contingent nature of the fee.  *See Dague*, 505 U.S. at 566-67 (holding

4    that "enhancement for contingency is not permitted under the fee shifting statutes"); *Van Gerwen*,

5    214 F.3d at 1048 ("A district court may not rely on a contingency agreement to increase or de-

6    crease what it determines to be a reasonable attorney's fee.").[5]

7        *Third*, plaintiffs cannot receive a multiplier for the "millions of dollars" they expended "to

8    retain the best experts for the Classes despite the fact that such fees are not taxable costs under the

9    Clayton Act" (Dkt. 1169, at 2).  As plaintiffs concede, expert expenses are not compensable under

10   the Clayton Act.  Plaintiffs cannot end-run the prohibition on recovering such expenses simply by

11   requesting them as part of a multiplier.[6]

12       **B.    Plaintiffs' Claimed "Exceptional Results" Do Not Justify a Positive Multiplier**

13       Plaintiffs also contend that a 1.5 multiplier should be applied to their lodestar because they

14   purport to have obtained "exceptional result[s]" for the classes.  (Dkt. 1169, at 21-23.)  But the

15   "quality of an attorney's performance generally should not be used to adjust the lodestar '[b]ecause

---

[5] Plaintiffs have cited two antitrust cases awarding risk multipliers.  (Dkt. 1169, at 14 n. 72 (*citing State of Ariz. v. Maricopa Cty. Med. Soc.*, 578 F. Supp. 1262, 1279 (D. Ariz. 1984); *Weiss v. York Hosp.*, 628 F. Supp. 1392, 1415 (M.D. Pa. 1986).)  Both cases, however, predate the Supreme Court's decision in *Dague*, which prohibits contingency enhancements of the lodestar under federal fee-shifting statutes.  Moreover, cases cited by plaintiffs involving class action settlements and state law issues are inapposite since, unlike the current case, those cases are not governed by *Dague*.  *See, e.g.*, *St. Louis Police Retirement Sys. v. Severson*, No. 12-cv-5086 YGR, 2014 WL 3945655, at *5 (N.D. Cal. Aug. 11, 2014) (explaining that contingent nature of employment can be considered under California law); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 330 (W.D. Tex. 2007) (considering contingency factor because "*Dague* may not apply to class action settlement"); *see also Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("The procedures used to determine the amount of reasonable attorneys' fees differ concomitantly in cases involving a common fund from those in which attorneys' fees are sought under a fee-shifting statute . . . [because] [i]n common fund cases . . . the court can apply a risk multiplier when using the lodestar approach.").

[6] Unlike this case, a multiplier may be appropriate to compensate for a delay in reimbursement of *compensable* expenses in "unusual cases" where there has been "an extraordinary outlay of expenses and the litigation is exceptionally protracted."  *Perdue*, 559 U.S. at 555.  In such cases, however, the multiplier is limited to an amount necessary to compensate for the delay in reimbursement.  *See id.* (explaining that enhancement for exceptional delay in obtaining reimbursement of expenses "must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest to the qualifying outlays of expenses").  Where, as here, the expenses for experts are not themselves compensable, there is no basis for a multiplier to account for the time value of those expenses.

---

considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" *Perdue*, 559 U.S. at 553 (citation omitted); *see also Van Gerwen*, 214 F.3d at 1045 n.2 ("[Q]uality of representation and results obtained are ordinarily subsumed in the lodestar determination and in most cases should not be considered in the multiplier step."); *Reyes*, 281 F. Supp. 3d at 857 (explaining that "the special skill and experience of counsel, . . . the quality of representation, and . . . the results obtained" "cannot serve as independent bases for adjusting fee awards").[7]  Only in "rare" and "exceptional" cases is superior attorney performance "not adequately taken into account in the lodestar calculation," and in such cases the party seeking the multiplier must present "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Perdue*, 559 U.S. at 553 (citation omitted).  For example, courts have granted a multiplier for superior performance where attorneys' fees are limited by statute and the plaintiff presented specific evidence that other competent attorneys were not willing to take on the case because of insufficient fees.  *See*, *e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1102, 1104-05 (9th Cir. 2016).

Plaintiffs cannot credibly argue that the nearly $30 million lodestar they request—even when reduced by 10%—would be inadequate to attract competent counsel.  Nor should there be any dispute that their requested hourly rates of up to $1,515/hour already account for the result obtained and the quality of counsel's performance.  *See Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 723-24 (S.D. Cal. 2014) (denying request for 1.5 multiplier despite "outstanding success obtained" because the lodestar already "compensated for that feat"), *aff'd*, 669 F. App'x 920 (9th Cir. 2016).

Moreover, the outcome plaintiffs obtained here is a far cry from the outcome they desired.  Although plaintiffs sought to enjoin all of defendants' rules limiting the compensation and benefits student-athletes can receive for their participation in intercollegiate athletics, the outcome they ob-

---

[7]  In *Campbell v. National Passenger Railroad Corp.*, 718 F. Supp. 2d 1093 (N.D. Cal. 2010), which plaintiffs cite in support of their request for a positive multiplier, the court recognized that "results obtained" were among the factors "subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards."  *Id*. at 1099.

1  tained was much more limited.[8]  Indeed, the district court rejected every one of plaintiffs' proposed

2  less restrictive alternatives, and instead adopted a modified alternative that (i) maintains the cap on

3  grants-in-aid at not less than cost-of-attendance, (ii) allows the NCAA to limit compensation and

4  benefits that are unrelated to education, but (iii) prohibits the NCAA from restricting compensation

5  and benefits related to education.  Plaintiffs were plainly dissatisfied with this result, filing a notice

6  of cross-appeal on April 5, 2019.  (Dkt. 1175.)

7       Dr. Rascher's report does little to further plaintiffs' claim of an unparalleled victory.  Plain-

8  tiffs tout that Dr. Rascher "has opined that the new education-related benefits that may now be-

9  come available could, conservatively, be worth as much as $100,000 for individual Class Members

10  over a four-year period, and as much as $235 million annually to the three Classes as a whole."

11  (Dkt. 1169, at 1.)  But Dr. Rascher's analysis relies on numerous illogical and irrational assump-

12  tions, and thus should not be credited.[9]  For example, in estimating a lower-bound of likely adop-

13  tion of compensation related to education, Dr. Rascher relies on the econometric model he devel-

14  oped for class certification to predict the adoption of cost-of-attendance stipends.  (Dkt. 1169-1,

15  Exh. C at 3-4.)  But COA stipends generally amount to a few thousand dollars per student-athlete

16  per year.  *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1054 n.3 (9th Cir.

17  2015).  There is no basis for Dr. Rascher's assumption that every school that provided COA sti-

18  pends would be willing and able to offer every football and basketball scholarship athlete an addi-

19  tional $60,000-100,000 or more in educational compensation.  (Dkt. 1169-1, Exh. C at 2.)  Dr.

20  Rascher's calculation of an upper range of adoption based on schools that were deemed to have

21  adopted COA for purposes of the damages settlement is even more unrealistic.  Under the settle-

22  ment agreement, any school that provided or expressed an intent to provide any portion of the gap

23  between the former GIA limit and COA to even one student-athlete was categorized as a COA

---

[8]  Nevertheless, the district court's decision still suffers from a number of reversible errors, which will be addressed in defendants' brief on appeal.

[9]  In light of the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation," *Hensley*, 461 U.S. at 437, defendants have not undertaken to identify every flaw in Dr. Rascher's analysis.  Instead, defendants simply highlight in this section a few examples of the facially unsupportable assumptions underlying his work.

1   adopter, thus rendering all student-athletes receiving GIAs at that school eligible for distributions

2   from the settlement fund.  (Dkt. 560-1, Settlement Agreement, Ex. A (Distribution Plan) at §

3   A(a)(i)-(ii).)  There is simply no basis to assume, as Dr. Rascher does, that a school that expressed

4   an intent to provide some amount above the former GIA limit to at least one football or basketball

5   student-athlete will provide $60,000-100,000 or more in additional benefits to every football and

6   basketball scholarship athlete.[10]

7          In addition, despite repeatedly acknowledging that individual conferences and schools are

8   permitted to cap the value of permissible educational compensation under the district court's deci-

9   sion, Dr. Rascher assumes that not one conference or school will do so.  Dr. Rascher further as-

10  sumes that *every* class member will pursue some form of post-eligibility education (i.e., all gradu-

11  ating student-athletes will go to graduate school or take a paid internship, and all non-graduating

12  athletes will attend vocational school), and that no class member will choose to pursue full-time

13  employment following graduation.  Such assumptions, again, are entirely unsupported.

14                                  * * * * *

15         In sum, neither the risk plaintiffs' counsel claims to have undertaken nor the exceptional

16  result they purport to have obtained support the application of a positive multiplier.  Accordingly,

17  plaintiffs' request for a 1.5 positive multiplier should be denied.

18  **III.   A SUBSTANTIAL NEGATIVE MULTIPLIER SHOULD BE APPLIED TO**
19  **        PLAINTIFFS' FEE REQUEST GIVEN THAT THEY ACHIEVED ONLY**
    **        PARTIAL SUCCESS**

20         "A reduced fee award is appropriate if the relief, however significant, is limited in compar-

21  ison to the scope of the litigation as a whole."  *Hensley*, 461 U.S. at 440.  Here, as discussed above,

22  the relief that plaintiffs obtained is much more limited than the relief they sought and, in fact,

23  plaintiffs are appealing the district court's decision.  Where plaintiffs are less than fully successful

24  in the underlying litigation, courts in this Circuit have reduced the requested lodestar by amounts

25

26  ───────────────
    [10]  For example, Dr. Rascher's analysis assumes that Jackson State, a school with no FBS football
27  program, will provide an additional $142,000 to its men's basketball athletes and an additional
    $168,000 to its women's basketball athletes, which would account for approximately 25% and
    31% of those teams' revenues in 2017 respectively.
28

───────────────────────────────────────────────
**DEFS.' OPPOSITION TO PLS.' MOTION FOR ATTORNEYS' FEES,**          **MDL No. 4:14-md-02541-CW**
**EXPENSES AND SERVICE AWARDS**

1  ranging from 20% to 75%.  *See United States ex rel. Sant v. Biotronik, Inc.*, 716 F. App'x 590,

2  592-93 (9th Cir. 2017) (affirming district court's 20% reduction of the fee award based on appli-

3  cant having achieved limited success in the underlying litigation); *Schwarz v. Secretary of Health*

4  *& Human Servs.*, 73 F.3d 895, 904-05 (9th Cir. 1995) (affirming 75% reduction of lodestar based

5  on success on only 25% of the claims); *Harris v. Marhoefer*, 24 F.3d 16, 17 (9th Cir. 1994) (af-

6  firming 50% reduction based on the level of plaintiffs' success on the underlying claims); *Willis*,

7  2014 WL 3563310, at *25 (holding that a 35% lodestar reduction was warranted when counsel

8  achieved limited but "meaningful success for their client and the public"); *Rodriguez v. Barrita,*

9  *Inc.*, 53 F. Supp. 3d 1268, 1290 (N.D. Cal. 2014) (finding a 20% lodestar reduction warranted in

10  light of plaintiff's limited success despite acknowledging that counsel had achieved significant

11  success for its client and the public); *Antoninetti*, 49 F. Supp. 3d at 725-26 (applying a 50% reduc-

12  tion to the requested lodestar where partial success rendered the requested lodestar "excessive").

13      Here, plaintiffs sought to strike down defendants' cost-of-attendance cap on athletic schol-

14  arships, as well as defendants' caps on all other compensation and benefits permitted to be award-

15  ed to FBS football players and Division I basketball players.  The district court rejected much of

16  plaintiffs' demands, retaining the cost-of-attendance cap on financial aid and permitting defendants

17  to limit the levels of non-education-based compensation that Division I schools may offer their

18  student-athletes.  In light of the foregoing, defendants submit that a substantial negative multiplier

19  should be applied to account for plaintiffs' partial victory.

20  **IV.  PLAINTIFFS' REQUEST FOR COSTS SHOULD BE DENIED OR**
21  **SUBSTANTIALLY REDUCED**

22      In addition to their application for nearly $45 million in attorneys' fees, plaintiffs seek to

23  recover $1,346,741.69 in costs and expenses.  But plaintiffs fail to support $982,958.66 of this de-

24  mand with even a single invoice or document, instead simply listing vague categories of purported

25  costs for which they claim reimbursement.  Moreover, with respect to the remaining $363,783.03

26  in costs—for which plaintiffs actually provide invoices in their bill of costs—they seek recovery of

27  many costs that, as a matter of law, are not compensable.  Therefore, plaintiffs' request for costs

28

1   and expenses should be denied or substantially reduced as set forth below.[11]

2   **A.      Plaintiffs Are Not Entitled to Recover for Unsupported Costs**

3   A plaintiff may not recover costs for which they provide insufficient documentation for the

4   court to determine whether those costs are either allowable or reasonable.  *See*, *e.g.*, *Banas v. Vol-*

5   *cano Corp.*, 47 F. Supp. 3d 957, 976 (N.D. Cal. 2014) (party seeking costs must provide "suffi-

6   cient detail to establish the reasonableness of the costs"); *Tuttle v. Sky Bell Asset Mgmt.*, No. C 10-

7   03588 WHA, 2012 WL 3257799, at *1 (N.D. Cal. Aug. 8, 2012) ("The documentation submitted

8   with class counsel's motion for attorneys' fees [and costs] is inadequate because it does not enable

9   the Court to determine whether the request is reasonable.").  Where, as here, the plaintiff fails to

10  provide invoices and other documentation to support the permissibility and reasonableness of the

11  costs, the court has the discretion to reduce the amount of the recoverable costs or to disallow them

12  altogether.  *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. 4:09-cv-03329-CW, 2016 WL

13  1255454, at *13 (N.D. Cal. Mar. 31, 2016) (reducing vague cost entries by 10%); *Banas*, 47 F.

14  Supp. 3d at 978-80 (reducing requested costs by up to 50% for failure to provide adequate detail to

15  permit the court to determine the reasonableness of the sought costs); *Cruz v. Starbucks Corp.*, No.

16  C-10-01868 JCS, 2013 WL 2447862, at *10 (N.D. Cal. June 5, 2013) ("Because the Court cannot

17  determine whether the requested . . . costs are either allowable or reasonable, it declines to award

18  these requested costs.").

19  Here, plaintiffs seek nearly $1 million in costs for which they have not submitted a single

20  invoice or other document from which this Court could determine those costs' appropriateness or

21  reasonableness.  (Dkt. 1169-1 at ¶ 28; 1169-2 Exh. C; 1169-3 Exh. D; 1169-4 Exh. B.)  For exam-

---

[11]   On May 2, 2019, the clerk granted plaintiffs' bill of costs in part and awarded plaintiffs
23  $305,476.77.  (Dkt. 1190.)  On May 9, 2019, plaintiffs filed a motion to review the clerk's taxation
of costs, seeking to recover costs for items that the clerk had disallowed.  (Dkt. 1193.)  Separately,
24  on May 10, 2019, defendants filed an administrative motion to vacate the clerk's order taxing costs
on the grounds that a prior order of this Court (Dkt. 1182) provided defendants until May 24, 2019
25  to respond to plaintiffs' bill of costs.  (Dkt. 1194.)  Those motions are pending.  In response to
plaintiffs' motion to review the clerk's taxation of costs, defendants have established that plaintiffs
26  are not entitled to recover their costs for expedited and Realtime deposition transcripts, as well as
for the transcripts of certain proceedings in this case and in *O'Bannon v. National Collegiate Ath-*
27  *letic Association*, 4:09-cv-03329-CW (N.D. Cal. filed July 21, 2009).  (Dkt. 1197.)  Defendants
incorporate those arguments here by reference.

1  ple, plaintiffs' counsel collectively seek nearly $250,000 in travel expenses including airfare,

2  ground transportation, hotels and meals.  (*See id.*)  But plaintiffs have not reduced these requested

3  expenses to eliminate first or business class airfare or comparably extravagant hotel stays, which

4  courts have held are "clearly inappropriate."  *See*, *e.g.*, *In re Cathode Ray Tube (Crt) Antitrust*

5  *Litig.*, No. C-07-5944 JST, 2016 WL 183285, at *3 (N.D. Cal. Jan. 14, 2016) ("the claimed travel

6  and meal costs included many items that were clearly inappropriate, including first class airfare,

7  expensive meals and wine, social drinks with co-counsel, and hotel rooms costing upwards of

8  $3,500 per night"); *see also O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp. 3d 819, 840

9  (N.D. Cal. 2015) ("The Court does note plaintiffs voluntarily reduce by 50 percent expenses in-

10  volving 'first or business class airfare or comparable hotel costs for senior partners,' for a total re-

11  duction of $33,490.23.").  In addition, plaintiffs seek $18,784.36 in local travel expenses, even

12  though courts, including Magistrate Judge Spero in this district, have held that such expenses are

13  not recoverable.  *See*, *e.g.*, *Cruz*, 2013 WL 2447862, at *11.  Plaintiffs' request also includes more

14  than $21,000 in undefined "miscellaneous" and "professional services" costs, neither of which can

15  be determined as appropriate or reasonable on the basis of plaintiffs' submission, and should be

16  disallowed.  *Id.*

17      Given the complete lack of documentation with which this Court can adjudge the appropri-

18  ateness and reasonableness of nearly $1 million in requested costs, this Court should disallow this

19  request and deny plaintiffs' motion to recover these costs.

20      **B.**    **Plaintiffs Seek Reimbursement for Impermissible Costs and Expenses**

21      Even for the $363,783.03 in costs for which plaintiffs submitted invoices, the record

22  demonstrates that many of these costs are not compensable, and should be denied.  In addition to

23  those costs that the clerk properly disallowed in its bill of costs order, dated May 2, 2019 (Dkt.

24  1190), plaintiffs seek to recover $6,122.89 in costs for the depositions identified below that related

25  solely to the damages portion of the case—for which plaintiffs already received reimbursement

26  from the damages settlement—and thus are not recoverable here.  *See Bravo v. City of Santa Ma-*

27  *ria*, 810 F.3d 659, 667 (9th Cir. 2016) (holding "defendants are entitled to an offset of costs to the

28  extent that the litigation expenses have already been reimbursed"); *In re Vitamin C Antitrust Litig.*,

No. 06-MD-1738 (BMC)(JO), 2013 WL 6858853, at *6 (E.D.N.Y. Dec. 30, 2013) (denying reimbursement of costs connected to prior settlements because plaintiffs failed to show "these costs are not being double-counted").

| 9/21/2016 | Cynthia Burnette | $618.87 | Transcript & Video |
| 9/21/2016 | Cynthia Burnette | $230.00 | Video |
| 9/29/2016 | Daniel Davenport | $732.49 | Transcript & Video |
| 9/19/2016 | Dustin Eubanks | $237.50 | Video |
| 10/3/2016 | Cheryl Flatt | $190.00 | Video |
| 9/28/2016 | Jonathan Orszag | $2,235.77 | Transcript & Video |
| 9/28/2016 | Jonathan Orszag | $498.75 | Video |
| 8/3/2016 | Dr. Daniel Rascher | $500.00 | Video |
| 11/7/2016 | Dr. Daniel Rascher | $250.00 | Video |
| 10/4/2016 | Brent Tener | $629.51 | Transcript & Video |

The clerk properly denied plaintiffs' request for $1,577 in unrecoverable *pro hac vice* application fees. *See Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc*., 741 F.3d 955, 958 (9th Cir. 2013) (holding that *pro hac vice* fees are not recoverable as taxable costs); *Competitive Techs. v. Fujitsu Ltd*., No. C-02-1673 JCS, 2006 WL 6338914, at *4 (N.D. Cal. Aug. 23, 2006) (*pro hac vice* fees "are an expense of counsel that is not normally passed on to clients" and is therefore not a recoverable expense). Nor may plaintiffs recover $5,270.61 of the witness fees they seek. First, plaintiffs' claim for unspecified video streaming service costs in the amount of $791.25 and $1,825.76 on September 17, 2018 and September 19, 2019, respectively, are unnecessary and thus not recoverable. Plaintiffs did not utilize any video services on those days; in fact this Court was not in session on September 19. Second, plaintiffs are not entitled to recover $2,653.60 in costs for the live video stream for witness Amy Huchthausen pursuant to this Court's order dated August 31, 2018. (Dkt. 1016 at 6 ("Plaintiffs bear all costs associated with [Amy Huchthausen's] appearance.").) Finally, plaintiffs claim $210,101.60 in unspecified color copy printing costs. At a min-

1  imum, these printing costs should be reduced by 50% because they are unnecessary and excessive.

2  *See Banas*, 47 F. Supp. 3d at 978-80 (awarding a 50% reduction in costs for failure to provide a

3  breakdown or to explain why copying was necessary).

4  **V.      PLAINTIFFS' REQUEST FOR SERVICE AWARDS IS OVERBROAD**

5        Plaintiffs request service awards of "$15,000 for each Plaintiff who testified at trial and

6  $10,000 for Plaintiffs who sat for depositions and participated extensively."  (Dkt. 1169, at 23.)

7  Although defendants do not object in principle to plaintiffs' request for service awards (if plaintiffs

8  ultimately are the prevailing party after all appeals), their request that service awards be given to

9  all plaintiffs who testified at trial or "sat for depositions and participated extensively" is overbroad.

10  Several of the named plaintiffs in the consolidated action are receiving $20,000 service awards

11  from the damages settlement and should not receive additional service awards here, with the ex-

12  ception of Shawne Alston who testified at trial.  In addition, to the extent plaintiffs are seeking ser-

13  vice awards for named plaintiffs who produced documents but declined to sit for deposition, that

14  request should be denied.

15                                 **CONCLUSION**

16        For the foregoing reasons, defendants respectfully request the Court reduce plaintiffs' lode-

17  star by at least 10%, deny plaintiffs' request for a positive multiplier, grant defendants' request for

18  a negative multiplier, and deny or at least substantially reduce plaintiffs' requested reimbursement

19  for costs.

20

21

22

23

24

25

26

27

28

Dated: May 24, 2019                    Respectfully submitted,

**WILKINSON WALSH + ESKOVITZ LLP**      **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

By:    /s/ Beth A. Wilkinson           By:    /s/ Jeffrey A. Mishkin
    Beth A. Wilkinson (*pro hac vice*)          Jeffrey A. Mishkin (*pro hac vice*)
    Brant W. Bishop, P.C. (*pro hac vice*)       Karen Hoffman Lent (*pro hac vice*)
    James Rosenthal (*pro hac vice*)             Four Times Square
    2001 M Street NW, 10th Floor                 New York, NY 10036
    Washington, DC 20036                         Telephone:  (212) 735-3000
    Telephone:  (202) 847-4000                   Facsimile:  (212) 735-2000
    Facsimile:  (202) 847-4005                   jeffrey.mishkin@skadden.com
    bwilkinson@wilkinsonwalsh.com                karen.lent@skadden.com
    bbishop@wilkinsonwalsh.com
    jrosenthal@wilkinsonwalsh.com                Patrick Hammon (SBN 255047)
                                                 525 University Avenue, Suite 1100
    Sean Eskovitz (SBN 241877)                   Palo Alto, CA 94301
    11601 Wilshire Boulevard, Suite 600          Telephone:  (650) 470-4500
    Los Angeles, CA 90025                        Facsimile:  (650) 470-4570
    Telephone:  (424) 316-4000                   patrick.hammon@skadden.com
    Facsimile:  (202) 847-4005
    seskovitz@wilkinsonwalsh.com                 Attorneys for Defendants
                                                 NATIONAL COLLEGIATE ATHLETIC
    Attorneys for Defendant                      ASSOCIATION and WESTERN
    NATIONAL COLLEGIATE ATHLETIC                 ATHLETIC CONFERENCE
    ASSOCIATION

**PROSKAUER ROSE LLP**                  **MAYER BROWN LLP**

By:    /s/ Bart H. Williams            By:    /s/ Britt M. Miller
    Bart H. Williams (SBN 134009)                Andrew S. Rosenman (SBN 253764)
    Scott P. Cooper (SBN 96905)                  Britt M. Miller (*pro hac vice*)
    Kyle A. Casazza (SBN 254061)                 71 South Wacker Drive
    Jennifer L. Jones (SBN 284624)               Chicago, IL 60606
    Shawn S. Ledingham, Jr. (SBN 275268)         Telephone:  (312) 782-0600
    Jacquelyn N. Crawley (SBN 287798)            Facsimile:  (312) 701-7711
    2029 Century Park East, Suite 2400           arosenman@mayerbrown.com
    Los Angeles, CA 90067                        bmiller@mayerbrown.com
    Telephone:  (310) 557-2900
    Facsimile:  (310) 557-2193                   Richard J. Favretto (*pro hac vice*)
    scooper@proskauer.com                        1999 K Street, N.W.
    bwilliams@proskauer.com                      Washington, DC  20006
    kcasazza@proskauer.com                       Telephone:  (202) 263-3000
    jljones@proskauer.com                        Facsimile:  (202) 263-3300
    sledingham@proskauer.com                     rfavretto@mayerbrown.com
    jcrawley@proskauer.com
                                                 Attorneys for Defendant
    Attorneys for Defendant                      THE BIG TEN CONFERENCE, INC.
    PAC-12 CONFERENCE

**POLSINELLI PC**

By:      /s/ Leane K. Capps
    Leane K. Capps (*pro hac vice*)
    Caitlin J. Morgan (*pro hac vice*)
    2950 N. Harwood Street
    Suite 2100
    Dallas, TX 75201
    Telephone:  (214) 397-0030
    lcapps@polsinelli.com
    cmorgan@polsinelli.com

    Amy D. Fitts (*pro hac vice*)
    120 W. 12th Street
    Kansas City, MO 64105
    Telephone: (816) 218-1255
    afitts@polsinelli.com

    Wesley D. Hurst (SBN 127564)
    2049 Century Park East, Suite 2300
    Los Angeles, CA 90067
    Telephone:  (310) 556-1801
    whurst@polsinelli.com

Attorneys for Defendants
THE BIG 12 CONFERENCE, INC. and
CONFERENCE USA, INC.

**ROBINSON BRADSHAW & HINSON**

By:      /s/ Robert W. Fuller
    Robert W. Fuller, III (*pro hac vice*)
    Nathan C. Chase Jr. (SBN 247526)
    Lawrence C. Moore, III (*pro hac vice*)
    Pearlynn G. Houck (*pro hac vice*)
    Amanda R. Pickens (*pro hac vice*)
    101 N. Tryon St., Suite 1900
    Charlotte, NC 28246
    Telephone:  (704) 377-2536
    Facsimile:  (704) 378-4000
    rfuller@rbh.com
    nchase@rbh.com
    lmoore@rbh.com
    phouck@rbh.com
    apickens@rbh.com

    Mark J. Seifert (SBN 217054)
    Seifert Law Firm
    425 Market Street, Suite 2200
    San Francisco, CA 94105
    Telephone:  (415) 999-0901
    Facsimile:  (415) 901-1123
    mseifert@seifertfirm.com

Attorneys for Defendant
SOUTHEASTERN CONFERENCE

1 | **FOX ROTHSCHILD LLP**

2 | By: _____/s/ D. Erik Albright_____

3 | D. Erik Albright (*pro hac vice*)
Gregory G. Holland (*pro hac vice*)
300 N. Greene Street, Suite 1400

4 | Greensboro, NC 27401
Telephone:  (336) 378-5200

5 | Facsimile:  (336) 378-5400
ealbright@foxrothschild.com

6 | gholland@foxrothschild.com

7 | Jonathan P. Heyl (*pro hac vice*)
101 N. Tryon Street, Suite 1300

8 | Charlotte, NC 28246
Telephone:  (704) 384-2600

9 | Facsimile:  (704) 384-2800
jheyl@foxrothschild.com

10 |

11 | Charles LaGrange Coleman, III (SBN 65496)
HOLLAND & KNIGHT LLP
50 California Street, Suite 2800

12 | San Francisco, CA 94111-4624
Telephone:  (415) 743-6970

13 | Facsimile:  (415) 743-6910
ccoleman@hklaw.com

14 |

15 | Attorneys for Defendant
THE ATLANTIC COAST CONFERENCE

16 |

**COVINGTON & BURLING LLP**

By: _____/s/ Benjamin C. Block_____
Benjamin C. Block (*pro hac vice*)
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001-4956
Telephone:  (202) 662-5205
Facsimile:  (202) 778-5205
bblock@cov.com

Rebecca A. Jacobs (SBN 294430)
Salesforce Tower
415 Mission Street
San Francisco, CA 94105-2533
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091
rjacobs@cov.com

Attorneys for Defendant
AMERICAN ATHLETIC CONFERENCE

17 | **WALTER HAVERFIELD LLP**

18 | By: _____/s/ R. Todd Hunt_____
R. Todd Hunt (*pro hac vice*)

19 | Benjamin G. Chojnacki (*pro hac vice*)
The Tower at Erieview

20 | 1301 E. 9th Street, Suite 3500
Cleveland, OH 44114-1821

21 | Telephone:  (216) 928-2935
Facsimile:  (216) 916-2372

22 | rthunt@walterhav.com
bchojnacki@walterhav.com

23 | Attorneys for Defendant
MID-AMERICAN CONFERENCE

24 |

25 |

26 |

**BRYAN CAVE LLP**

By: _____/s/ Meryl Macklin_____
Meryl Macklin (SBN 115053)
560 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone:  (415) 268-1981
Facsimile:  (415) 430-4381
meryl.macklin@bryancave.com

Richard Young (*pro hac vice*)
Brent Rychener (*pro hac vice*)
90 South Cascade Avenue, Suite 1300
Colorado Springs, CO 80903
Telephone:  (719) 473-3800
Facsimile:  (719) 633-1518
richard.young@bryancave.com
brent.rychener@bryancave.com

Attorneys for Defendant
MOUNTAIN WEST CONFERENCE

27 |

28 |

**JONES WALKER LLP**

By: _____/s/ Mark A. Cunningham_____
Mark A. Cunningham (*pro hac vice*)
201 St. Charles Avenue
New Orleans, LA 70170-5100
Telephone:  (504) 582-8536
Facsimile:  (504) 589-8536
mcunningham@joneswalker.com

Attorneys for Defendant
SUN BELT CONFERENCE

**<u>FILER'S ATTESTATION</u>**

I, Karen Lent, am the ECF user whose identification and password are being used to file Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

_____/s/ Karen Lent_____